**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

GEORGE SIEPEL; PHYLLIS SIEPEL; H.          )
CRAIG WILLIAMS; ELINOR TAMA                )
WILLIAMS; CONSTANCE ELAINE                 )
WILLIAMS; DONNA N. REINKE; ROBERT          )
COHEN; CARL M. PAGE; and all others        )
similarly situated,                        )
                                           )
                    Plaintiffs,            )
                                           )   Case No. 4:05-CV-2393 (RWS)
          v.                               )
                                           )
BANK OF AMERICA, N.A.; COLUMBIA            )
FUNDS SERIES TRUST f/k/a NATIONS           )
FUNDS TRUST; and BANK OF AMERICA           )
CORPORATION,                               )
                                           )
                    Defendants.            )

**DEFENDANTS BANK OF AMERICA, N.A. AND BANK OF AMERICA**
**CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR,**
**ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT**

Edward Dowd, Jr., Esq.
Jeffrey S. Russell, Esq.
Darci Madden, Esq.
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: 314.259.2000
Facsimile: 314.259.2020

Gregory B. Jordan, Esq.
Mary J. Hackett, Esq.
Christopher J. Soller, Esq.
Sharon L. Rusnak, Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: 412.288.3131
Facsimile: 412.288.3063

Attorneys for Defendants Bank of
America, N.A. and Bank of America
Corporation

## TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

PROCEDURAL HISTORY AND BACKGROUND ........................................ 4

    I.    *Williams, et al. v. Bank of America, et al.*, In The
         Circuit Court of the 15th Judicial Court in and for
         Palm Beach County, Florida, No. CA 02-15454 ........................................ 4

    II.    *Arnold v. Bank of America, NA, et al.*,
         United States District Court for the Central District
         of California, No. LACV-03-07997.................................................... 5

    III.    *Kutten, et al. v. Bank of America, NA, et al.*,
         United States Court for the Eastern District of
         Missouri, No. 4:04-CV-00244 .................................................... 6

    IV.    *Barnhart, et al. v. Bank of America, NA, et al.*,
         United States District Court for the Eastern District
         of Missouri, No. 04-CV-1150 .................................................... 8

    V.    *Reinke, et al. v. Bank of America, NA, et al.*,
         United States District Court for the Eastern District
         of Missouri, No. 4:04-CV-01758 .................................................... 8

    VI.    *Siepel, et al. v. Bank of America, et al.*,
         United States District Court for the Eastern District
         of Missouri, No. 05-CV-02393.................................................... 9

LAW AND ARGUMENT ........................................................................ 11

    I.    The Court Should Decline Jurisdiction And
         Dismiss The Complaint........................................................... 11

         A.    Plaintiffs And Their Attorneys Have Engage
             In Judge Shopping........................................................... 11

         B.    The Court Should Decline Jurisdiction Over
             Plaintiffs' Complaint Under The First-Filed Rule ........................ 15

    II.    The Complaint Should Be Dismissed Because Plaintiffs
         Have Failed To State A Claim Upon Which Relief
         Can Be Granted........................................................... 18

          A.    Legal Standard Under Federal Rule Of
             Civil Procedure 12(b)(6)................................................ 18

         B.    SLUSA Mandates Dismissal Of Plaintiffs' Complaint ................ 18

1.    Plaintiffs Alleged A Covered Class Action ........................ 20

2.    Plaintiffs' Claims Are Founded On State Law ................................................................ 20

3.    The Core Allegations in Plaintiffs' Complaint Are That Defendants Misrepresented Or Omitted Material Facts ............................................. 20

4.    Plaintiffs' Claims Are In Connection With The Purchase Of A Covered Security ........................................ 24

      a.    Plaintiffs' Claims Involve A Covered Security..................................................... 24

      b.    The "In Connection With" Requirement Is Met In This Case................................................. 24

C.    Plaintiffs' Complaint Should Be Dismissed Because Investments In Nations Funds Are Lawful Under State Law And Are Authorized By Each Of The Plaintiffs' Trust, Estate, And IRA Instruments................................................. 27

D.    Plaintiff Cohen's Claims Should Be Dismissed For Mandatory Arbitration ...................................... 29

III.    If The Court Does Not Dismiss The Complaint, Then Plaintiffs Should Be Ordered To File An Amended Complaint That Alleges Additional Facts ............................................................ 31

A.    Legal Standard Under Federal Rule Of Civil Procedure 12(e)................................................................. 31

B.    Plaintiffs Have Alleged Insufficient Facts About Defendants' Alleged Excessive and Unlawful Fees And Charges .......................................................... 32

Conclusion ....................................................................................................... 33

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE SIEPEL; PHYLLIS SIEPEL; H. CRAIG WILLIAMS; ELINOR TAMA WILLIAMS; CONSTANCE ELAINE WILLIAMS; DONNA N. REINKE; ROBERT COHEN; CARL M. PAGE; and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; COLUMBIA FUNDS SERIES TRUST f/k/a NATIONS FUNDS TRUST; and BANK OF AMERICA CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:05-CV-2393 (RWS) |

**DEFENDANTS BANK OF AMERICA, N.A. AND BANK OF AMERICA
CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR,
ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT**

**INTRODUCTION**

Abusive litigation tactics, such a forum shopping, judge shopping, and improperly prolonging meritless litigation, are universally condemned.  These actions not only destroy the integrity of the legal system, but they result in increased costs for all, including, unnecessary cost incurred and effort expended by the courts, staff and legal system, and unnecessary cost and effort expended by the parties who have unfortunately become a target of this abuse.  And, when abuse of the legal process has become evident, the court must be the gate-keeper to stop it in its tracks.  This is precisely what should happen here.

At the outset, this Court should exercise its authority and its mandate as gate-keeper and decline jurisdiction over this case by dismissing the Complaint.  The reason for this is simple: this action is the direct result of abusive and vexatious litigation practices.  This action is the **sixth** class action lawsuit instituted by the same counsel and often rotating plaintiffs, against Bank of America, N.A. (the "Bank") and Bank of America Corporation ("BAC").  The purpose

of this action is not to litigate the case, but to try a new forum based upon Plaintiffs' lack of previous success.  Indeed, each time Plaintiffs have faced unfavorable deadlines and/or potentially adverse rulings, they have dismissed that case and started anew with another.  The same has happened here.

Using a method of recycling named Plaintiffs and claims, for over three years Plaintiffs' attorneys have been able to assert these claims and allegations in three different states and in front of numerous judges all without ever having to prove the merits of a single case.[1]  By filing this case, Plaintiffs and their attorneys are attempting to re-assert the claims, and represent the putative class, from those cases that were previously dismissed.  Such conduct constitutes impermissible judge shopping and the behavior should not be countenanced.  Accordingly, the Court should refrain from taking jurisdiction here and dismiss the Complaint.

Numerous other reasons also support dismissal of the Complaint.

**First,** the Court should decline jurisdiction over this case because Plaintiffs and their attorneys have violated the first-filed rule.  Under controlling Eighth Circuit authority, when two courts have concurrent jurisdiction over cases that "substantially overlap," the first-filed rule requires the first court to retain jurisdiction to hear the case and second court to dismiss it.  Plaintiffs do not and cannot dispute that this case has substantial overlap to another case filed by

---

[1]     Plaintiffs' attorneys have represented in numerous filings and to numerous courts that these putative class actions are all the "same."  Plaintiffs will no doubt contend that Defendants have opposed consolidation of these cases claiming they are different.  However, the many actions Plaintiffs' attorneys have filed are simply not amenable to consolidated treatment because of the individual factual inquiry necessary to analyze the claims.  For instance, in a breach of fiduciary duty action involving a trust relationship, the threshold inquiry is to look to the terms of the governing instrument to determine what provision if anything was breached.  Trusts are unique in that each trust is governed by a different agreement, with different objectives and intent by the grantor, with different beneficiaries with varying needs, as well as investment recommendations and approvals by individual co-trustees.  If Plaintiffs' attorneys had a good faith belief that any one of these putative class actions could ever be certified as a class given the predominating individual issues, Defendants submit that only **one** action with **one** plaintiff would have been sufficient rather than the morass of cases initiated by the same Plaintiffs' attorneys claiming they are all the "same" case.

Plaintiffs' attorneys and currently pending in this very Court. Accordingly, the first-filed rule requires this Court to decline jurisdiction over this case and dismiss the Complaint.

**Second,** even if the Court accepts jurisdiction, Plaintiffs' claims are preempted by and must be dismissed under the Securities Litigation Uniform Standards Act of 1998. Here, the gravamen of the Complaint, which raises only state law claims, is an alleged scheme by Defendants to induce Plaintiffs to invest in Nations Funds mutual funds ("Nations Funds"), the affiliated mutual funds of the Bank, by making misrepresentations and omissions about the value of those investments and the related fees and expenses. Consequently, Plaintiffs' claims are preempted by federal law and subject to dismissal under the Securities Litigation Uniform Standards Act of 1998.

**Third,** Plaintiffs have failed to state a claim upon which relief may be granted because the alleged improper conduct that forms the basis for those claims—investment in affiliated mutual funds of the Bank—was authorized by state law as well as Plaintiffs' individual trust, estate, and IRA instruments. Because that act was warranted as a matter of law, it cannot form the basis for Plaintiffs' claims and those claims should be dismissed.

**Fourth,** Plaintiff Cohen's claims should be dismissed because his IRA with the Bank, which provides the sole basis for his claims, explicitly requires that he submit his claims to mandatory arbitration, which he failed to do.

**Finally**, in the event the Court does not decline jurisdiction or dismiss all of Plaintiffs' claims, then Plaintiffs should be ordered to file an amended complaint. Despite three years of discovery, the Complaint makes vague allegations about alleged excessive, undisclosed and unlawful fees and, pursuant to Federal Rule of Civil Procedure 12(e), Plaintiffs should be ordered to make those allegations with more specificity so that Defendants are at least put on notice of what fees were allegedly not disclosed and/or were excessive. Truth be told, Plaintiffs have not and cannot identify any fee not disclosed in the Bank's prospectus for Nations Funds and in accordance with federal law or any fee that was excessive.

## PROCEDURAL HISTORY AND BACKGROUND

The following procedural history and background details the filing of six lawsuits by Plaintiffs' attorneys. Those cases, in the order in which they were filed, are *Williams, et al. v. Bank of America, et al.* ("*Williams*"), *Arnold v. Bank of America, et al.* ("*Arnold*"), *Kutten, et al. v. Bank of America, et al.* ("*Kutten*"), *Barnhart, et al. v. Bank of America, et al.* ("*Barnhart*"), *Reinke, et al. v. Bank of America, et al.* ("*Reinke*") and this case, *Siepel, et al. v. Bank of America, et al.* ("*Siepel*"). All six of these cases were filed against the Bank and/or BAC. As it currently stands, two of these cases, *Kutten* and this case, are still pending, three of them, *Williams*, *Arnold* and *Barnhart* were voluntarily dismissed by Plaintiffs' attorneys, and *Reinke* was dismissed by the Court for lack of subject matter jurisdiction.

I.  ***Williams, et al. v. Bank of America, et al.*, In the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, No. CA 02-15454.**

Plaintiffs' attorneys began filing these putative class action lawsuits in Florida state court in December 2002. In *Williams*, the named Plaintiffs, H. Craig Williams, Elinor Tama Williams, and Constance Elaine Williams, were beneficiaries of a trust that was administered by the Bank. See *Williams* Third Amended Complaint, ¶ 6 (attached as Exhibit 1). In their Complaint, the *Williams* Plaintiffs alleged that investment of their trust assets in Nations Funds investments was a breach of fiduciary duty and breach of contract, and allowed for unjust enrichment by the Bank. See id. at ¶¶ 40-54. The *Williams* Plaintiffs sought to represent a putative class of Bank customers whose trust assets had been invested in Nations Funds by the Bank acting as a trustee. See id. at ¶¶ 22-39.

As the case progressed, it became clear that the *Williams* Plaintiffs would not be able to certify their class or prevail on the merits. Consequently, Plaintiffs' attorneys attempted to hedge their bets by filing more lawsuits. While *Williams* was pending, Plaintiffs' attorneys filed four more lawsuits making basically the same claims and seeking to certify the same putative class. Moreover, Plaintiffs' attorneys used these other cases as a means of delay. On separate

occasions, the *Williams* Plaintiffs attempted to consolidate their case with *Kutten*, another case filed by Plaintiffs' attorneys, and to stay their case pending the outcome in *Kutten*; however, in both instances the Court denied these maneuvers.  See January 28, 2005 Order and February 15, 2005 Order (attached as Exhibits 2 and 3, respectively).  While attempting to employ these delay tactics, Plaintiffs' attorneys stated that *Williams* and *Kutten* were practically identical.  For example, in the Motion to Stay, Plaintiffs' attorneys asserted that "[t]he *Kutten* action subsumes all the claims asserted by the Williams Plaintiffs and all members of the Class as defined in this action"; that "both suits are substantially similar proceedings"; and that "the injury alleged, the claims raised, and the relief sought [in both cases are] all identical."  See Plaintiffs' Motion to Stay, pp. 1-3 (attached as Exhibit 4).

Nevertheless, the parties engaged in extensive discovery for almost three years.  Pursuant to an order of the Court, the *Williams* Plaintiffs were to file their motion for class certification and evidence in support of class certification by November 30, 2005.  One day before their motion and evidence were due to be filed, however, the *Williams* Plaintiffs filed a notice of voluntary dismissal.  See Plaintiffs' Notice of Voluntary Dismissal (attached as Exhibit 5).  As grounds for dismissal, the *Williams* Plaintiffs stated that they were members of the putative classes in the *Kutten* and *Reinke* cases, lawsuits that Plaintiffs' attorneys filed while the *Williams* case was still pending.  See id. at 1.  Thus, according to the *Williams* Plaintiffs and their attorneys, "their claims [were] fully protected in such litigation[.]"  Id.

## II.   *Arnold v. Bank of America, NA, et al.,* United States District Court for the Central District of California, No. LACV-03-07997.

Barely 10 months after filing *Williams*, in November 2003, Plaintiffs' attorneys filed the *Arnold* case.  The named Plaintiff, Mary Ann Arnold, brought a putative class action lawsuit against the Bank, BAC, and other defendants.  The *Arnold* Plaintiff was the beneficiary of a trust administered by the Bank and, consistent with the terms of the trust, assets of the trust were invested in Nations Funds.  See *Arnold* Complaint, ¶¶ 11-16 (attached as Exhibit 6).  The complaint alleged claims of breach of fiduciary duty, breach of contract, unjust enrichment, and

violation of certain California state statutes.  See id. at ¶¶ 49-106.  Like the *Williams* Plaintiffs, the *Arnold* Plaintiff sought to represent a class of Bank customers who were beneficiaries of trusts that had been invested in Nations Funds.  See id. at ¶¶ 32-48.

At a status conference on March 8, 2004, the Court pressed Plaintiffs' attorneys about the validity of the claims in the complaint and questioned them about how they would be able to certify a class based upon individual trust instruments.  See March 8, 2004 Transcript, pp. 4-16 (attached as Exhibit 7).  The Court had "conceptual difficulties with the members of the class as . . . currently pled" and indicated that the case was going to "rise or fall on the class certification motion which [the Court had] doubts about[.]"  Id. at 7, 12.  Consequently, the Court set a briefing schedule that would bring that important issue to the forefront and ordered Plaintiffs' attorneys to file a motion for class certification by July 5, 2004.  Plaintiffs' attorneys responded by seeking to transfer the case to Missouri federal court to consolidate it with *Kutten* (which was filed after *Arnold*).  In the alternative, Plaintiffs' attorneys also moved to voluntarily dismiss the case.  In making that request, Plaintiffs' attorney stated that transfer was appropriate because *Kutten* was "a nearly identical class action" and that the *Arnold* Plaintiff "ha[d] already joined in" *Kutten*.  See Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Transfer or Dismiss Action, pp. 2-3 (attached as Exhibit 8).  On May 13, 2004, less than six months after the complaint had been filed, the Court granted the voluntary dismissal.  See May 13, 2004 Order (attached as Exhibit 9).

### III.   *Kutten, et al. v. Bank of America, NA, et al.*, United States District Court for the Eastern District of Missouri, No. 4:04-CV-00244.

In February 2004, Plaintiffs' attorneys filed the *Kutten* case against the Bank and BAC in the United States District Court for the Eastern District of Missouri.  *Kutten* was the first of four cases filed by Plaintiffs' attorneys in this jurisdiction.  *Kutten* was brought by Ellen Kutten, Mary Arnold (the named Plaintiff in the *Arnold* case), and Elsie Scharff, all of whom were beneficiaries of trusts administered by the Bank and which the Bank, consistent with the terms of the trusts, invested in Nations Funds.  See *Kutten* Second Amended Complaint, ¶ 17 (attached as

Exhibit 10).  The complaint was a combination of class and individual claims for, among other things, breach of contract, breach of fiduciary duty, and unjust enrichment arising out of the Bank's investment of trusts for which the *Kutten* Plaintiffs were beneficiaries into Nations Funds.  See id. at ¶¶ 50-59, 66-70, 114-135, 143-146.  Like *Arnold* and *Williams*, the *Kutten* Plaintiffs sought to represent a class of Bank customers who were the beneficiaries of trusts invested into Nations Funds.  See id. at ¶¶ 33-59.  At the time that *Kutten* was filed, both *Williams* and *Arnold* were still pending.  Moreover, Plaintiff Mary Arnold was a named Plaintiff in both *Arnold* and *Kutten*.

The parties engaged in substantial discovery for almost two years.  As indicated above, during this time period Plaintiffs' attorneys utilized numerous maneuvers, including motions to consolidate, transfer and stay, to cause delay in *Kutten* and other cases.  Plaintiffs' attorneys attempted another such maneuver when they moved to consolidate *Kutten* with *Barnhart*, another case filed by Plaintiffs' attorneys less than 6 months after *Kutten* was filed.  In support of consolidation, Plaintiffs' attorneys argued that "[t]he central factual and legal issue presented by [*Kutten* and *Barnhart* were] common."  Memorandum of Law in Support of Plaintiffs' Motion for Entry of Order Consolidating Cases, Appointing Plaintiffs' Lead and Liaison Counsel and for Certain Administrative Matter, p. 3 (attached as Exhibit 11).  Plaintiffs' attorneys also requested that they be designated "Lead Counsel and Liaison Counsel" for the consolidated cases.  See id. at 4-6.  As with Plaintiffs' attorneys other tactics, the Court denied this one as well.  See Exhibit 3 at p. 4.

Eventually, the Bank filed a motion to dismiss *Kutten* for lack of subject matter jurisdiction, which is pending.  The Court has ordered the *Kutten* Plaintiffs to file their motion for class certification on May 1, 2006 and the Bank and BAC to file an opposition on May 30, 2006.  With the Bank's motion to dismiss pending and their class certification deadline upcoming, Plaintiffs' attorney employed a familiar strategy.  On January 5, 2006, Plaintiffs' attorneys filed a motion to consolidate *Kutten* and this case (which motion is discussed more fully below).

IV.    ***Barnhart, et al. v. Bank of America, NA, et al.,*** **United States District Court for the Eastern District of Missouri, No. 04-CV-1150.**

In August 2004, with *Williams* and *Kutten* still pending, Plaintiffs' attorneys filed yet another complaint against the Bank and BAC in Missouri federal court. In *Barnhart*, the named Plaintiffs, Linda P. Barnhart and D.M. Griffith, were beneficiaries of trusts which were invested in Nations Funds. See *Barnhart* Complaint, ¶ 17 (attached as Exhibit 12). Yet again, the complaint sought to bring a putative class action comprised of beneficiaries whose trusts were invested in Nations Funds. See id. at ¶¶ 35-51. Further, as in the other cases, the claims set forth in the complaint were for purported breach of contract, breach of fiduciary duty, and unjust enrichment (as well as other claims that are not relevant to this Motion). See id. at ¶¶ 52-61, 68-73, 85-90, 103-111.

In February 2005, the Court held a scheduling conference and ordered Plaintiffs to file their motion for class certification on April 15, 2005. And, in response, on March 16, 2005, Plaintiffs' attorneys moved to voluntarily dismiss the case or, alternatively, to file an amended complaint to assert only individual claims. See Plaintiffs' Motion for Voluntary Dismissal or Alternatively, Motion for Leave to Amend (attached as Exhibit 13). As a basis for dismissal, the *Barnhart* Plaintiffs indicated that they wished to pursue their claim in *Kutten* since the "central factual and legal issues presented by both actions are common." Id. at 2. That assertion, however, raises the question of why *Barnhart* was filed in the first place, since *Kutten* was already pending in the same Court. In any event, on April 19, 2005, the Court dismissed the case. See April 19, 2005 Order (attached as Exhibit 14).

V.    ***Reinke, et al. v. Bank of America, NA, et al.,*** **United States District Court for the Eastern District of Missouri, No. 4:04-CV-01758.**

In December 2004, Plaintiffs' attorneys filed *Reinke*, their third case in Missouri federal court and fifth case overall. The named Plaintiffs, Donna N. Reinke and Robert Stuart Cohen were beneficiaries of an estate and other investments that were administered by the Bank and had assets invested in Nations Funds. See *Reinke* Amended Complaint, ¶¶ 6-7 (attached as Exhibit

15).  Like the other plaintiffs before them, the *Reinke* Plaintiffs asserted claims against the Bank and BAC for, among other things, breach of fiduciary duty, breach of contract, and unjust enrichment.  <u>See</u> <u>id</u>. at ¶¶ 47-62, 75-89.  The putative class that the *Reinke* Plaintiffs sought to represent was the same as the other cases filed by Plaintiffs' attorneys.  <u>See</u> <u>id</u>. at ¶¶29-46.  At the time *Reinke* was filed, *Williams*, *Kutten*, and *Barnhart* were all pending.

On May 9, 2005, the Bank and BAC moved to dismiss the Amended Complaint for a number of reasons, including the *Reinke* Plaintiffs' inability to satisfy the jurisdictional requirement, improper venue, and because Plaintiff Cohen's investments contained mandatory arbitration clauses.  On December 16, 2005, the Court dismissed the case for lack of subject matter jurisdiction.  <u>See</u> December 16, 2005 Memorandum and Order (attached as Exhibit 16).

## VI.  *Siepel, et al. v. Bank of America, et al.,* United States District Court for the Eastern District of Missouri, No. 05-CV-02393.

On December 28, 2005, Plaintiffs' attorneys filed this, their **sixth** case.  By the time this case was filed, only *Kutten* remained of the other cases filed by Plaintiffs' attorneys.  *Siepel* represents Plaintiffs' attorneys' efforts to recycle Plaintiffs from previous lawsuits and assert claims and allegations that were dismissed.  Plaintiffs include H. Craig Williams, Elinor Tama Williams, Constance Elaine Williams (all three named Plaintiffs in *Williams*), Donna N. Reinke (a named Plaintiff in *Reinke*), Robert Cohen (a named Plaintiff in *Reinke*), George and Phyllis Siepel, and Carl M. Page.  <u>See</u> Siepel Complaint, ¶ 14 (attached as Exhibit 17).  Each Plaintiff is the beneficiary of a trust, estate, or IRA:

- Plaintiffs H. Craig Williams, Elinor Tama Williams, and Constance Elaine Williams are beneficiaries of a trust established pursuant to the terms of the Last Will and Testament of Heberton F. Williams.  <u>See</u> Last Will and Testament of Heberton F. Williams ("Williams Trust") (attached as Exhibit 18).

- Plaintiff Donna N. Reinke is the beneficiary of the estate of Margaret C. Spencer as set forth in the Last Will and Testament of Margaret C. Spencer.  <u>See</u> Last Will and Testament of Margaret C. Spencer ("Reinke Estate") (attached as Exhibit 19).

- Plaintiff Robert Cohen is the beneficiary of an IRA that he established with Boatmen's Trust Company. In 2002, after the Bank acquired Boatmen's Trust Company, Plaintiff Cohen executed an IRA Adoption Agreement ("IRA Adoption Agreement") with the Bank to establish Plaintiff Cohen's IRA under the Bank of America Individual Retirement Account Trust Agreement ("Cohen IRA Agreement"). See IRA Adoption Agreement and Cohen IRA Agreement (attached as Exhibits 20 and 21, respectively).

- Plaintiffs George and Phyllis Siepel are beneficiaries of a trust established pursuant to the terms of the Last Will and Testament of Agnes V. Benstein. See Last Will and Testament of Agnes V. Benstein ("Siepel Trust") (attached as Exhibit 22).

- Plaintiff Carl M. Page is the beneficiary of a trust established by Janet P. Wilson. See Janet P. Wilson Trust Agreement ("Page Trust") (attached as Exhibit 23).

As in the other cases, the Complaint alleges claims for breach of contract, breach of fiduciary duty, and unjust enrichment. See *Siepel* Complaint, ¶¶ 60-86. And, as in the other cases, Plaintiffs and their attorneys seek to certify a class of Bank customers who are beneficiaries, owners, or principals of trusts or other financial accounts that were invested in Nations Funds by the Bank acting as trustee. See id. at ¶¶ 41-59.

There can be little dispute that *Siepel* is the product of Plaintiffs' attorneys' efforts to obtain a new judge for their case because of the deadlines looming in *Kutten* and the deadline in *Williams* that required Plaintiffs to submit their motion and evidence in support of class certification for a decision, which was avoided by a voluntary dismissal on the eve of the deadline. The *Siepel* Complaint acknowledges that *Siepel* and *Kutten* are duplicative when it alleges that "pending in this District is *Kutten et al v. Bank of America, et al,* Case No. 4:04-cv-244 ("*Kutten* case") in which many of the claims of the Class herein have previously been asserted and are presently pending." Id. at ¶ 12. The Civil Cover Sheet accompanying the Complaint indicates that it is "a related case" to *Kutten*, and the Original Filing Form identifies *Siepel* as "substantially equivalent" to *Kutten*. See *Siepel* Civil Cover Sheet and Original Filing Form (attached as Exhibits 24 and 25, respectively).

-10-

More telling, however, is that less than two weeks after filing the Complaint, Plaintiffs' attorneys filed a motion to consolidate *Kutten* and *Siepel*. In support of consolidation, Plaintiffs' attorneys asserted that "[t]he Second Amended Complaint presently before the Court in the *Kutten* case . . . and the recently filed Complaint in the *Siepel* case . . . set forth near-identical core claims[.]" Memorandum of Law in Support of Plaintiffs' Motion for Entry of Order Consolidating Cases, pp. 1-2. Further, Plaintiffs' attorneys state that "[b]oth the *Kutten* and *Siepel* cases seek certification of essentially the same nationwide class[.]" Id. at 5. Given that both cases raise the same claims and were filed in the same Court, one can only conclude that *Siepel* was filed in order to allow Plaintiffs to seek a new forum for their claims.

## LAW AND ARGUMENT

I.   **The Court Should Decline Jurisdiction And Dismiss The Complaint.**

  A.   **Plaintiffs And Their Attorneys Have Engaged In Judge Shopping.**

"Judge-shopping is a practice that has been universally condemned." Lane v. City of Emeryville, No. 93-16646, 1995 U.S. App. LEXIS 11629, at *4 (9th Cir. May 16, 1995) (internal citations omitted). Judge shopping occurs when a party voluntarily dismisses a case only to refile the same case in another court or in front of another judge.[2] See, e.g., Vaqueria Tres Monjitas, Inc. v. Rivera Cubano, 341 F. Supp.2d 69 (D.P.R. 2004); McDermott v. Toyota Motor Sales Co., Ltd., 487 F. Supp. 484 (E.D. Tenn. 1980). One court has described judge shopping as "when a litigant discontinues a fray, only to start over on another day." Steward v. Dow Corning Corp., No. 92-1105-K, 1992 U.S. Dist. LEXIS 4048, at *3 (D. Kan. March 13, 1992). "In the context of interdistrict litigation, judge shopping has been described as the situation existing where plaintiffs see a storm brewing in the first court [and] try to weigh anchor and set sail for

---

[2]    Some courts use the terms "judge shopping" and "forum shopping" interchangeably. Regardless of the term used, the act of voluntarily dismissing and refiling a case in another court or in front of another judge is prohibited. Compare Vaqueria Tres Monjitas, 341 F. Supp.2d at *10-11 (finding that plaintiffs engaged in "judge shopping" by voluntarily dismissing and refiling the same case) with McDermott, 487 F. Supp. at 486 (holding that plaintiffs' act of voluntarily dismissing and refiling the same case constituted "forum shopping").

the hopefully more favorable waters of another district." Id.  When a party attempts to judge shop, a court may take whatever action is necessary to prevent it.  "Where judge shopping has been found to exist, the district court has the authority to act to preserve the integrity and control of its docket." Id. at *2.  Included within the court's authority is the discretion to decline jurisdiction over a case that has been voluntarily dismissed and refiled for the purpose of judge shopping.  See, e.g., Zografos v. Qwest Commc'ns Corp., 225 F. Supp.2d 1217, 1223-1224 (D. Or. 2002); McDermott, 487 F. Supp. at 486; Eager v. Kain, 158 F. Supp. 222, 223-224 (E.D. Tenn. 1957).

The Court should decline jurisdiction over this case and dismiss the Complaint because Plaintiffs and their attorneys have engaged in judge shopping.[3]  Plaintiffs' attorneys have filed six putative class action lawsuits naming either the Bank or BAC as a defendant and, **according to Plaintiffs and their attorneys,** each case has alleged the same claims and sought to certify the same putative class.  Plaintiffs' attorneys have stated on numerous occasions that the cases are "substantially similar" or "nearly identical".  See, e.g., Exhibit 4 at p. 2; Exhibit 8 at p. 2. With respect to *Kutten* and this case, the only two remaining cases, Plaintiffs and their attorney have asserted that the two cases "set forth near-identical claims[.]"  See Memorandum of Law in Support of Plaintiffs' Motion for Entry or Order Consolidating Cases, pp. 1-2.

Further, Plaintiffs and their attorneys have used these six cases to cause improper delay and to judge shop.  Each time that they have faced an unfavorable deadline, Plaintiffs' attorneys

---

3       Although Defendants are only seeking dismissal at this time, that does not preclude the possibility that they will seek sanctions against Plaintiffs and their attorneys at a later date.  Both Federal Rule 11 and 28 U.S.C. § 1927 allow for the imposition of sanctions for judge shopping.  See, e.g., In the Matter of Geoffrey N. Fieger, No. 97-1359, 1999 U.S. App. LEXIS 22435, at *9 (6th Cir. Sept. 10, 1999) (affirming Federal Civil Rule 11 sanctions for judge shopping); Bolivar v. Pocklington, 975 F.2d 28, 32-34 (1st Cir. 1992)(affirming sanction under Federal Civil Rule 11 and Section 1927, in part, due to forum shopping); Vaqueria Tres Monjitas, 341 F. Supp.2d at 73-74;  (imposing Federal Civil Rule 11 sanctions for judge shopping); Lane v. City of Emeryville, No. 93-16646, 1995 U.S. App. LEXIS 11629, at *8-9 (9th Cir. May 17, 1995) (remanding cases for imposition of Federal Civil Rule 11 sanctions for judge shopping).

have improperly attempted to cause delay and, when that did not work, moved to dismiss a case so that they could assert those claims in one of the other five cases.  In *Williams*, *Arnold* and, *Barnhart*, Plaintiffs' attorneys voluntarily dismissed each case on the eve of the deadline for filing class certification and only after first attempting to cause delay by seeking to transfer, consolidate or stay those cases.  Plaintiffs' attorneys then asserted those dismissed claims in *Kutten* and this case.[4]  Indeed, the majority of the named Plaintiffs in *Kutten* and this case are individuals that were named Plaintiffs in *Williams*, *Arnold*, and *Barnhart*.[5]  Moreover, now that Plaintiffs' attorneys are facing the Bank's motion to dismiss and a class certification deadline in *Kutten*, they are attempting the same type of improper maneuvering.  The filing of the motion to consolidate *Kutten* into this newly filed case—especially less than two weeks after the Complaint was filed—is another tactic by Plaintiffs' attorneys to avoid an unfavorable deadline and possible dismissal.  Assuming the Court denies consolidation, there is little question that Plaintiffs' attorneys will move to voluntarily dismissal *Kutten*.  Having avoided another unfavorable ruling, Plaintiffs' attorneys will then assert the claims in *Kutten* in this case or another case yet to be filed.

In McDermott v. Toyota Motor Sales Co., Ltd., 487 F. Supp. 484 (E.D. Tenn. 1980), the plaintiff engaged in judge shopping similar to, but on a lesser degree than, that of the Plaintiffs

---

4       Plaintiffs and their attorneys have also used other improper tactics to judge shop.  Two days after Defendants filed their motion to dismiss in *Kutten*, Plaintiffs' attorneys filed a Motion to Intervene on behalf of John Medler, Jr. in a transparent attempt to "cure" the jurisdictional defects of the other Plaintiffs' claims.  In fact, Mr. Medler filed an affidavit in the *Arnold* action prior to its voluntary dismissal in California.  Despite the fact that Plaintiffs' counsel knew about Mr. Medler's claims as early as 2003, they waited until after Defendants filed the motion to dismiss to seek intervention on his behalf.  The reason for the delay is that Mr. Meddler is an alleged beneficiary of two testamentary trusts along with his three brothers and his mother, the Honorable Mary Ann L. Medler, United States Magistrate Judge for the United States District Court for the Eastern District of Missouri.  As a consequence of the last minute addition of Mr. Medler, Judge Shaw was forced to recuse himself in this case.  Indeed, it is apparent that the entire Bench of the Eastern District of Missouri recused itself, given that a senior judge for the District of Minnesota is now presiding over the *Kutten* action.

5       And, in response to requests for admission, the *Williams* Plaintiffs asserted that Plaintiffs Kutten, Arnold, Scharff, Reinke, and Cohen, were part of the class sought to be certified in Florida.  See Plaintiffs' Responses to Requests For Admission, ¶¶ 62, 63 at p. 44 (attached as Exhibit 26).

and their attorneys in this case.  In <u>McDermott</u>, the plaintiff filed a personal injury case in Tennessee state court and the defendants moved for summary judgment.  <u>See id</u>. at 485.  At oral argument, the court indicated that it was denying defendants' motion "out of an abundance of precaution" and that unless more facts were brought forward at trial, the court would look favorably upon the defendants' motion for directed verdict.  <u>See id</u>.  Following the oral argument, the plaintiff voluntarily dismissed his case and refiled in Tennessee federal court.  <u>See id</u>.  The Tennessee federal court, however, dismissed the case for forum shopping.  <u>See id</u>. at 485-86.  The court indicated that the plaintiff could not simply dismiss and refile his case to avoid a potentially unfavorable ruling.  <u>See id</u>. at 486.  The court held that to "condone such obvious instances of 'forum shopping' would only serve to destroy the independence of the state and federal courts, and to defeat any hope for judicial economy and the orderly resolution of cases."  <u>Id</u>.  The <u>McDermott</u> decision was based largely on <u>Eager v. Kain</u>, a case in which a Tennessee federal court similarly dismissed a case for forum shopping.  <u>See Eager v. Kain</u>, 158 F. Supp. at 223-224.

In addition to <u>McDermott</u> and <u>Eager</u>, numerous courts have dismissed cases, or transferred them back in front of the judge that the plaintiff was attempting to avoid, due to improper judge shopping.  <u>See, e.g.</u>, <u>Vaqueria Tres Monjitas</u>, 341 F. Supp.2d at 71 (transferring refiled case to court in which the case was originally filed and finding that "what [plaintiffs] may not do, and we cannot stress this enough, is abuse the Court's processes by using Rule 41 as a loophole to circumvent an unfavorable ruling."); <u>Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.</u>, No. C03-3711-MHP, 2003 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2003) (transferring refiled case due, in part, to the fact that plaintiffs engaged in forum shopping and attempted to conceal that forum shopping by using different named plaintiffs); <u>Zografos</u>, 225 F. Supp.2d at 1223-1224 (finding "clear evidence of judge-shopping" and dismissing amended complaint in order to "[p]rotect[] the integrity of the judicial process"); <u>Smith v. Mt. Sinai Hosp.</u>, No. 84-Civ-9111-CSH, 1985 U.S. Dist. LEXIS 20526, at * 3 (S.D.N.Y. April 22, 1985)

(transferring refiled case back to original court finding that there was the "appearance of 'judge-shopping'" and "a prima facie case of voluntary dismissal and refiling for the forbidden purpose").

All of these facts, when taken together, demonstrate that Plaintiffs and their attorneys have engaged in a pattern of improper judge shopping that should not be condoned by this Court. A party may not, as Plaintiffs and their attorneys have done, improperly use Federal Civil Rule 41 to dismiss and refile a case for the purpose of avoiding an unfavorable deadline or to seek a more favorable judge. The Court, therefore, should protect its docket from this attempted judge shopping and decline jurisdiction over this case.

**B.    The Court Should Decline Jurisdiction Over Plaintiffs' Complaint Under The First-Filed Rule.**

The first-filed rule allows a court to decline jurisdiction and dismiss a complaint that is substantially similar to another complaint that was previously filed. The first-filed rule provides that "where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985); see also Pace Constr. Co., Inc. v. Travelers Cas. & Sur. Co. of America, 259 F. Supp.2d 934, 938 (E.D. Mo. 2003). The Eighth Circuit has held "that in the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." Orthmann, 765 F.2d at 121 (quotations omitted); see Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993). The purpose of the rule is to conserve judicial resources and avoid conflicting rulings. See id.; Pace Constr. Co., 259 F. Supp.2d at 938; Gen. Comm. of Adjustment GO-386 v. Burlington Northern R.R., 895 F. Supp. 249, 251 (E.D. Mo. 1995).

For the first-filed rule to apply, there must be "substantial overlap of the content" between the two cases. Hallmark Cards, Inc. v. Group One, Ltd., No. 04-CV-63-W-DW, 2004 U.S. Dist. LEXIS 16707, at *4 (W.D. Mo. April 15, 2004). The cases need not be identical. Id.

"The first-filed rule can apply when the two actions involve additional claims and additional parties." Id. at *4-5 (applying first-filed rule when second filed case involved additional claims and parties because those differences were "minor" and because the cases were "substantially similar"); see also Gen. Comm. of Adjustment, 895 F.Supp at 252 (applying first-filed rule when two cases involved different parties because the "legal issue in dispute and the industry affected [were] identical").

The Court should apply the first-filed rule and decline jurisdiction over this case.  First, there can be no question that *Kutten* was filed before this case, as *Kutten* was filed on February 27, 2004 and this case on December 28, 2005.  Second, according to Plaintiffs and their attorney, *Kutten* and this case involve substantially the same parties.  Both complaints named the Bank and BAC as defendants.  Although the Complaint in this case also names Columbia Funds Series Trust f/k/a Nations Funds Trust as a Defendant, the naming of that additional Defendant is not sufficient to preclude application of the first-filed rule.  See Hallmark Cards, 2004 U.S. Dist. LEXIS 16707, at *4 (applying first-filed rule when one of the cases included three additional defendants).  Further, while the cases involve different named Plaintiffs, Plaintiffs and their attorney argue that the cases seek to certify the same putative class, which is sufficient to apply the first-filed rule.  See Peak v. Green Tree Financial Servicing Corp., No. C 00-0953, 2000 U.S. Dist. LEXIS 9711 (N.D. Cal. July 7, 2000) (applying first-filed rule when two complaints involved different named plaintiffs, but sought to certify the same class of plaintiffs).  Finally, in both cases Plaintiffs and their attorneys are asserting claims for breach of fiduciary duty, breach of contract, and unjust enrichment.  For purposes of the first-filed rule, it is inconsequential that *Kutten* has some claims that this case does not. See Hallmark Cards, 2004 U.S. Dist. LEXIS 16707, at *4 (applying first-filed rule when one of the cases included some different claims). More importantly, Plaintiffs and their attorneys contend that the Bank's investment into Nations Funds is the basis for their claims in both cases.

Peak v. Green Tree Financial Servicing Corp. has facts similar to this case and is instructive on this issue.  In Peak, the plaintiff brought an eight claim putative class action lawsuit in the United States District Court for the Northern District of California.  See Peak, 2000 U.S. Dist. LEXIS 9711, at *1.  Approximately seven months before Peak was filed, another plaintiff filed a similar ten count putative class action lawsuit in the United States District Court for the Eastern District of California.  See id.  Both cases involved the same defendants, many of the same claims, and had identical putative classes of plaintiffs.  See id.  To determine whether to dismiss Peak under the first-filed rule, the court considered three factors: the chronology of the two cases, the similarity of the parties, and the similarity of the issues.  See id. at *2.  The court first determined that the case in the Eastern District of California was filed before Peak.  Second, the court held that the parties were sufficiently similar.  See id.  Both cases named the same defendants and, although the named plaintiffs in the two cases were different, the putative classes were identical.  See id.  Finally, the court found that the cases presented similar issues because the alleged offending behavior was the same in both cases and the claims were largely the same.  See id.  Consequently, the court applied the first-filed rule and dismissed the Peak case.  See id. at *3.  See also PCI Constr. Servs., Inc. v. Rainforest Café, Inc., No. 01-1704, 2002 U.S. Dist. LEXIS 1461, at *9-10 (D. Minn. Jan. 28, 2002) (applying first-filed rule to stay the second of two cases filed by the same plaintiff because both cases involved form contracts and the issues overlapped).

Plaintiffs can point to no compelling circumstances sufficient for this Court to disregard the first-filed rule.  In fact, Plaintiffs do not and cannot dispute the substantial overlap between the two cases.  The Complaint in this case alleges that it is substantially similar to *Kutten*, and was identified by Plaintiffs and their attorneys as "related" and "substantially equivalent" to *Kutten*.  See *Siepel* Complaint at ¶ 12; Exhibits 24 and 25.  Moreover, in their Memorandum of Law in Support of Plaintiffs' Motion for Entry of Order Consolidating Cases, Plaintiffs' attorneys stated that "[t]he Second Amended Complaint presently before the Court in the *Kutten*

case . . . and the recently filed Complaint in the *Siepel* case . . . set forth near-identical core claims[.]"  Memorandum of Law in Support of Plaintiffs' Motion for Entry of Order Consolidating Cases, pp. 1-2.  Plaintiffs went on to assert that "[b]oth the *Kutten* and *Siepel* cases seek certification of essentially the same nationwide class[.]"  Id. at 5.  Based on Plaintiffs' admissions alone, the Court should find that this case and *Kutten* are substantially similar.

This case should never have been filed and allowing both *Kutten* and this case to proceed is a waste of judicial resources.  Because there is no compelling reason for the Court to act otherwise, it should apply the first-filed rule, decline jurisdiction, and dismiss the Complaint.

II.   **The Complaint Should Be Dismissed Because Plaintiffs Have Failed to State A Claim Upon Which Relief Can Be Granted.**

A.   **Legal Standard Under Federal Rule Of Civil Procedure 12(b)(6).**

When ruling on a Federal Civil Rule 12(b)(6) motions to dismiss, the Court may accept only the well-pleaded allegations in the complaint as true.  See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519 (1983).  The Court is "free to ignore legal conclusions, unsupported conclusion, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  Wiles v. Capitol Indem. Corp., 280 F.3d 868, 870 (8th 2002).  If, when accepting only the well-pleaded facts as true, the Court determines that the plaintiff has failed to state a claim upon which relief can be granted, then dismissal of the complaint is warranted.

B.   **SLUSA Mandates Dismissal Of Plaintiffs' Complaint.**

In 1995, after determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to impose procedural and substantive restrictions on private securities suits in federal court, including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations.  Seeking to avoid PSLRA's restrictions, securities class action plaintiffs began to frame their allegations of securities fraud as state law

causes of action and pursue relief in state court.  Congress enacted the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") to close this loophole and to ensure that national, federal standards would be applied to challenges involving publicly traded securities.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, No. 04-1371, 2006 WL 694137 (U.S. Mar. 21, 2006); Dudek v. Prudential Sec., Inc., 295 F.3d 875, 877 (8th Cir. 2002); In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig., 105 F. Supp.2d 1037, 1039 (D. Minn. 2000). See also SLUSA, Pub. L. No. 105-353, § 2, 112 Stat. 3227, 3227 (Congress enacted SLUSA "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA].").

"SLUSA provides for the immediate dismissal of certain putative class actions based on state law alleging an untrue statement or omission of a material fact made in connection with the purchase or sale of a covered security."  Vohs v. Miller, 323 F. Supp.2d 965, 973 (D. Minn. 2004) (citing Dudek, 295 F.3d at 877 n.1).  Preemption and dismissal under SLUSA is appropriate for any claim that meets four criteria: (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant's alleged misrepresentation or omission of a material fact was made "in connection with" the purchase or sale of a "covered security." Sofonia v. Principal Life Ins. Co., 378 F. Supp.2d 1124, 1128 (S.D. Iowa 2005) (citing Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002)); 15 U.S.C. §§ 78bb(f)(1)-(2).

The Court must focus on the substance of Plaintiffs' allegations and be wary of efforts to defeat application of SLUSA through artful pleading.  See Dudek, 295 F.3d at 879.  The presence or absence of a key word or phrase is not determinative of SLUSA's applicability, but rather whether a reasonable reading of the Complaint reveals allegations generally within SLUSA's purview.  See Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304 (3d Cir. 2005).  When the "gravamen" or "essence" of the complaint involves an untrue statement or

substantive omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal.  See Dudek, 295 F.3d at 879.  See also SEC v. Zandford, 535 U.S. 813, 819 (2002).  In this case, Plaintiffs' efforts to circumvent SLUSA through artful pleading are obvious.  Consequently, their claims are preempted and should be dismissed.

### 1. Plaintiffs Allege A Covered Class Action.

Under SLUSA, a "covered class action" is a lawsuit in which "[d]amages are sought on behalf of a class of more than 50 persons or prospective class members . . . ."  15 U.S.C. §§ 78bb(f)(5)(B)(i)(I); 77p(f)(2)(A)(i)(I).  Here, Plaintiffs purport to bring various state law claims on behalf of a nationwide class and state subclasses of beneficiaries who had their assets invested in Nations Funds by the Bank acting as trustee.[6]  See Siepel Complaint at ¶¶ 44-53.  Plaintiffs expressly allege their purported class and subclasses include "many thousands" of beneficiaries.  See id. at ¶ 44.  Clearly, Plaintiffs' lawsuit meets SLUSA's definition of a covered class action.

### 2. Plaintiffs' Claims Are Founded On State Law.

Plaintiffs' claims are also clearly founded on state law, as they assert state law claims for breach of fiduciary duty, breach of contract, and unjust enrichment.  See id. at ¶¶ 60-86.

### 3. The Core Allegations In Plaintiffs' Complaint Are That Defendants Misrepresented Or Omitted Material Facts.

On its face, Plaintiffs' Complaint alleges that Defendants misrepresented and omitted key material facts.  Plaintiffs' Complaint centers on the singular theme that Defendants induced Plaintiffs and other beneficiaries of trust accounts and other financial assets to consent to the Bank investing those assets in Nations Funds through certain misrepresentations and omissions

---

6    Defendants do not concede that the predominance requirement for class certification, or any other requirement for class certification under Fed. R. Civ. P. 23, can be satisfied here.

about the value of those investments and the related fees and expenses. Plaintiffs numerous

allegations of misrepresentation and omission include, but are not limited to:

> Although plaintiff Reinke signed a Receipt and Waiver of Notice of Filing Declaration of Completion of Probate on March 6, 2004, she was induced to do so by the filing of a <u>false and misleading</u> Declaration of Probate which, *inter alia*, <u>concealed</u> from plaintiff Reinke . . . that the Bank, as Personal Representative, had engaged in self dealing; that it had purchased shares of the Nations Funds knowing that alternative investments could have been purchased for the Estate with higher investment yields with comparable safety; that the prospectuses distributed to plaintiff Reinke in connection with the Nations Funds were <u>false and misleading</u> in material respects . . . and <u>did not adequately disclose</u> to her 'the true direct and indirect expenses charged by Nations Funds' . . . Thus, plaintiff Reinke's acknowledged receipt of 'all to which she is entitled from the Personal Representative' was induced <u>fraudulently</u>[.]

*Siepel* Complaint at ¶ 14(a) (emphasis added).

> NFT and its Trustees aided and abetted the Bank in the breach of its fiduciary duties to the members of the Class, which NFT and its legal counsel facilitated by generating <u>deceptive</u> Nations Funds prospectuses and other 'disclosure documents' which <u>concealed</u> material facts with respect to the Conversions and otherwise.  Such material facts were <u>concealed</u> from, *inter alia*, the beneficiaries and co-fiduciaries of the affected fiduciary accounts[.]

<u>Id</u>. at ¶ 20 (emphasis added).

> In response to such coercion and the <u>deceptive and unclear</u> information provided by the Bank, upon information and belief, co-fiduciaries and beneficiaries of the fiduciary accounts . . . provid[ed] to the Bank their <u>uninformed and fraudulently</u> induced 'consent' to the Conversions.

<u>Id</u>. at ¶ 30 (emphasis added).

> Enclosed with . . . form letters sent to, *inter alia*, some beneficiaries of fiduciary accounts, co-fiduciaries, administrators of employee benefit plans and/or managers of foundations were various prospectuses and other documents which were drafted so as to <u>conceal</u> the motives of the Bank and BAC for the Conversions into the defendants' proprietary mutual funds, the benefits of the Conversions to them and their subsidiaries or the increased costs and expenses that would be incurred by the fiduciary accounts as a result of the Conversions. There was <u>no explanation</u> in plain English that would put the recipients of these documents on notice of the Bank's wrongdoing as referred to herein.  In fact, the Bank and the lawyers who drafted these documents, including NFT's counsel and in-house counsel for BAC and its subsidiaries, used such language to <u>conceal</u> the fact that although in many cases there was a credit for certain of the post-Conversion investment advisory fees to be incurred by fiduciary accounts, the credits were insufficient to overcome the substantially higher expenses that fiduciary accounts would bear post-Conversion and that the Bank intended to reduce or eliminate the credit as soon as practicable[.]

<u>Id</u>. at ¶ 31 (emphasis added).

Among other material facts these counsel <u>concealed and thus excluded</u> from the Nations Funds prospectuses was the fact that the various fees and expenses of Nations Funds were to be determined unilaterally by BAC and/or its subsidiaries and the agreements with them were 'no bid' and without any effort to determine whether these BAC subsidiaries were the most appropriate advisors or suppliers of other services to the Nation Funds or how their respective fees and other charges were determined.

<u>Id</u>. (emphasis added).

At <u>no place</u> in any of the prospectuses the defendants issued to beneficiaries of fiduciary accounts in connection with the Conversions <u>did they disclose</u> that all fiduciary accounts affected by the Conversions would be forced to bear substantially higher investment-related expense levels post-Conversion than those which preceded it, even allowing for whatever credits the Bank applied to its fees for serving as fiduciary.

<u>Id</u>. at ¶ 32 (emphasis added).

Significantly, <u>at no time</u> did the foregoing 'disclosure' documents <u>disclose</u> clearly to a co-fiduciary, a beneficiary or other person interested in the affected fiduciary accounts the true additional direct and indirect expenses of the Conversion they were being asked to approve (although some of such 'disclosures' were buried in the Nations Fund prospectuses) nor, in fulfillment of the Bank's fiduciary responsibilities, did the Bank make any personal efforts to insure that plaintiffs or other similarly situated understood the extent to which the Bank, NFT and BAC would benefit from the Conversions and how the plaintiffs' accounts and other fiduciary accounts would end up paying substantially more for the investment and related services that the Bank had historically supplied in partial consideration for the Bank's fees for serving as corporate fiduciary.

<u>Id</u>. at ¶ 33 (emphasis added).

Upon information and belief, despite its ability to dictate the content of the Nations Funds prospectuses, <u>at no time</u> following the foregoing 'disclosure' did the Bank make any <u>complete and candid disclosure</u> of the full extent of the damages caused to the fiduciary accounts by the Conversions or other improper investments in the Bank's proprietary funds.  Further, the defendants made <u>no disclosure</u> of the true motives of the defendants in carrying out the Conversions or the full extent to which the defendants were profiting unjustly therefrom and, in particular the additional assets which would flow into the Nations Funds and other proprietary mutual funds, making them more saleable to the investing public generally. . . Indeed, plaintiff Reinke and certain other beneficiaries have sought to obtain such information or other similar information relating to the expenses of investing the assets of fiduciary accounts in the defendants' proprietary mutual funds from the Bank and have <u>never received 'straight' or any</u> answers to their questions with respect thereto and have received <u>misleading or downright deceptive</u> information as to the impact of such investments upon them and their fiduciary accounts.

<u>Id</u>. at ¶ 34 (emphasis added).

The disclosure of fees associated with mutual fund investments is an area comprehensively regulated by federal securities laws and thus is precisely the type of action which SUSLA was intended to pre-empt.  See Press v. Quick & Reilly, Inc., 218 F.3d 121, 131-32 (2d Cir. 2000).  In cases like this where plaintiffs have attempted to conceal claims based on the misrepresentation or omission of material facts with state law labels, courts in this Circuit have disregarded these labels and dismissed the claims as preempted by SLUSA.  See, e.g., Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 803 (8th Cir. 2003); Dudek, 295 F.3d 875; Sofonia, 378 F. Supp. 2d 1124; Vohs, 323 F. Supp. 2d 965.

In Dudek, the plaintiffs filed a putative class action alleging that the defendants improperly marketed tax-deferred annuities to accounts that already enjoyed tax-deferred status.  Dudek, 295 F.3d at 877.  Specifically, the plaintiffs alleged that the annuities were inappropriate investments because their tax-deferred accounts did not need the tax benefits, so the extra fees and costs that the tax-deferred annuities entailed were a waste of the investors' money.  See id.  The plaintiffs initially filed their claims in New York and made affirmative allegations of fraud, misrepresentation, and non-disclosure.  After the plaintiffs voluntarily dismissed their claims in New York, they filed a complaint in Iowa that did not include their fraud, misrepresentation, and non-disclosure allegations.  The defendants moved to dismiss the Iowa action based on SLUSA preemption.  Arguing against the motion to dismiss, the plaintiffs claimed that SLUSA did not apply to their case "because their complaint did not allege fraud or a misrepresentation or omission of material fact."  Id. at 879.  "The district court rejected this contention and dismissed plaintiffs' class action because its 'gravamen . . . involves an untrue statement or substantive omission of a material fact in connection with the purchase or sale of a covered security.'"  Id.  Upholding the district court, the Eighth Circuit Court of Appeals found that the plaintiffs' complaint was based upon allegations that the defendants misstated or omitted material facts:

> [T]he overall target of both complaints is what plaintiffs call defendants' 'general business plan to sell tax-deferred annuities for investment by persons owning qualified retirement plans.'  As the district court recognized, the essence of both

complaints is the unlawful marketing of tax-deferred annuities, either by misrepresenting their suitability for tax-deferred retirement plans, or by failing to disclose their unsuitability for such accounts.  In substance, both complaints allege that defendants misstated or omitted material facts in connection with the purchase and sale of the tax-deferred annuities.  Moreover, fairly read, plaintiffs' Iowa complaint alleges that defendants 'used or employed [a] deceptive device or contrivance in connection with the purchase or sale of a covered security,' a claim expressly preempted by 15 U.S.C. §§ 77p(b)(2) and 78bb(f)(1)(B).

Id. at 879-80.

Each and every count of Plaintiffs' Complaint incorporates by reference all of the alleged misrepresentations and omissions.  See *Siepel* Complaint at ¶¶ 60-86.  In other words, the "gravamen" of the Complaint is one of misrepresentation and omission with respect to investments in a covered security and, in that regard, is preempted by SLUSA.

### 4. Plaintiffs' Claims Are In Connection With The Purchase Of A Covered Security.

#### a. Plaintiffs' Claims Involve A Covered Security.

There is no dispute that Nations Funds are "covered" securities, which are defined as securities that satisfy the standards of the Securities Act of 1933 §§ 18(b)(1) and (b)(2), including "those securit[ies] issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940."  See 15 U.S.C. §§ 77p(f)(3), 77r(b); see also Sofonia, 378 F. Supp. 2d at 1128-1129; In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig., 105 F. Supp. 2d at 1040.

#### b. The "In Connection With" Requirement Is Met In This Case.

The Supreme Court has traditionally given a broad interpretation to the phrase "in connection with" and has held that this language is to be construed "not technically and restrictively, but flexibly to effectuate its remedial purpose," which is "to achieve a high standard of business ethics in the securities industry."  Zandford, 535 U.S. at 819.  See also Merrill Lynch, 2006 WL 694137, at *7 (citing Super. of Ins. of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6 (1971); Zandford, 535 U.S. at 820).  In Merrill Lynch, the Court affirmed that the traditional broad interpretation that has been given to this language extends to the "in connection with"

phrase as it is used in SLUSA.  Specifically, the Court held that "it is enough that the fraud alleged 'coincide' with a securities transaction--whether by the plaintiff or by someone else." See id. at *7. "The requisite showing, in other words, is 'deception "in connection with the purchase or sale of any security," not deception of an identifiable purchaser or seller.'" Id. (citing United States v. O'Hagan, 521 U.S. 642, 651, 658 (1997)).  See also SEC v. Zandford, 535 U.S. at 825 (When the complaint "describes a fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide[,] . . . [t]hose breaches [are] 'in connection with' securities sales within the meaning of § 10(b).")

Relying on this traditional interpretation, the district court in Sofonia found that SLUSA preempted the plaintiff's claims.  There, the plaintiff brought a purported class action for fraud, breach of fiduciary duty, and unjust enrichment stemming from his claim that, through the process of demutualization,[7] the defendants had deprived the putative class of certain benefits. See Sofonia, 378 F. Supp. 2d at 1126.  As part of the demutualization, the members of the mutual insurance holding company, including the plaintiff and the purported class, were to receive common stock in the newly formed public company.  See id. at 1127.  The members were provided with certain materials explaining the demutualization and were asked to approve the plan, which they subsequently did.  See id.  In his complaint, the plaintiff alleged that the demutualization materials contained deceptive statements that caused members to vote in favor of demutualization, resulting in the putative class receiving smaller amounts of the common stock than they would have absent the deceptive acts.  See id.

Addressing the "in connection with" language, the plaintiff argued that the presence of securities was incidental to his claim, which was premised on the wrongful loss of benefits that were due him and the putative class.  See id. at 1129.  Relying on the Supreme Court's opinion in SEC v. Nat'l Sec., Inc., 393 U.S. 453 (1969), the court rejected this argument because the

---

[7]     Demutualization is the process whereby the defendant mutual holding company converted from a mutual insurance holding company to a publicly traded company.

plaintiff "plainly and clearly alleged" that the defendants fraudulently induced him to exchange his membership interests in the mutual holding company for the common stock:

> Despite [the plaintiff's] claim that he is, in reality, only concerned with the recapture of benefits . . ., the fact remains that his Complaint has plainly and clearly alleged that [the defendants] fraudulently induced him to exchange his membership interests in [the mutual holding company] for common stock . . . . The alleged fraudulent conduct was, therefore, an integral step in [the plaintiff's] exchange of his membership interest for [the common] stock and the present action satisfies the "in connection with" requirement for SLUSA preemption.

Id. at 1130.

Plaintiffs here allege what amounts to a scheme to fraudulently induce beneficiaries of trust accounts, estates, and IRAs to consent to the Bank using the assets of those investments to invest in Nations Funds by misleading them about the value of those investments and the related fees and expenses.  As in Merrill Lynch and Sofonia, the alleged breach of fiduciary duty, as well as the claims for breach of contract and unjust enrichment, coincides with the alleged scheme to invest trust assets in Nations Funds and derive a benefit in relation to those investments.[8]  As such, Plaintiffs' claims of misrepresentations and omissions on the part of the Defendants, which pervade the entire Complaint and form the basis of every claim, are "in connection with" a securities transaction and are preempted by SLUSA.  The Complaint therefore must be dismissed.

---

[8]      The damages Plaintiffs seek are also relevant in connecting the allegations to the securities transactions.  See Rowinski, 398 F.3d at 301.  Plaintiffs allege that they are entitled to any investment losses resulting from the investment of trust assets into Nations Funds, as well as the reimbursement of management and advisory fees charged to the trust assets in relation to those investments.  These damages "connect" the allegations of misrepresentations about the Nations Funds and the fees associated with those funds to transactions in securities.  Cf. Behlen v. Merrill Lynch, 311 F.3d 1087, 1094 (11th Cir. 2002) (allegations of "excess fees and commissions" incurred in association with securities transactions are a relevant factor in determining whether claims are "connected" to securities transactions), cert. denied, 539 U.S. 927 (2003).

**C.    Plaintiffs' Complaint Should Be Dismissed Because Investments In Nations Funds Are Lawful Under State Law And Are Authorized By Each Of The Plaintiffs' Trust, Estate, And IRA Instruments.**

Each of Plaintiffs' claims for breach of fiduciary duty, breach of contract, and unjust enrichment is predicated on the faulty contention that the investment of financials assets was improper.  See Complaint at ¶¶ 64, 68, 71, 76-79, 82-85.  Plaintiffs have failed to state a claim upon which relief can be granted because the alleged improper conduct that forms the basis for their claims— investment in Nations Funds—was expressly authorized by state law and the terms of Plaintiffs' trust, estate, and IRA instruments.  No claim, therefore, exists as a matter of law.[9]

The laws of virtually every state, including the states governing Plaintiffs' trusts, estate and IRA here, permit trustees to invest the assets of those investments in affiliated mutual funds.  See Fla. Stat. Ann. § 737.402 (Florida); Iowa Code § 633.123A(1) (Iowa); Mo. Stat. Ann. § 362.550 (11) (Missouri); N.M. Stat. Ann. § 46-2A-1 (New Mexico); Ann. Rev. Code Wash. § 11.100.035(3) (Washington).  Moreover, the Bank's conduct of investing assets in mutual funds, including affiliated mutual funds, was authorized by Plaintiffs' trust, estate and IRA instruments.  Indeed, each of Plaintiffs' trust, estate, and IRA instruments authorized the Bank to invest their financial assets in affiliated mutual funds, which includes Nations Funds.[10]

---

9    Although Plaintiffs claims are based on their trust and IRA instruments, Plaintiffs did not attach any those documents to their Complaint.  "A plaintiff cannot avoid dismissal of a legally deficient claim by failing to attach a dispositive document to the complaint."  Allied Mech. Servs. v. Local 337 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., No. 99-1494, 2000 U.S. App. LEXIS 15723, at *8 (6th Cir. June 26, 2000).  Because the trust and IRA instruments are central to Plaintiffs' claims, and are submitted with Defendants' Motion, they are "part of the pleadings" and can be considered by this Court when ruling on Defendants' Motion.  Weiner, D.P.M. v. Klais and Co., Inc., 108 F.3d 86, 88-89 (6th Cir. 1997); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192 (3d Cir. 1993); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. 1991).

10    See Page Trust at 7.2, 7.8 (attached as Exhibit 23)(stating that the trustee is authorized "[t]o retain assets deposited with it or subsequently acquired, and any exchanged, merged, substitute or successor assets, for as long a period as it may think proper in the exercise of its absolute discretion . . . and without liability for any decrease in the value thereof" and "to hold stock in Trustee corporation as a true asset and

Continued on following page

Accordingly, because the Bank's conduct was permissible under state law and proper under the Plaintiffs' instruments, they cannot use the Bank's actions as a basis for their claims.  See Hughes v. LaSalle Bank, N.A., No. 02 Civ. 6384, slip op. at 28 (S.D.N.Y. March 13, 2006) (in dismissing the same claims brought by the same Plaintiffs' counsel, the Court noted that the applicable state law "expressly permits a trustee to invest and reinvest the trust estate in a mutual fund, including those mutual funds 'for which the trustee or an affiliate acts as a advisor or manager' and receives 'reasonable remuneration' for any services provided to the mutual funds.") (attached as Exhibit 27).  Where the Bank did not exceed its authority, Plaintiffs have failed to state a claim upon which relief can be granted.  See, e.g., DeMello v. Buckman, 916 So.2d 882, 886-87 (Fla. 4th DCA 2005).

Furthermore, Plaintiffs' breach of contract claims must also be dismissed because Plaintiffs cannot identify any provisions of the trust, estate, or IRA instruments that the Bank breached.  As set forth above, Plaintiffs' instruments gave the Bank broad discretionary power.

———————————————

Continued from previous page

Trustee is authorized and requested to exercise full trust powers over such stock . . . including but not limited to the right to purchase additional stock of the corporate trustee or its affiliates or successors"); Siepel Trust at Article VI, Section 1 (attached as Exhibit 22)(stating that the trustee is authorized "[t]o acquire, invest, reinvest, exchange, retain, mortgage, lease or otherwise manage or dispose of assets . . . exercising the judgment and care under the circumstances then prevailing, which men of prudence, discretion, and intelligence exercise . . . Trustees are authorized to acquire, retain and dispose of every kind of property, including but not limited to bonds, debentures, and other corporate obligations, common or preferred stocks, and common trust funds operated by the Corporate executor and trustee . . . ."); Williams Trust at ¶ 7 (attached as Exhibit 18)(stating that the Bank as successor trustee may invest in "common trust funds or mutual funds, whether operated by my corporate executor or not"); Reinke Estate at ¶ VI (attached as Exhibit 19)(authorizing the Bank as Executor "to act as such without bond and without intervention of any court, except as may be required under the laws of the State of Washington in the case of nonintervention wills"); and Cohen IRA Agreement at 4, IRA Adoption Agreement at 4 (attached as Exhibits 20 & 21)(stating that "[t]he Trustee has full power and authority to invest and reinvest the assets held under this Trust Agreement . . . without distinction between principal and income . . [and t]o hold or invest any part or all of the trust fund in any common or preferred stocks, bonds . . . securities of an investment trust or investment company registered under the Investment Company Act of 1940 . . . or other property of any kind, real or personal, permissible as an investment for an individual retirement account" and that the Trustee may "invest my account as the Trustee shall determine appropriate from time to time pursuant to Section 5.1 of the BOA IRA Trust Agreement").

Indeed, Plaintiffs do not identify in the Complaint any term of the instruments that prohibited investment in Nations Funds. A party cannot be liable for breach of contract when their actions did not breach a term of the contract. See Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc., 299 F.Supp.2d 505, 519 (D. Md. 2004); Martinez v. Equity Mutual Ins. Co., 62 S.W.3d 98, 98-101 (Mo. Ct. App. 2001); Flagship Nat'l Bank v. Gray Distrib. Sys., Inc., 485 So.2d 1336, 1341 (Fla. 3d DCA 1986). Accordingly, Plaintiffs' breach of contract claim fails as a matter of law for this reason as well and should be dismissed.

### D.   Plaintiff Cohen's Claims Should Be Dismissed For Mandatory Arbitration.

Plaintiff Cohen's claims arise from the Robert S. Cohen Managed Individual Retirement Account, which he established with Boatmen's Trust Company in 1997. In 2002, after the Bank acquired Boatmen's Trust Company, Plaintiff Cohen executed the IRA Adoption Agreement with the Bank to establish the Cohen IRA Agreement. Under the Adoption Agreement and the IRA Agreement, Plaintiff Cohen designated the Bank as trustee of his IRA. The IRA Adoption Agreement includes an arbitration provision contractually binding Plaintiff Cohen to submit all disputes regarding his IRA to binding arbitration. See Exhibit 21 at p. 13. The arbitration provision provides:

> **13.7  Arbitration.**  Any controversy or claim between the Grantor or Beneficiary and the Trustee (or their heirs, successors and Personal Representatives) relating to the trust or this Trust Agreement shall at the request of a party be determined by arbitration. The arbitration shall be conducted in the state in which the trust is primarily administered and shall be administered by J.A.M.S./ENDISPUTE ("J.A.M.S."), which shall appoint an arbitrator. If J.A.M.S., or any successor organization of J.A.M.S., is unable or legally precluded from serving, then the American Arbitration Association ("A.A.A.") shall appoint an arbitrator. If A.A.A. is unable or legally precluded from serving, then the affected parties shall agree as to the arbitrator. In any arbitration proceeding, the United States Arbitration Act (Title 9, U.S. Code) and any rules of practice and procedure of the organization that appointed the arbitrator shall govern.

Id.

The Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), governs arbitration provisions such as the one agreed to by Plaintiff Cohen.  By enacting the FAA, Congress intended to establish a "national policy favoring arbitration."  Southland Corp. v. Keating, 465 U.S. 1, 10 (1984); see also Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001).  "The FAA establishes that 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'"  Lyster, 239 F.3d at 945 (quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  A court's enforcement of an arbitration provision governed by the FAA is not discretionary; rather, it must give full effect to "Congress' clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  Moses H. Cone, 460 U.S. at 22.  "Generally, 'there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."'"  Lyster, 239 F.3d at 945 (quotation omitted).

Here, all of Plaintiff Cohen's claims—breach of fiduciary duty, breach of contract, and unjust enrichment—arise from the administration of the IRA Agreement and IRA Adoption Agreement.  Such claims clearly fall within the broad arbitration provision, which provides: "**Any controversy or claim** between the Grantor . . . and the Trustee . . . relating to the trust or this Trust Agreement **shall** at the request of a party be determined by arbitration."  See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) (finding that use of the phrase "in connection with or relating to" "resolves any doubt that [the clause] is a 'broad' clause"); McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1998) (noting the distinction between "broad" clauses that refer to arbitration of "all" disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of

disputes).  Therefore, it cannot be said with positive assurance that the arbitration provision contained in the IRA Adoption Agreement does not cover Plaintiff Cohen's claims, which are based upon his account, the administration of his account, the fees charged, and/or any investment into Nations Funds.  And when the parties agree to such a broad arbitration provision, "even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration."  Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co., 118 F.3d 619, 621 (8th Cir. 1997); see also Pennzoil Exploration, 139 F.3d at 1067 ("Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.").

When, as here, no useful purpose will be served by granting a stay of the litigation because **all** of Plaintiff Cohen's claims are subject to arbitration, the court should dismiss those claims with prejudice.  See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Lewis Tree Serv., Inc. v. Lucent Tech., Inc., 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002); Reynolds v. Halliburton Co., 217 F. Supp. 2d 756, 758 (E.D. Tex. 2002).  Plaintiff Cohen's claims, therefore, should be dismissed.[11]

III.   **If the Court Does Not Dismiss The Complaint, Then Plaintiffs Should Be Ordered To File An Amended Complaint That Alleges Additional Facts.**

A.   **Legal Standard Under Federal Rule Of Civil Procedure 12(e).**

Under Federal Rule of Civil Procedure 12(e), "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement[.]"  Fed. R. Civ. P. 12(e). "If a pleading fails to specify the allegations in a manner that provides sufficient notice,

---

11     In the event that the Court chooses not to dismiss Plaintiff Cohen's claims in their entirety, arbitration must still be compelled and this litigation stayed.  See 9 U.S.C. §§ 3 & 4; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Moses H. Cone, 460 U.S. at 24-25; Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 695 (8th Cir. 1994).

a defendant can move for a more definite statement under Rule 12(e)." <u>Swierkiewicz v. Sorema,</u> <u>N.A.</u>, 534 U.S. 506, 514 (2002).  Further, a more definite statement is warranted when there is a "major ambiguity or omission in the Complaint that renders it unanswerable[.]" <u>Moore v.</u> <u>Powell</u>, No. 05-06080-CV-SJ-FJG, 2006 U.S. Dist. LEXIS 1895, at *6 (W.D. Mo. Jan. 9, 2006) (internal citations omitted).

### B.   Plaintiffs Have Alleged Insufficient Facts About Defendants' Alleged Excessive and Unlawful Fees And Charges.

Plaintiffs' Complaint makes numerous unfounded and unexplained references to alleged excessive and unlawful fees and charges imposed by Defendants, including that:

- Defendants permitted fees to be charged to Nations Funds at "artificially high levels[.]" Complaint at ¶ 20.

- Defendants' "actions resulted in making investments for these accounts that resulted in higher total direct and indirect expense charges[.]" <u>Id</u>. at ¶ 25.

- Plaintiffs' fiduciary accounts "were damaged by reason of the higher expenses charged to such accounts as a consequence" of Defendants' action.  <u>Id</u>. at ¶ 51.

- Defendants imposed fees that "exceeded the amount to which the Bank is entitled for payment".  <u>Id</u>. at ¶ 72.

- Defendants charged fees that "exceed the contractual amounts for such charges agreed upon".  <u>Id</u>. at ¶ 73.

- Defendants have "unlawfully extracted huge sums in the form of fees and other charges assessed against fiduciary accounts and they will continue indefinitely to extract unlawful fees and other charges from" Plaintiffs.  Id. at ¶¶ 80, 86.

Plaintiffs' allegations omit sufficient facts about the alleged excessive and unlawful fees and charges to put Defendants on sufficient notice such that they can meaningfully respond to the allegations.  Indeed, nowhere does the Complaint allege which Plaintiffs allegedly incurred the excessive and unlawful fees and charges, when the alleged excessive and unlawful fees and charges were incurred, the amount of the alleged excessive and unlawful fees and charges, or

sufficient facts from which Defendants can perform an investigation to identify the alleged excessive and unlawful fees and charges.  Unlike other cases in which some discovery might be necessary to obtain evidence to support these allegations, these Plaintiffs have obtained any and all evidence necessary to support their allegations through the extensive discovery in the five other cases their attorneys filed and in which some of these Plaintiff participated.  Accordingly, Plaintiffs should be ordered to file a more definite statement in the form of an Amended Complaint as to the allegations relating to alleged excessive and unlawful fees and charges or those allegations should be stricken.

## <u>CONCLUSION</u>

Plaintiffs and their attorneys have engaged in a pattern of abusive and vexatious litigation practices that must be stopped.  By filing six cases and then using those cases to escape Court imposed deadlines and unfavorable rulings, Plaintiffs and their attorneys have engaged in impermissible judge shopping.  Furthermore, according to Plaintiffs and their attorneys' own allegations, this case and *Kutten* substantially overlap; therefore, Plaintiffs and their attorneys have violated the first-filed rule.  For these two reasons, the Court should decline jurisdiction over this case.  Even if the Court accepts jurisdiction, Plaintiffs' Complaint should still be dismissed because they fail to state a claim upon which relief can be granted.  Plaintiffs' claims are preempted by federal law; improperly predicated on conduct that is consistent with state law and Plaintiffs' trust, estate, and IRA instruments; and Plaintiff Cohen has failed to comply with the arbitration provision in his IRA instrument.  Finally, if the Court elects not to decline jurisdiction or dismiss the Complaint, Plaintiffs should be ordered to file an Amended Complaint to plead their allegations of excessive and unlawful fees and charges with greater specificity.

DATED:  March 27, 2006

Respectfully submitted:

BRYAN CAVE LLP

By:     /s/ Edward Dowd, Jr.
        Edward Dowd, Jr.
        Jeffrey S. Russell
        Darci Madden
        One Metropolitan Square
        211 N. Broadway, Suite 3600
        St. Louis, MO  63102
        Telephone: 314.259.2000
        Facsimile:  314.259.2020

        Gregory B. Jordan
        Mary J. Hackett
        Christopher J. Soller
        Sharon L. Rusnak
        REED SMITH LLP
        435 Sixth Avenue
        Pittsburgh, PA 15219
        Telephone: 412.288.3131
        Facsimile:  412.288.3063

        Attorneys for Defendants Bank of
        America, N.A. and Bank of America
        Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served this 27th day of

March, 2006 upon the following counsel of record by the Court's electronic filing system:

> Steven M. Hamburg, Esq.
> Holly M. McIntyre, Esq.
> 8909 Ladue Road
> St. Louis, MO  63124
>
> Richard D. Greenfield, Esq.
> Greenfield & Goodman LLC
> 7426 Tour Drive
> Easton, MD  21601
>
> Amy Boomhouwer, Esq.
> Gancedo & Nieves LLP
> 144 W. Colorado Boulevard
> Pasadena, CA  91105

/s/ Edward Dowd, Jr.
Counsel for Defendants Bank of America,
N.A. and Bank of America Corporation
