**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

GEORGE SIEPEL, *et al.*

        Plaintiffs,

    v.                        Civil Action No. 04-CV-02393 (RWS)

BANK OF AMERICA, N.A., *et al.*

        Defendants.

## MEMORANDUM OF DEFENDANT COLUMBIA FUNDS SERIES TRUST IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Defendant Columbia Funds Series Trust, f/k/a Nations Funds Trust, ("Nations") respectfully submits this memorandum in support of its Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

### INTRODUCTION

This is a suit by eight unrelated individual plaintiffs who allege they are beneficiaries of fiduciary accounts, the assets of which were invested in the Nations Funds. Plaintiffs assert various state law claims for breach of fiduciary duty, breach of contract and unjust enrichment. Despite the variety of circumstances surrounding their claims, plaintiffs purport to bring this case as a class action.

Nations is an investment company that houses a series of mutual funds. As a preliminary matter, Nations has never maintained an office in Missouri, does not transact business in Missouri and is not subject to the general jurisdiction of this Court. Nor do any of the causes of action arise from acts that would subject Nations to this Court's long-arm jurisdiction.

All of plaintiffs' causes of action are premised on allegations of misrepresentation or omission in connection with the purchase of securities. Therefore, they are preempted by the Securities Litigation Uniform Standards Act and must be dismissed.

Nations has no direct relationship with plaintiffs, much less the relationship of trust and confidence necessary to establish a fiduciary relationship. Nor has Nations done anything that would have provided "substantial assistance" to the Bank in its alleged breach of fiduciary duty to plaintiffs. The provisions of the Investment Company Act and state law authorize the actions of which plaintiffs complain. In fact, the Securities and Exchange Commission specifically authorized the conduct described in plaintiffs' Complaint

Nations also had no contractual relationship with plaintiffs, and plaintiffs were not third party beneficiaries of contracts Nations had with others. Moreover, there is no factual allegation that Nations breached any contracts it had with others so as to cause harm to plaintiffs. There is also no suggestion that Nations received a benefit that would be unjust for it to retain. To the contrary, plaintiffs complain that Nations paid too much for the services that it received.

Finally, plaintiffs' request for an injunction dictating the manner in which Nations selects and contracts with its investment advisors would interfere with the complex scheme regulating mutual funds and is preempted by federal law.

## STATEMENT OF FACTS

Plaintiffs are eight individual residents of at least six different states[1] who allege they are the beneficiaries of trusts, estates or other fiduciary accounts maintained at the Bank of America

---

[1]  Plaintiffs are residents of Washington, Missouri, Florida, Pennsylvania, Illinois, and Oregon. This case also involves trusts established under the laws of the states of Iowa and New Mexico.

2

The Bank of America Corporation ("BAC") is a financial holding company with a number of subsidiaries, including the Bank of America, N.A. (the "Bank")  BAC and the Bank both maintain their principal place of business in Charlotte, North Carolina.

Nations, a Delaware statutory trust, is an investment company registered under the Investment Company Act of 1940 ("Investment Company Act")  Nations houses a family of mutual funds, now known as the Columbia Funds but formerly known as the Nations Funds During the times at issue in the Complaint, Nations also maintained its principal place of business in Charlotte, North Carolina.  Contrary to plaintiffs' allegations, Nations itself does not maintain an office or otherwise do business in Missouri.  Compl. ¶ 16.

Plaintiffs complain that the Bank, acting in its fiduciary capacity in accordance with applicable state and federal laws and pursuant to the terms of the various instruments creating the fiduciary accounts at issue, chose to invest assets from the fiduciary accounts in the Nations Funds.  Nations has no direct relationship with any of plaintiffs, and none of plaintiffs is a shareholder in Nations.  To the extent the Bank used funds from its fiduciary accounts to purchase shares of Nations Funds, the Bank as fiduciary is the shareholder in Nations.

The Investment Company Act and the SEC rules and regulations implementing it provide a detailed administrative scheme regulating investment companies such as Nations.  That administrative scheme expressly allows Nations to participate in the type of transactions that are at the root of plaintiffs' Complaint:  the conversion of assets from Common Trust Funds into mutual fund shares.

3

Nations contracts with two subsidiaries of BAC to provide it with investment advisory and administrative services [2] These contracts, including the process by which they are approved and the fees charged for services provided, are regulated by the provisions of the Investment Company Act and the regulations promulgated by the Securities and Exchange Commission ("SEC") thereunder. Pursuant to Delaware statute and the provisions of the Investment Company Act, Nations is governed by a Board of Trustees ("Board") elected by its shareholders and/or appointed by its Board. *See* 15 U.S.C. § 80a-16(a); Del. Code Ann. Tit. 12, § 3806. Also, in conformance with the Investment Company Act, no more than 60 percent of the members of the Board can be "interested persons" of the Bank. 15 U.S.C. §§ 80a-10(a) and 2(a)(19).

Nations is not part of the Bank's corporate family but instead is a public company whose shares are owned by the various individuals and entities who invest in it. Nations uses Form N-1A designed by the SEC to register under the Investment Company Act to offer its shares to the public under the Securities Act of 1933. Part A of Form N-1A governs the disclosures required in a prospectus. *See* Form N-1A attached hereto as Exhibit 2. Among other things, part A proscribes the manner in which the fees and expenses of the fund must be disclosed. *See* Exhibit 2 at pp. 13-14. It also specifies the disclosure required concerning the management of the fund, including the identity of and amounts paid to the adviser. *See* Exhibit 2 at pp. 17-18.

Plaintiffs allege that beginning sometime prior to 1998, the Bank began a process to eliminate its Common Trust Funds and invest the assets that it had historically invested in

---

[2]    Exhibit 1, attached hereto, illustrates in a clear and concise manner the contractual relationships between Nations and Bank subsidiaries. This Exhibit also illustrates that Nations is a separate and distinct legal entity.

4

Common Trust Funds in the Nations Funds. The transfer of assets from Common Trust Funds to mutual funds is referred to as the "Conversion." The Bank invested the assets of the Common Trust Funds in Primary A Shares of designated Nations Funds. The Primary A Shares do not have a front-end or contingent deferred sales charge (often referred to as a "Load"), are not subject to any redemption fees and do not bear any Rule 12b-1 distribution fees.

As part of the Conversion, the Bank provided plaintiffs with the prospectuses for the specific Nations Funds in which the Bank was investing assets. A copy of a Nations' prospectus distributed during the relevant time period is attached hereto as Exhibit 3.[3] These are the same prospectuses required by Form N-1A and used for the sale of shares to the general public. Of course, the Bank also provided plaintiffs with various other "disclosure" documents that addressed the Conversion specifically. Compl. ¶¶ 26, 29-31. Plaintiffs admit that they received the prospectuses and the "disclosure documents" but complain because the prospectuses don't address the details of the Conversions. *Id* at ¶¶ 20, 32, 34.

## ARGUMENT

### I.    NATIONS IS NOT SUBJECT TO THIS COURT'S PERSONAL JURISDICTION.

The party seeking to invoke the jurisdiction of a federal court bears the burden to establish that personal jurisdiction exists. *Moog World Trade Corp v. Bancomer, S.A.*, 90 F.3d

---

[3]  When ruling on a motion to dismiss, the Court may consider a document, such as the Nations Funds' prospectus, that is repeatedly referenced in the Complaint and is central to plaintiffs' claims. *See Silver v. H&R Block, Inc.*, 105 F.3d 394, 396 (8th Cir 1997) (holding that a plaintiff cannot defeat a motion to dismiss by omitting documents which are referenced in the complaint and are integral to her cause of action); *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir 1997) (holding a court may consider a document that is referenced in the complaint and is central to plaintiffs claims when ruling on a motion to dismiss).

1382 (8th Cir. 1996) (dismissing action because plaintiff failed to meet burden of proving personal jurisdiction existed). To demonstrate personal jurisdiction, plaintiffs must establish either general jurisdiction, *i.e.*, that Nations has such continuous and systematic contacts with Missouri that it should reasonably be expected to be haled into court here, or specific jurisdiction, i.e., that Nations has committed some specific act in Missouri that directly gives rise to their Complaint. Plaintiffs establish neither.

### A.    Nations is Not Subject to General Jurisdiction in this Court

To establish general jurisdiction, plaintiffs must demonstrate that Nations maintained "continuous and systematic contacts" with Missouri. *Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F. Supp. 2d 1082, 1090 (E.D. Mo. 2001). As Judge Fleissig explained in *Bell*, "[c]onsidering the consequences of general jurisdiction are so significant – the party may be hauled into the forum state to defend any cause of action – the bar to show minimum contacts is set even higher than that required for specific jurisdiction." *Id.* Plaintiffs fail to surmount this high bar.

The Eighth Circuit has set forth a five part test to determine the sufficiency of defendants' contacts with a forum: (1) the nature and quality of the contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Epps v. Stewart Info. Svs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). Plaintiffs cannot allege facts to satisfy any element of the five part test. Instead, they try to obscure the fact that Nations is a distinct corporate entity separate and apart from the Bank and BAC to establish general jurisdiction.

6

Nations is a Delaware statutory trust *and has never maintained an office in Missouri. See Decl. of Robert Carroll at ¶¶ 2-4, attached hereto as Exhibit 4.*[4]  Throughout the Complaint, plaintiffs refuse to distinguish between the Bank and Nations and misstate the facts to do so. In addition, plaintiffs routinely make reference to "defendants" collectively, without alleging to which of the three defendants they are referring, which makes it impossible for Nations to know which specific allegations apply to Nations.

Plaintiffs allege, "upon information and belief," that Nations previously maintained an office in Missouri and intentionally misstate a newspaper article as "evidence" of that fact. Compl. ¶ 16. The article clearly states "**Bank of America Corp.** will close **its** St. Louis Nations Funds office." Compl. ¶ 16 (emphasis added). Despite the fact that the article refers to the closing of a Bank of America office, plaintiffs would have the Court believe that it was Nations that was closing an office in St. Louis. The article, however, says nothing about Nations maintaining an office in Missouri. Moreover, the article also refers to analysts and mutual fund managers, and it is well known to plaintiffs that the investment adviser, and not Nations, employed those persons. This Court does not have personal jurisdiction over Nations simply because the investment adviser that Nations contracted with may have had an office in Missouri.

---

[4]  On a motion to dismiss for lack of personal jurisdiction, the Court may consider declarations on matters outside of the pleadings in determining whether the Court has jurisdiction. *Tiger Mfg. Corp. v. Loadstar Material Handling Equip., Ltd.*, 341 F. Supp. 2d 1107, 1108-09 (W.D. Mo. 2004). The Declaration of Robert Carroll was originally attached to the Motion to Dismiss of Defendant Nations Funds Trust, filed in *Reinke* on February 9, 2005. A copy of the same declaration is attached hereto as Exhibit 4.

Plaintiffs also make the conclusory allegation that Nations "conducts business" in Missouri because other entities market and sell shares of the Nations Funds in the state [5] Compl. ¶ 16. However, plaintiffs then concede that the prospectuses and other Nations Funds materials are "primarily distributed by and through the Bank, BAC and/or their subsidiaries, agents and independent contractors." *Id.* On this the parties agree. *See* Exhibit 4, Decl. of Robert Carroll ¶ 5. The marketing and sale of shares of Nations Funds by third parties in Missouri does not provide a basis for personal jurisdiction over Nations in Missouri. *See, e.g., Campbell v. Bridgestone (USA), Inc.,* No. H-05-0872, 2005 U.S. Dist. LEXIS 36259, at *10-11 (S.D. Tex. Dec. 9, 2005) (holding no personal jurisdiction over tire-maker in forum for alleged tire defect when tire-maker did not engage in any purposeful activity in forum even though its products were sold in forum).

The contracts Nations has with service providers who may have offices in Missouri do not provide "continuous and systematic contacts" with Missouri sufficient to establish this Court's general jurisdiction over Nations.

### B.    Nations is Not Subject to Specific Jurisdiction in this Court

Plaintiffs also do not allege any basis for specific jurisdiction under Missouri's long-arm statute. Missouri's long-arm statute confers personal jurisdiction over "any cause of action arising from . . . (1) the transaction of any business within this state; (2) the making of any contract within this state; [or] (3) the commission of a tortuous act within this state." Mo. Ann.

---

[5] Under plaintiffs' apparent theory of personal jurisdiction, a public company would be subject to jurisdiction in any forum in which its shares of stock are sold. Such a ruling would make the requirement of personal jurisdiction meaningless for any publicly-held company.

Stat. § 506.500.[6]  Jurisdiction must be based upon "the act or conduct set forth in the statute" and

the cause of action must arise from the nonresident defendant's activities in Missouri. *Scullin*

*Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982); *see also Bell*, 200

F. Supp. 2d at 1088-89 (holding specific jurisdiction exists if the claims arise out of or relate to

the defendant's contacts with the forum). In order to establish specific jurisdiction, each of the

eight individual plaintiffs in this case must independently satisfy the requirements of Missouri's

long-arm statute. *See Capital Equip. v. CNH Am., L.L.C.*, 394 F. Supp. 2d 1054, 1057 (E.D. Ark.

2005) (stating "Personal jurisdiction must be established for the claims of each Plaintiff");

*Arnold v. Goldstar Fin. Sys., Inc.*, No. 01-C-7694, 2002 U.S. Dist. LEXIS 15564, at *11 (N.D.

Ill. Aug. 22, 2002) (finding specific personal jurisdiction analysis "must be plaintiff-specific");

*Wilson v. Olathe Bank*, No. 97-CV-2458, 1998 U.S. Dist. LEXIS 5509, at *17 (D. Kan. March 2,

1998) and cases cited therein; *see also* 4 Newberg on Class Actions § 13:38 (4th ed.).

In this case, none of the plaintiffs satisfy the requirements of Missouri's long-arm statute

because they do not identify any connection between Nations' alleged contacts with Missouri

and their alleged harm from investments in the Nations Funds that forms the basis of their

claims. Further, several plaintiffs do not have any connection with Missouri whatsoever. For

---

[6]  Missouri courts have construed this statute "to extend the jurisdiction of the courts of this state
over nonresident defendants to the extent permissible under the Due Process Clause." *State of
Missouri ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970). The due process
clause requires "minimum contacts" between the defendant and the forum state before the forum
state may exercise jurisdiction over the defendant. *World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286, 291 (1980). Sufficient contacts exist when "the defendant's conduct and
connection with the forum State are such that he should reasonably anticipate being haled into
court there," *id.* at 297, and when "maintenance of the suit does not offend 'traditional notions of
fair play and substantial justice.'" *Id.* at 319 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S.
310, 316 (1945)). Plaintiffs cannot allege facts to satisfy the minimum contacts required under
due process.

example, plaintiff Reinke points to no connection between Missouri and any alleged facts of this case – she is a Washington resident, the Bank is a North Carolina resident, and the Spencer Estate, of which she alleges to be a beneficiary and was probated by a Washington State probate court. Compl ¶¶ 14(a) & 15. Similarly, plaintiff Page, both <u>Siepel</u> plaintiffs, and all three <u>Williams</u> plaintiffs are not residents of Missouri and the trusts of which they allege to be beneficiaries were not administered in Missouri. Compl ¶ 14(c)-(e).

Because plaintiffs' claims do not arise out of Nations' alleged activities in Missouri, there is no basis for specific jurisdiction under Missouri's long-arm statute. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d at 1384.

## II.    ALL PLAINTIFFS' CLAIMS ARE PREEMPTED BY SLUSA

The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") preempts a "covered class action" based on state law alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A) (1998). Claims are preempted by SLUSA if (1) the action is a "covered class action," (2) the action is based on state law, (3) the complaint alleges that the defendant misrepresented or omitted a material fact, or has used or employed any manipulative or deceptive device or contrivance, and (4) the alleged misrepresentation or omission was made in connection with the purchase or sale of a covered security. *Id.; see also, e.g., Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc*, 292 F.3d 1334, 1342 (11th Cir. 2002). SLUSA requires dismissal of a complaint when the "operative allegations" or the "gravamen" of the complaint hinge on a theory

10

of misrepresentation of omission.  *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002).[7]  Plaintiffs' Complaint meets all of the requirements of SLUSA, and should be dismissed.

There is no dispute that plaintiffs' Complaint is a "covered class action" because plaintiffs claim that their putative class and subclasses include "many thousands" of people, Compl. ¶ 44.  15 U.S.C. §§ 78bb(f)(5)(B)(i)(I) (defining "covered class action" to mean a class action seeking damages "on behalf of more than 50 persons or prospective class members"). There is no dispute that Nations Funds are covered securities under SLUSA.  *See, e.g., Riley*, 292 F.3d at 1343.  Nor is there a dispute about the fact that plaintiffs' claims are based on state law:  Plaintiffs assert claims for breach of fiduciary duty, breach of contract, and unjust enrichment.  Compl., Count I (Breach of Fiduciary Duty)  ¶¶ 60-65, Count II (Breach of Contract)  ¶¶ 66-69, Count III (Unjust Enrichment)  ¶¶ 70-74, Count IV (Breach of Fiduciary Duty-Missouri State Law)  ¶¶ 75-80, Count V (Breach of Fiduciary Duty- Washington, Missouri, Florida, New Mexico and Iowa State Law)  ¶¶ 81-86.  Therefore, the only issues for this Court to determine are whether plaintiffs' claims are premised on misrepresentations or omissions and whether those misrepresentations or omissions coincide with the purchase or sale of those securities.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, No. 04-1371, 547 U.S. __, 2006 U.S. LEXIS 2497, at *12-13 (U.S. Mar. 21, 2006) (citations omitted) ("Under our

---

[7]  *See also Dacey v. Morgan Stanley Dean Witter & Co.*, 263 F. Supp. 2d 706, 710 (S.D.N.Y. 2003); *Feitelberg v. Merrill Lynch & Co.*, 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002), *aff'd*, 353 F.3d 765 (9th Cir. 2003) ("if it looks like a securities fraud claim, sounds like a securities fraud claim . . . and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up"); *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2002) (rejecting artful pleading that put state-law labels on "what are in essence securities fraud claims").

precedents, it is enough that the fraud alleged 'coincide' with a securities transaction – whether

by the plaintiff or someone else "); *SEC v. Zandford*, 535 U.S. 813, 825 (2002).

### A.    Plaintiffs' Claims Are Premised on Misrepresentations and Omissions.

Plaintiffs allege in numerous places that that Nations Funds' prospectuses and other

documents contained material misrepresentative or omissions.  For example, the Complaint

alleges:

> By acting as described herein, NFT and its Trustees aided and
> abetted the Bank in the breach of its fiduciary duties to the
> members of the Class, which NFT and its legal counsel facilitated
> by **generating deceptive Nations Funds prospectuses** and other
> "disclosure documents" which **concealed material facts** with
> respect to the Conversions and otherwise.  Compl. ¶ 20.

> [t]he prospectuses distributed to plaintiff Reinke in connection
> with the Nations Funds were **false and misleading in material
> respects as** set forth below and did not adequately disclose to her
> "the true direct and indirect expenses charged by Nations Funds."
> Compl. ¶ 14(a).

> **Among other material facts these counsel concealed and thus
> excluded from the Nations Funds prospectuses** was the fact that
> the various fees and expenses of the Nations Funds were
> determined unilaterally by BAC and/or its subsidiaries and the
> agreements with them were "no bid" and without any effort to
> determine whether these BAC subsidiaries were the most
> appropriate advisors or suppliers of other services to the Nations
> Funds or how their respective fees and other charges were
> determined.  Compl. ¶ 31.[8]

In this case, plaintiffs have premised each cause of action on "each and every allegation

contained above as if fully set forth herein."  Compl. ¶¶ 60, 66, 70, 75, and 81.  The incorporation

of these allegations of misrepresentation, omission, and deception into each claim is strong

---

[8] *See also*, Compl. ¶¶ 30, 32, 33, & 34.

evidence that those claims are premised on those allegations, and that the claims must be dismissed. *See Prof'l. Mgmt. Assocs. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (negligence claim preempted because allegations of "misrepresentations and omissions are incorporated by reference in the negligence count"); *In Re Enron Corp. Sec. Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 638 (S.D.Tex. 2003) (when "state law claims, such as breach of contract, breach of fiduciary duty, conversion or negligence . . . become part of a larger deception . . . [the] allegations are sufficient to trigger" SLUSA preemption). In this case, the state law claims expressly rely on allegations that Nations did not disclose (or deliberately concealed) the fees and expenses charged to plaintiffs or the Bank's motives in the conversion, Compl. ¶¶ 31-34, and that its prospectuses were deceptive. Compl. ¶¶ 20, 14(a), and 30.

### B. The Alleged Misrepresentations and Omissions Coincide with the Purchase of Securities.

There can also be no serious dispute about whether the alleged deception, misrepresentations and/or omissions, coincide with the purchase or sale of securities. For example, plaintiffs allege, "in response to such coercion and the deceptive and unclear information provided by the Bank, upon information and belief, co-fiduciaries and beneficiaries of the fiduciary accounts . . . provid[ed] to the Bank the uninformed and fraudulently induced 'consent' to the Conversions." Compl. ¶ 30. As the Supreme Court recently opined in *Dabit,* "the requisite showing, in other words, is 'deception in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller." *Dabit*, No. 04-1371, 2006 U.S. LEXIS 2497, at *13 (citing *United States v. O'Hagan,* 521 U.S. 642, 658 (1997)).

The causes of action plaintiffs assert in their Complaint have been held barred by SLUSA, even though the elements of those claims differ from the elements of a securities fraud

13

claim   *See Prof'l Mgmt. Assocs. Employees' Profit Sharing Plan,*   335 F.3d at 802 (aiding and abetting breach of fiduciary duty); *Rowinski v. Salomon Smith Barney Inc.,* 398 F.3d 294, 296, 300, 305 (3d Cir. 2005) (breach of contract, unjust enrichment); *Prager v. Knight/Trimark Group, Inc.,* 124 F. Supp. 2d 229, 234-35 (D.N.J. 2000) (breach of fiduciary duty, unjust enrichment); *Dacey v. Morgan Stanley Dean Witter & Co.,* 263 F. Supp. 2d 706, 708-10 (S.D.N.Y. 2003).

In *Rowinski,* the plaintiff contended that since his breach of contract claim did not involve a misrepresentation or omission, it should not be preempted. The Third Circuit Court of Appeals made short shrift of that argument, stating,

> Plaintiff's suggested distinction – between the legal and factual allegations in a complaint – is immaterial under the statute. SLUSA preempts any covered class action "alleging" a material misrepresentation or omission in connection with the purchase or sale of securities. 15 U.S.C. § 78bb(f)(1). Under this provision, preemption does not turn on whether the allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are "alleged" in one form or another. A contrary approach, under which only essential legal elements of a state law claim trigger preemption, is inconsistent with the plain meaning of the statute.

*Rowinski,* 398 F.3d at 300.

Where, as here, plaintiffs attempt to dress what is essentially a securities fraud claim in state law clothing, the claims are preempted and SLUSA requires that they be dismissed. *Dabit,* No. 04-1371, 2006 U.S. LEXIS 2497, at *1.

### III.   NATIONS DID NOT BREACH ANY FIDUCIARY DUTY NOR AID AND ABET ANY SUCH BREACH OF FIDUCIARY DUTY.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must offer "well-pleaded facts" rather than "legal theories" or "conclusory allegations." *See*

14

*Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698-99 (8th Cir. 2003) (courts "giv[e] no effect to conclusory allegations"); *Parkhill v. Minnesota Mut. Life Ins. Co.*, 286 F.3d 1051, 1057-58 (8th Cir. 2002) ("well-pleaded facts" required to state a claim). As the Eighth Circuit has explained, "a complaint must contain facts sufficient to state a claim as a matter of law **and must not be merely conclusory in its allegations**." *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (emphasis added); *see also Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (courts will not "blindly accept the legal conclusions drawn by the pleader from the facts").

Here, even accepting all allegations as true and construing them in plaintiffs' favor, *see Cook v. Foster Forbes Glass*, 776 F. Supp. 1391, 1392 (E.D. Mo. 1991), plaintiffs fail to state a claim. Plaintiffs do not plead any *facts* establishing the elements of their claims against Nations, and instead offer only the barest of legal conclusions.[9]

### A.    Nations Does Not Owe Plaintiffs a Fiduciary Duty.

To state a claim for breach of fiduciary duty, plaintiffs must first plead the facts and circumstances which formed a relation of trust and confidence between them and Nations. *Harrold v. Dowd*, 561 S.E.2d 914, 919-20 (N.C. Ct. App. 2002 ); *see also Terry v. Terry*, 273 S.E.2d 674, 677 (N.C. 1981) (dismissing claim because plaintiff failed to allege facts and

---

[9]  As an initial matter and a warning sign of how difficult it will be for plaintiffs to achieve class certification, the Complaint does not even allege sufficient facts to determine which state's law would apply to plaintiffs' breach of fiduciary duty claims. Missouri courts apply the "most significant relationship" test set forth in the Restatement (Second) of Conflicts of Laws in determining which state's law applies for breach of fiduciary duty claims. Under that test, since Nations is organized under the law of Delaware and has maintained its place of business in North Carolina, plaintiffs' breach of fiduciary duty claim against Nations will be analyzed under Delaware and North Carolina Law. Restatement (Second) Conflicts of Law § 145(2).

circumstances showing fiduciary relationship with the defendant); *York Linings v. Roach*, No.
16622-NC, 1999 Del. Ch. LEXIS 160, at *5 (July 28, 1999).

Nations does not owe plaintiffs a fiduciary obligation. Plaintiffs' entire claim rests on an
alleged "intertwined relationship among the defendants." Compl. ¶ 20. But cursory and
conclusory allegations of a fiduciary relationship cannot survive a motion to dismiss. *Synergy
Fin., LLC v. Zarro*, 329 F. Supp. 2d 701, 707 (W.D.N.C. 2004); *Hunter v. Guardian Life Ins. Co.
of America*, 593 S.E.2d 595, 599 (N.C. Ct. App. 2004); *Metro Ambulance, Inc. v. Eastern Med.
Billing, Inc.*, No. 13929, 1995 Del. Ch. LEXIS 84, at *8 (July 5, 1995).

Plaintiffs also allege that, "[g]iven [Nations's] role in the Bank's fulfillment of its
fiduciary responsibilities to plaintiffs and the members of the Class, the acts of . . . [Nations]
described herein also constitute breaches of fiduciary duty." Compl. ¶ 64. Plaintiffs do not,
however, offer any basis for the alleged fiduciary duty they claim Nations owes them.

The only connection plaintiffs allege with Nations is that they were the beneficiaries of
accounts that owned shares in the Nations Funds. But such indirect ownership of shares does not
establish a fiduciary relationship with Nations. In fact, even if plaintiffs were themselves
shareholders, Nations would not owe them a fiduciary duty. *See, e.g.*, *State Teachers Ret. Bd. v.
Fluor Corp.*, 566 F. Supp. 939, 941 (S.D.N.Y. 1982) (a corporation does not owe fiduciary duty
to shareholders); *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 678 A.2d 533, 539 (Del. 1996) (same).

As the Sixth Circuit explained in *Radol v. Thomas*, because the shareholders of an entity
such as Nations are its owners, shareholders who bring a claim for breach of fiduciary duty
against the entity in which they hold shares are effectively seeking relief from themselves. 772

16

F.2d 244, 258 (6th Cir. 1985). Accordingly, "[t]here is not, and could not conceptually be any authority that a corporation as an entity has a fiduciary duty to its shareholders." *Id.*

Simply put, plaintiffs did not have a fiduciary relationship with Nations, and therefore, plaintiffs cannot allege well-pleaded facts establishing the elements of a breach of a fiduciary duty that did not exist.

**B.     Nations Did Not Aid and Abet the Bank's Alleged Breach of Fiduciary Duty.**

To state a claim against Nations for aiding and abetting the Bank's alleged breach of its fiduciary duty, plaintiffs must establish that Nations had knowledge of the alleged underlying breach of fiduciary duty by the Bank, and provided "substantial assistance" in the breach.[10] *Blow v. Shaughnessy*, 364 S.E.2d 444, 490 (N.C. Ct. App. 1988); *see also Malpiede v. Townson*, 780 A.2d 1075, 1097 n.77 (Del. 2001). Plaintiffs allege generally and in conclusory fashion that the Bank's alleged breaches of its fiduciary duty to plaintiffs "were aided, abetted and/or directed by" Nations. Compl. ¶ 64. However, plaintiffs fail to state a claim because they do not allege how Nations provided "substantial assistance" in the Bank's alleged breach of its fiduciary duty to plaintiffs, or even that Nations knew of the alleged breach.

Plaintiffs contend that Nations assisted the Bank by selecting the subsidiaries of BAC to provide investment advisory and other services on a "no-bid basis" and by setting advisory and

---

[10] No Missouri court has ever recognized a claim for aiding and abetting a breach of a fiduciary duty. In fact, the only Missouri district court to address such a claim stated, in dicta, that Missouri courts would not recognize a cause of action for aiding and abetting a breach of fiduciary duty. *See Omaha Indem. Co. v. Royal Am. Managers, Inc.*, 755 F. Supp. 1451, 1459 (W.D. Mo. 1991). To the extent Missouri law is applicable, this count should be dismissed because it is not a recognizable claim under Missouri law.

other fees at high levels. Yet all of these actions were done pursuant to the complex federal regulatory scheme governing the conduct of mutual funds.

In fact, the Conversions were expressly authorized under applicable state law. *See* Cal. Fin. Code § 1561.1 (California); Mo. Stat. Ann. § 362.550(11) (Missouri); Fla. Stat. Ann. § 737.402 (Florida); Ann. Rev. Code Wash. § 11.100.035(3) (Washington); N.M. Stat. Ann. § 46-2A-1 (New Mexico); Iowa Code § 633.123A(1) (Iowa).

In addition, Nations obtained approval from the SEC for the Conversion of Common Trust Fund assets for shares of certain Nations Funds. In its Order approving the Conversion, the SEC found, "the terms of the proposed transaction, including the consideration to be paid or received, are reasonable and fair and do not involve overreaching on the part of any person concerned, and that the proposed transaction is consistent with the policy of each registered investment company concerned." *In re Nations Fund Trust, et al.*, Investment Company Act Release No. 24373, 2000 SEC LEXIS 610 (Mar. 31, 2000) (attached hereto as Exhibit 5). In addition, the SEC stated the conversion "is appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the [Investment Company] Act." *Id.*

The SEC routinely allows bank-maintained common trust funds to make in-kind transfers of assets to mutual funds advised by the bank, or an affiliate of the bank, in exchange for shares of the mutual fund.[11]

---

[11] *See Wachovia Funds, et al.*, Investment Company Act Release Nos. 23900, 1999 SEC LEXIS 1355 (July 9, 1999) (notice) and 23928, 1999 SEC LEXIS 1494 (July 30, 1999) (order); *BlackRock Funds, et al.*, Investment Company Act Release Nos. 23089, 1998 SEC LEXIS 548 (March 27, 1998) (notice) and 23123, 1998 SEC LEXIS 753 (Apr. 22, 1998) (order); *Sessions Group, et al.*, Investment Company Act Release Nos. 23014, 1998 SEC LEXIS 156 (Jan. 30, 1998) (notice) and 23052, 1998 SEC LEXIS 339 (Mar. 2, 1998) (order); *First American*

(Footnote continues on next page.)

In fact, SEC approval of common trust fund conversions became so frequent[12] that on July 24, 2002, the SEC amended Rule 17a-8 under the Investment Company Act to allow bank common trust funds to merge with affiliated mutual funds without specific SEC approval as long as certain conditions designed to protect investors were met. *Investment Company Mergers*, Investment Company Act Release No. 25666, 2002 SEC LEXIS 1837 (July 24, 2002) Specifically, Rule 17a-8 requires Nations' Board of Trustees to determine that: (1) the conversion is in the best interest of Nations and (2) the conversion will not result in the dilution of the interests of the existing Nations shareholders.

It is not surprising that none of the conditions mandated by the SEC requires Nations to evaluate the effect of the conversion on beneficiaries of the common trust funds, such as plaintiffs in this litigation. Nations does not have any relationship, dealings, or contact with the beneficiaries of the common trust funds, such as plaintiffs, and therefore owes them no duty, contractual, fiduciary or otherwise.

Plaintiffs' claim for aiding and abetting must fail because Nations could not have provided "substantial assistance" to the Bank in its alleged breach of fiduciary duty arising out of conduct that was specifically approved by the SEC, expressly authorized by federal and state law

---

(Footnote continued from previous page.)

*Investment Fund, Inc., et al.*, Investment Company Act Release Nos. 22795, 1997 SEC LEXIS 1713 (Aug. 22, 1997) (notice) and 22826, 1997 SEC LEXIS 1940 (Sept. 18, 1997) (order).

[12] In the SEC Release announcing the amendment of Rule 17a-8, the SEC noted that previously it "considered other fund mergers on a case-by-case basis, and since 1980 we have issued more than 150 orders granting exemptions for fund mergers." *Investment Company Mergers*, Investment Company Act Release No. 25666, 2002 SEC LEXIS 1837 (July 24, 2002).

and strictly complied with the comprehensive statutory structure established to regulate investment companies.

## IV.    PLAINTIFFS HAD NO CONTRACT WITH NATIONS

It is elementary that in order to state a claim for breach of contract, plaintiffs must first plead facts establishing the existence of a valid contract.[13]   *Eli Research, Inc. v. United Commc'ns Group, LLC*, 312 F. Supp. 2d 748, 755 (M.D.N.C. 2004); *see also Rice v. West End Motors, Co.*, 905 S.W.2d 541, 542 (Mo. Ct. App. 1995). Here plaintiffs do not allege the basis of any contract with Nations. Because plaintiffs do not have a contractual relationship with Nations, they cannot allege a breach of contract.

Plaintiffs also allege casually that they were third party beneficiaries of the contracts pursuant to which the Bank provided advisory and other services to Nations. Compl. ¶¶ 16 & 68. A person who is not party to a contract can only assert rights as a third-party beneficiary if the parties to the contract intentionally entered into it to benefit the third party directly. *Cincinnati Ins. Co. v. Centech Bldg. Corp.*, 286 F. Supp. 2d 669, 681 (M.D.N.C. 2003). There is a strong presumption that a non-party to a contract cannot enforce the contract. *RPR & Assocs. v. O'Brien/Atkins Assocs.*, 24 F. Supp. 2d 515, 521 (M.D.N.C. 1998) (stating "the court must construe the contract strictly against the third party seeking to enforce the contract").

---

[13]   Missouri courts utilize the "most significant relationship" standard to determine choice of law for contract claims and consider several factors including: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." The Complaint does not provide any details about the alleged contract plaintiffs had with Nations. But because the Bank is domiciled in North Carolina and Nations has maintained its place of business there, the law of that state is applied to plaintiffs' breach of contract claim.

In addition, the contract terms "must clearly express that the contracting parties intended the third-party to be the beneficiary of performance of the contract." *Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36, 42 (Mo. Ct. App. 1980); *see also RPR & Assocs.*, 24 F. Supp. 2d at 521 (dismissing third-party beneficiary claims where "Plaintiff does not direct the court to, nor does the court find, a provision suggesting that [the parties to the contract] intended for Plaintiff to benefit from the rights and obligations arising under the contract").[14] Although the third-party beneficiary need not be named in the contract, "the terms of the contract must express directly and clearly an intent to benefit the specific party or an identifiable class of which the party asserting rights as a third party beneficiary is a member." *Laclede Inv. Corp.*, 596 S.W.2d at 42.

In this case, plaintiffs cannot point to a single fact that indicates Nations intentionally entered into any contracts for their direct benefit. Nor do plaintiffs cite to any provisions of any contracts that identify them as, or even suggest that they are, third-party beneficiaries. Moreover, plaintiffs do not allege a single fact to allege that Nations breached its contracts with the Bank, or if it did, how any breach by Nations could possibly have caused any harm to plaintiffs.

Simply put, plaintiffs cannot establish that they had a contractual relationship with Nations and fail to show the essential facts necessary to recover on a third-party beneficiary theory. Therefore, plaintiffs' breach of contract claim against Nations must be dismissed.

---

[14] Indeed, some states have required that the intent of the original parties to directly benefit the third-party must be shown by an express provision in the contract *specifically identifying the third party beneficiary.*" *See, e.g., Arlington Fin. Corp. v. Ben Franklin Bank of Ill.*, No. 98 C 7068, 1999 U.S. Dist. LEXIS 1690, at *13 (N.D. Ill. Feb. 10, 1999) (emphasis added).

21

## V.     THERE IS NO CAUSE OF ACTION FOR AIDING AND ABETTING BREACH OF CONTRACT.

It is unclear what plaintiffs mean by alleging that Nations is liable for "aiding and abetting the Bank and/or causing the Bank" to commit breach of contract. Compl. ¶ 68. Nations has been unable to locate any authority under the laws of any state that recognizes a cause of action for "aiding and abetting" a breach of contract [15]

To the extent plaintiffs are trying to assert a claim against Nations for tortious interference with contract, plaintiffs must plead facts establishing that (1) there was a valid contract between plaintiffs and the Bank, (2) Nations knew about the contract, (3) and Nations intentionally and unjustifiably induced the Bank to breach the contract. *Speedway Promoters, Inc. v. Hooter's of Am., Inc.*, 123 F. Supp. 2d 956, 963 (W.D.N.C. 2000); *see also Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. 1996). However, plaintiffs do not allege any conduct by Nations that would constitute intentional and unjustifiable inducement of the Bank's alleged breach of contract.

## VI.    NATIONS IS NOT RESPONSIBLE FOR THE BANK'S CONDUCT AS ITS ALTER EGO.

Nations and the Bank are separate legal entities. The Bank's alleged actions or liability, therefore, cannot be imputed or attributed to Nations unless Plaintiffs justify piercing the corporate veil. *See Mobil Oil v. Linear Films*, 718 F. Supp. 260, 268 (D. Del. 1989); *see also Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273, 283-84 (Mo. Ct. App. 1986) ("Ordinarily, the separate legal identities of two corporations will be protected"). "Persuading a Delaware court to

---

[15] Even assuming such a claim does exist, plaintiffs have failed to state a claim because they do not allege what the contractual relation between the Bank and plaintiffs is, and how any act on the part of Nations related to that contractual relationship.

disregard the corporate entity is a difficult task." *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279, 295 (D. Del. 2000) (declining to pierce corporate veil).[16]

To pierce the corporate veil, plaintiffs must allege facts demonstrating "complete domination and control," such that the dominated entity "no longer has legal or independent significance of its own." *Wallace v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999); *see also Collet*, 708 S.W.2d at 283-84. In other words, the dominated alter-ego must be "a sham entity." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003).

Further, the dominated entity must "exist for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184; *see also Collet*, 708 S.W.2d at 283-84. And the fraud that justifies piercing the corporate veil "must be distinct from the tort alleged in the complaint." *Sears, Roebuck & Co., v. Sears*, 744 F. Supp. 1297, 1305 (D. Del. 1990); *see also Mobil Oil*, 718 F. Supp. at 268 (holding "the underlying cause of action does not supply the necessary fraud or injustice").

Here, plaintiffs offer only conclusory allegations that Nations is the "alter ego" of, or "controlled by," BAC and the Bank, and that the operations of the various entities are "intertwined." Compl. ¶¶ 9, 16, 18, 20, 31, & 35. Such conclusory assertions do not establish

---

[16]   Generally, an attempt to pierce the corporate veil is governed by the law of the state of incorporation. *Stromberg Metal Works v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996). While Missouri courts seemingly have not addressed the issue, they apply the law of the state of incorporation to other issues relating to a corporation's liability. *See e.g., Burt v. Danforth*, 742 F. Supp. 1043, 1047 (E.D. Mo. 1990) (law of state of incorporation governs demand requirement in shareholder derivative action); *Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc.*, 690 S.W. 2d 437, 444 (Mo. Ct. App. 1985) (law of state of incorporation applies to breach of fiduciary duty claim against corporate officers). Because Nations is a Delaware statutory trust, Nations will analyze plaintiffs' alter ego allegations under Delaware law. However, it makes little difference what law is applied -- plaintiffs' conclusory allegations would be insufficient to pierce the corporate veil under any potentially applicable standard.

that Nations has no legal significance and is "a sham entity." The mere fact that the Bank owns a controlling share of the voting stock of certain Nations Funds does not alone create alter ego liability. *Craig v. Lake Asbestos of Quebec, Ltd*, 843 F.2d 145, 150 (3d Cir. 1988) (finding the "control which a parent must exercise over a subsidiary so as to warrant piercing the veil between them is more than mere majority or complete stock control; instead it is complete domination, not only of finances but of policy and business practice").

Plaintiffs fail to allege facts establishing that: (1) Nations exists for no purpose other than as a vehicle "to defraud investors and creditors," *Crosse*, 836 A.2d at 497; (2) that there has been a lack of attention to corporate formalities or commingling of corporate assets, *Mobil Oil*, 718 F. Supp. at 266, or (3) injustice would result from respecting Nations' status as an independent legal entity, and that any such injustice is distinct from the alleged harm underlying plaintiffs' claims.

Indeed, even if sufficient to establish domination, plaintiffs' conclusory "alter-ego" and "control" allegations would have the opposite effect of what plaintiffs seemingly intend. If the Bank dominates and controls Nations, as plaintiffs allege, such domination might justify imputing Nations' actions or liability to the Bank. *See Mobil Oil*, 718 F. Supp. at 266 (alter ego theory relevant to "whether a parent corporation will be held liable for the actions of its subsidiary"). But such domination provides no basis to impute or attribute the Bank's actions or liability to Nations. *Cf. Lindblom v. Mobile Telecomms. Techs. Corp.*, 985 F. Supp. 161, 163 (D.D.C. 1997) (wholly-owned corporate subsidiary is not liable for actions of parent, nor is it liable as an aider, abettor, or co-conspirator).

Accordingly, Nations is not liable for the Bank's alleged conduct as its *alter ego*. In their claim for breach of fiduciary duty, and elsewhere, plaintiffs repeatedly allege that the Bank acted

24

"in conspiracy with the other defendants." Compl. ¶¶ 62, 63. To the extent plaintiffs are trying to assert a claim for civil conspiracy, plaintiffs must plead facts establishing (1) an agreement (2) to commit a wrongful act and (3) injury. *Synergy Fin., LLC,* 329 F. Supp. 2d at 714-15 (dismissing civil conspiracy claim because the complaint did not describe the manner in which the defendants conspired); *see also Trimble v. Pracna*, 51 S.W.3d 481, 500 (Mo. Ct. App. 2001). Plaintiffs fail to state a claim because they do not allege the manner in which the Defendants formed the alleged conspiracy, what they agreed to do, or how they carried it out.[17]

### VII.   NATIONS HAS NOT BEEN UNJUSTLY ENRICHED.

In order to state an unjust enrichment claim against Nations, plaintiffs must establish that they conferred a benefit on Nations at their own expense that would be unjust for Nations to retain. *Wing v. Town of Landis*, 599 S.E.2d 431, 434 (N.C. Ct. App. 2004); *see also JB Contracting, Inc. v. Bierman*, 147 S.W. 3d 814, 818 (Mo. Ct. App. 2004).

But plaintiffs allege only that "[a]ll defendants have profited unjustly by" the investments the Bank made in the Nations Funds on plaintiffs' behalf. Compl. ¶ 71. Plaintiffs do not explain how Nations was enriched by the investments, how any such enrichment was at plaintiffs' expense, or why it would be unjust for Nations to retain any such enrichment. In fact, the gravamen of plaintiffs' complaint is that Nations paid too much money to the Bank for the services that it received. Moreover, as a practical matter, plaintiffs' claim for unjust enrichment against Nations makes no sense whatsoever. Nations is a mutual fund. All of its assets are

---

[17]   Moreover, plaintiffs apparent theory that Nations is simply the alter ego or agent of the Bank undermines any civil conspiracy claim because there can be no conspiracy between a corporation and its agents under either North Carolina or Delaware law. *See, e.g., Little Switz., Inc. v Destination Retail Holdings Corp.*, No. 98-315-SLR, 1999 U.S. Dist. LEXIS 5058 (D. Del. March 31, 1999).

reflected in the Net Asset Value of its shares that benefit all of its shareholders. To the extent that plaintiffs are beneficiaries of shares of Nations, they would participate in any benefit conferred on the funds on a pro rata basis.

## VIII.   PLAINTIFFS' REQUEST FOR AN INJUNCTION IS PREEMPTED BY THE INVESTMENT COMPANY ACT.

The Investment Company Act and the applicable SEC rules and regulations provide a detailed and complex administrative scheme regulating Nations. Notwithstanding that detailed and complex administrative scheme, plaintiffs request an order "compelling" Nations to select investment advisors annually "based upon, *inter alia*, comparative investment performance and expenses." Compl ¶ 43 & Prayer for Relief ¶ (g). Federal law preempts plaintiffs' requested relief.

Federal law preempts state law that poses "a potential frustration of the administrative scheme provided by [federal law]." *Howard v Uniroyal, Inc* , 719 F.2d 1552, 1562 (11th Cir. 1983). State law is also preempted when it "interferes with the methods by which the federal statute was designed to reach [its] goal." *Int'l Paper Co v. Ouellette*, 479 U.S. 481, 494 (1987). Here, plaintiffs' request would both frustrate the purposes of the Investment Company Act and interfere with the agency regulations implementing it.

The Investment Company Act and applicable SEC rules provide the precise administration and regulation sought by plaintiffs' request for injunctive relief. For example, Section 15(c) of the Act requires the directors of a fund to request and evaluate the information reasonably necessary to evaluate the terms of any advisory contract.  15 U.S.C. § 80a-15(a) (2004). The Securities and Exchange Commission has issued final rules detailing what such

26

evaluations should involve. *See* 69 Fed. Reg. 39,798 (June 30, 2004) (to be codified at 17 C.F.R. Parts 239, 240 and 274) (attached hereto as Exhibit 6).

The SEC rules require fund shareholder reports, prospectuses and proxy statements to disclose in "reasonable detail" the material factors and conclusions forming the board's basis for approving any new or renewed advisor's contract. *Id.* at 39,799. Proxy statements must include discussion of at least these specific factors: (1) the nature, extent and quality of the investment adviser's services; (2) the investment performance of the fund and the adviser; (3) the costs and services to be provided and profits to be realized by the adviser; (4) the extent to which economies of scale would be realized as the advised fund grows; and (5) whether the fees reflect the economies of scale for the benefit of investors. *Id.* at 39,801. If the board believes any of these factors are not relevant, it must explain why. *Id.*

Further, the disclosure must specify whether the board of directors relied on comparisons of the services to be provided by, and payments to be made to, other investment advisors such as those under contract with other registered investment companies. *Id.* And the discussion must examine these factors in relation to the fund's specific circumstances and the investment adviser's contract.

Federal law thus plainly provides a detailed administrative scheme regulating Nations' selection of investment advisors. Plaintiffs' seek an injunction dictating the manner in which Nations selects its investment advisors that would interfere with and frustrate the federal regulatory scheme that provides the criteria to be considered when making that determination. Therefore, it is preempted. *See, e.g., Brown v. Kerr-McGee Chem. Corp.,* 767 F.2d 1234 (7th Cir. 1985)(finding injunction preempted by federal law); *see also Md. Heights Leasing, Inc. v. Mallinckrodt, Inc.,* 706 S.W.2d 218, 223 (Mo. Ct. App. 1985) (same).

27

The *Brown* plaintiffs brought an action on a variety of state law tort theories seeking an injunction that would require removing radioactive waste on defendant's property. 767 F.2d at 1237. The district court found that federal law preempted such relief because the Atomic Energy Act gave the Nuclear Regulatory Commission ("NRC") the authority to regulate radioactive waste. *Id.* The Seventh Circuit acknowledged that the state laws relied on by plaintiffs are "undoubtedly valid in some circumstances," but found nonetheless that "such state law remedies . . . interfere with the NRC's ability to choose the method of disposal that . . . is most appropriate." *Id.* at 1241-42. The court therefore held that plaintiffs' request for an injunction was preempted because, if granted, the injunction would stand "as an obstacle to the accomplishment of the full purposes and objectives of federal regulation of radiation hazards." *Id.* at 1242.

In *Maryland Heights Leasing,* the Missouri Court of Appeals reversed the trial court and found that the plaintiffs pleaded valid state law claims for nuisance, negligence, and trespass. 706 S.W.2d at 226. The Court of Appeals, however, limited the available remedies to compensatory and punitive damages and held that "an injunction ordering [defendant] to stop its activities would, in effect, substitute the judgment of the trial court for that of the Nuclear Regulatory Commission. Quite simply, injunctive relief here would be state regulation." *Id.* at 223.

In this case, plaintiffs request an order "compelling" Nations to select investment advisors annually "based upon, *inter alia*, comparative investment performance and expenses." Compl. ¶ 43 & Prayer for Relief ¶ (g). Just as the injunction sought in *Brown* and *Maryland Heights Leasing* would frustrate the purposes of the Atomic Energy Act and interfere with the NRC's regulations implementing it, an injunction in this case would frustrate the purposes of the

28

Investment Company Act and interfere with the SEC's regulations implementing it because the governing federal law provides the precise administration and regulation sought by plaintiffs' request for injunctive relief.

## CONCLUSION

For the reasons set forth herein, the Court should dismiss, with prejudice, plaintiffs' claims against Nations.

Dated: March 27, 2006

Respectfully submitted,

COLUMBIA FUNDS TRUST F/K/A NATIONS
FUNDS TRUST
By Counsel

By: /s/ Barry A. Short
_____

Barry A. Short
LEWIS, RICE & FINGERSH, L.C.
500 North Broadway, Suite 2000
St. Louis, MO  63102
Telephone: (314) 444-7601
Facsimile:  (314) 612-7601

Stephen M. Colangelo
John A. Trocki III
Tim A. O'Brien
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, N.W.
Suite 5500
Washington, D.C.  20006
Telephone: 202) 887-1500
Facsimile:  (202) 887-0763

*Attorneys for Defendant Columbia Funds Series*
*Trust f/k/a Nations Funds Trust*

29

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 27th day of

March, 2006 upon the following counsel of record via the Court's electronic filing system

> Steven M. Hamburg, Esq.
> Holly M. McIntyre, Esq.
> Summers Compton Wells & Hamburg, P.C.
> 8909 Ladue Road
> St. Louis, MO 63124
>
>
> Richard D. Greenfield, Esq
> Greenfield & Goodman LLC
> 7426 Tour Drive
> Easton, MD 21601
>
>
> Amy M. Boomhouwer, Esq
> Gancedo & Nieves LLP
> 144 W. Colorado Boulevard
> Pasadena, CA 91105

                                    /s/____ Barry A. Short_____

March 27, 2006