**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

GEORGE SIEPEL; PHYLLIS SIEPEL; H.　　　)
CRAIG WILLIAMS; ELINOR TAMA　　　　　)
WILLIAMS; CONSTANCE ELAINE　　　　　　)
WILLIAMS; DONNA N. REINKE; ROBERT　　)
COHEN; CARL M. PAGE; and all others　　　　)
similarly situated,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)　Case No. 4:05-CV-2393 (RWS)
　　　　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
BANK OF AMERICA, N.A.; COLUMBIA　　　)
FUNDS SERIES TRUST f/k/a NATIONS　　　　)
FUNDS TRUST; COLUMBIA　　　　　　　　　)
MANAGEMENT ADVISORS, LLC;　　　　　　)
COLUMBIA MANAGEMENT　　　　　　　　　)
DISTRIBUTORS, INC.; BANC OF AMERICA　)
INVESTMENT SERVICES, INC. and BANK
OF AMERICA CORPORATION,

　　　　　　　Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF**
**DEFENDANTS BANK OF AMERICA, N.A., COLUMBIA MANAGEMENT ADVISORS,**
**LLC, COLUMBIA MANAGEMENT DISTRIBUTORS, INC., BANC OF AMERICA**
**INVESTMENT SERVICES, INC., AND BANK OF AMERICA CORPORATION**

Edward Dowd, Jr., Esq.
Jeffrey S. Russell, Esq.
Darci Madden, Esq.
BRYAN CAVE LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Telephone:  314.259.2000
Facsimile:   314.259.2020

Gregory B. Jordan, Esq.
Mary J. Hackett, Esq.
Christopher J. Soller, Esq.
Sharon L. Rusnak, Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
Telephone:  412.288.3131
Facsimile:  412.288.3063

Counsel for all Defendants, except Columbia
Funds Series Trust

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

PROCEDURAL HISTORY AND BACKGROUND.............................................................2

I.     Plaintiffs and their Attorneys' History of Abusive Litigation Practices and Judge Shopping.........................................................................................................2

     A.     The First Case - *Williams*

     B.     The Second Case - *Arnold*

     C.     The Third Case - *Kutten*

     D.     The Fourth Case - *Barnhart*

     E.     The Fifth Case - *Reinke*

     F.     The Sixth Case - this Case, *Siepel*

     G.     The Seventh Case - *Luleff*

II.     Only the Bank Has a Relationship With Plaintiffs. ..............................................10

ARGUMENT ........................................................................................................................12

I.     The Court Should Decline Jurisdiction and Dismiss the Amended Complaint.........................................................................................................12

     A.     Plaintiffs and their attorneys have engaged in judge shopping..................12

     B.     The Court should decline jurisdiction over Plaintiffs' Amended Complaint under the first-filed rule. ...........................................................15

II.     The Amended Complaint Fails to Comply with Rule 8 of the Federal Rules of Civil Procedure..................................................................................18

III.     The Amended Complaint Should be Dismissed Because Plaintiffs Have Failed to State a Claim Upon which Relief can be Granted. ................................22

     A.     The Supreme Court has confirmed that Plaintiffs' Investment Advisers Act claim (Count I) fails as a matter of law..............................22

     B.     Plaintiffs' claim under the Exchange Act (Count II) is time-barred and inadequately pled and should be dismissed. .......................................24

         1.     Plaintiffs' Exchange Act Claim is time barred ..............................24

         2.     Plaintiffs have not satisfied Rule 10b-5's pleading requirements...................................................................................24

         3.     Plaintiffs' Section 10b claim should be dismissed because they did not participate in the decision to purchase Nations Funds.............................................................................................28

         4.     Plaintiffs' Section 10b claim should be dismissed because Plaintiffs fail to plead a material omission. ...................................28

         5.     Plaintiffs' Section10b5 claim must be dismissed for failure to allege scienter. ........................................................................30

6.      Plaintiffs' Section 10b claim should be dismissed because they fail to adequately plead loss causation. ....................................33

C.      Plaintiffs' claims under Sections 11 and 12 of the Securities Act (Count III) should be dismissed for failing to state a claim as a matter of law. ........................................................................................35

1.      Plaintiffs lack standing to pursue Section 11 and 12 claims because they are not purchasers of the securities in question. ..........................................................................................35

2.      Plaintiffs' claims under Sections 11 and 12(a)(2) are time-barred. ........................................................................................36

3.      Plaintiffs have not and cannot properly allege harm compensable under the Securities Act. ....................................38

D.      Plaintiffs' claims under Section 15 of the Securities Act and Section 20(A) of the Exchange Act in Counts II and III fail to state a claim as a matter of law and should be dismissed. ................................40

1.      Plaintiffs have failed to allege a primary violation of the Securities Laws. ......................................................................40

2.      Plaintiffs have failed to adequately allege "control." ...................40

E.      SLUSA mandates dismissal of Plaintiffs' state law class claims (Counts III-VI). ......................................................................................41

1.      Plaintiffs allege a covered class action. .......................................43

2.      Plaintiffs' claims are founded on state law. ..................................43

3.      The core allegations in Plaintiffs' Amended Complaint are that Defendants misrepresented or omitted material facts. ...........44

4.      Plaintiffs' claims are in connection with the purchase of a covered security. ........................................................................47

F.      Plaintiffs' unjust enrichment and breach of fiduciary duty claims (Counts III-VI) should be dismissed because the challenged conduct is proper under state law ..............................................................50

G.      Plaintiff Cohen's claims should be dismissed for mandatory arbitration. ..............................................................................................52

CONCLUSION...............................................................................................................53

## <u>INTRODUCTION</u>

Using a method of recycling named Plaintiffs and claims, over the course of three years Plaintiffs' attorneys have filed *seven lawsuits* asserting these claims and allegations in four different states and in front of numerous judges all without ever having to prove the merits of a single case. They have accomplished this feat by dismissing and refiling cases to avoid unfavorable deadlines and potentially adverse rulings. This sixth action and now the Amended Complaint in response to Defendants' first motion to dismiss are just the latest tactics in a long line of litigation maneuvers.

With the filing of this sixth case (and the fourteenth complaint), Plaintiffs and their attorneys are attempting to re-assert the same claims, and represent the same putative class, from those cases that are pending or were previously dismissed. This conduct not only constitutes impermissible judge shopping that should not be countenanced, but also is a violation of the first-filed rule which prohibits a party from simultaneously filing multiple lawsuits that "substantially overlap." This Court, therefore, should exercise its authority as gate-keeper and decline jurisdiction over this case.

With respect to the merits, as several courts have already ruled, there are many grounds to support dismissal of all claims in the Amended Complaint. First, to try to overcome Defendants' first motion to dismiss filed in this action, Plaintiffs filed an amended complaint asserting meritless federal securities claims, largely against Defendants that have no relationship or connection to these Plaintiffs. The securities claims are legally deficient on their face. For example, Plaintiffs' claim under the Investment Advisers Act, Count I, should be dismissed because Plaintiffs have failed to allege facts to demonstrate that Defendants are "investment advisors" under this Act and because, as the Supreme Court has confirmed, there is no private right of action for the claim Plaintiffs are attempting to assert. Counts II and III should be dismissed because Plaintiffs lack standing to bring these claims. These claims also fail as a matter of law because the Amended Complaint on its face confirms that these claims are clearly time-barred and, finally, the claims are inadequately pled as a matter of law.

1

Second, the state law class claims should be dismissed because they are preempted under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Plaintiffs concede this point in asserting the securities law claims. Further, just two weeks ago, a federal court dismissed the very same state law class claims based upon the same allegations raised herein – challenging investment of trust assets in affiliated mutual funds. The court held not only that the state law class claims were preempted under SLUSA, but also that the state law claims failed to state a claim as a matter of law. Spencer v. Wachovia Bank, N.A., No. 05-81016-CIV-RYSKAMP/ VITUNAC, slip op. (S.D. Fla. May 10, 2006) (Exhibit 1). The same result should be reached here.

For all of these reasons, which are set forth in detail below, Defendants Bank of America, N.A. ("the Bank"), Columbia Management Advisors, LLC, Columbia Management Distributors, Inc., Bank of America Investment Services, Inc., and Bank of America Corporation ("BAC") request that this Court grant their motion to dismiss.

## PROCEDURAL HISTORY AND BACKGROUND

I.   **Plaintiffs and their Attorneys' History of Abusive Litigation Practices and Judge Shopping.**

The following procedural history and background details Plaintiffs and their attorneys' abusive litigation practices and judge shopping. As set forth below, Plaintiffs and their attorneys have filed seven lawsuits, which, according to them, are nearly identical.[1] Those cases, in the

---

[1]     Plaintiffs' attorneys have represented in numerous filings and to numerous courts that these putative class actions are all the "same." Plaintiffs will no doubt contend that Defendants have opposed consolidation of these cases claiming they are different. However, the many actions Plaintiffs' attorneys have filed are simply not amenable to consolidated treatment because of the individual factual inquiry necessary to analyze the claims. For instance, in a breach of fiduciary duty action involving a trust relationship, the threshold inquiry is to look to the terms of the governing instrument to determine what provision if anything was breached. Trusts are unique in that each trust is governed by a different agreement, with different objectives and intent by the grantor, with different beneficiaries with varying needs, as well as investment recommendations and approvals by individual co-trustees. If Plaintiffs' attorneys had a good faith belief that any one of these putative class actions could ever be certified as a class given the predominating individual issues, Defendants submit that only *one* action with *one*

Continued on following page

2

order in which they were filed, are *Williams, et al. v. Bank of America, et al. ("Williams"), Arnold v. Bank of America, et al. ("Arnold"), Kutten, et al. v. Bank of America, et al. ("Kutten"), Barnhart, et al. v. Bank of America, et al. ("Barnhart"), Reinke, et al. v. Bank of America, et al. ("Reinke"),* this case, *Siepel, et al. v. Bank of America, et al. ("Siepel"),* and then yet a seventh action *Luleff v. Bank of America, et al. ("Luleff").* Plaintiffs and their attorneys have improperly used these cases to judge shop by voluntarily dismissing certain cases and reasserting the dismissed claims and allegations from those cases in other courts to avoid unfavorable deadlines and potentially adverse rulings. As it currently stands, three of these cases, *Kutten*, this case and *Luleff*, are still pending; three of them, *Williams, Arnold* and *Barnhart* were voluntarily dismissed by Plaintiffs' attorneys; and *Reinke* was dismissed by the Court for lack of subject matter jurisdiction.

### A.    The First Case - *Williams, et al. v. Bank of America, et al.*, Circuit Court of Palm Beach County, Florida.

Plaintiffs' attorneys began filing these putative class action lawsuits in Florida state court in December 2002. In *Williams*, the named Plaintiffs, H. Craig Williams, Elinor Tama Williams, and Constance Elaine Williams – Plaintiffs now in this action - were beneficiaries of a trust that the Bank administered until 2000 when it closed. See *Williams* Third Amended Complaint, ¶ 6 (Exhibit 2). In their Complaint, the *Williams* Plaintiffs alleged that investment of their trust assets in Nations Funds investments was a breach of fiduciary duty and breach of contract, and allowed for unjust enrichment by the Bank and BAC. See id. at ¶¶ 40-54. The *Williams* Plaintiffs sought to represent a putative class of Bank customers whose trust assets had been invested in Nations Funds. See id. at ¶¶ 22-39.

As the case progressed, it became clear that the *Williams* Plaintiffs would not be able to certify their class or prevail on the merits. Consequently,  Plaintiffs' attorneys attempted to

---

Continued from previous page
plaintiff would have been sufficient rather than the morass of cases initiated by the same Plaintiffs' attorneys claiming they are all the "same" case.

hedge their bets by filing more lawsuits.  After three years of extensive discovery, the Court ordered the *Williams* Plaintiffs to file their motion for class certification and evidence in support of class certification by November 30, 2005.  One day before their motion and evidence were due to be filed, however, the *Williams* Plaintiffs filed a notice of voluntary dismissal.  See Plaintiffs' Notice of Voluntary Dismissal (Exhibit 3).  As grounds for dismissal, the *Williams* Plaintiffs stated that they were members of the putative classes in the *Kutten* and *Reinke* cases, lawsuits that Plaintiffs' attorneys filed while the *Williams* case was still pending.  See id. at 1.  Thus, according to the *Williams* Plaintiffs and their attorneys, "their claims [were] fully protected in such litigation[.]"  Id.

### B.    The Second Case - *Arnold v. Bank of America, NA, et al.*, United States District Court for the Central District of California.

Barely 10 months after filing *Williams*, in November 2003, Plaintiffs' attorneys filed the *Arnold* case.  The named Plaintiff, Mary Ann Arnold, brought a putative class action lawsuit against the Bank and BAC.  The *Arnold* Plaintiff was the beneficiary of a trust administered by the Bank and, consistent with the terms of the trust, assets of the trust were invested in Nations Funds.  See *Arnold* Complaint, ¶¶ 11-16 (Exhibit 4).  The complaint alleged the same causes of action asserted in *Williams*, and like the *Williams* Plaintiffs, the *Arnold* Plaintiff sought to represent a class of Bank customers who were beneficiaries of trusts that had been invested in Nations Funds.  See id. at ¶¶ 32-106.

At a status conference on March 8, 2004, the Court pressed Plaintiffs' attorneys about the validity of the claims in the complaint and questioned them about how they would be able to certify a class based upon individual trust instruments.  See March 8, 2004 Transcript, pp. 4-16 (Exhibit 5).  The Court had "conceptual difficulties with the members of the class as … currently pled" and indicated that the case was going to "rise or fall on the class certification motion which [the Court had] doubts about[.]"  Id. at 7, 12.  Consequently, the Court set a briefing schedule that would bring that important issue to the forefront and ordered Plaintiffs' attorneys to file a motion for class certification by July 5, 2004.  Plaintiffs' attorneys responded by seeking to

4

transfer the case to Missouri federal court to consolidate it with *Kutten* (which was filed after *Arnold*).  In the alternative, Plaintiffs' attorneys also moved to voluntarily dismiss the case.  In making that request, Plaintiffs' attorney stated that transfer was appropriate because *Kutten* was "a nearly identical class action" and that the *Arnold* Plaintiff "ha[d] already joined in" *Kutten*.  See Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Transfer or Dismiss Action, pp. 2-3 (Exhibit 6).  Less than six months after the complaint had been filed, the Court granted the voluntary dismissal.  See May 13, 2004 Order (Exhibit 7).

### C.   The Third Case - *Kutten, et al. v. Bank of America, NA, et al.*, United States District Court for the Eastern District of Missouri.

In February 2004, Plaintiffs' attorneys filed the *Kutten* case – their third case – against the Bank and BAC before this Court, the first of four cases Plaintiffs' attorneys filed in this jurisdiction.  The plaintiffs, Ellen Kutten, Mary Ann Arnold (the named Plaintiff in the *Arnold* case), and Elsie Scharff, are all beneficiaries of trusts that the Bank administered with the co-trustees for those trusts.  See *Kutten* Second Amended Complaint, ¶ 17 (Exhibit 8).  The complaint was a combination of class and individual claims for, among other things, breach of contract, breach of fiduciary duty, and unjust enrichment arising out of the Bank's investment of trusts for which the *Kutten* Plaintiffs were beneficiaries into Nations Funds.  See id. at ¶¶ 50-59, 66-70, 114-135, 143-146.  Like *Arnold* and *Williams*, the *Kutten* Plaintiffs sought to represent a class of Bank customers who were the beneficiaries of trusts invested into Nations Funds.  See id. at ¶¶ 33-59.  At the time that *Kutten* was filed, both *Williams* and *Arnold* were still pending.  Moreover, Plaintiff Mary Ann Arnold was a named Plaintiff in both *Arnold* and *Kutten*.

### D.   The Fourth Case - *Barnhart, et al. v. Bank of America, NA, et al.*, United States District Court for the Eastern District of Missouri.

In August 2004, with *Williams* and *Kutten* cases still pending, Plaintiffs' attorneys inexplicably filed yet a fourth complaint against the Bank and BAC.  In *Barnhart*, the named Plaintiffs, Linda P. Barnhart and D.M. Griffith, were beneficiaries of trusts which were invested in Nations Funds.  See *Barnhart* Complaint, ¶ 17 (Exhibit 9).  Yet again, the complaint sought to

bring a putative class action comprised of beneficiaries whose trusts were invested in Nations Funds.  See id. at ¶¶ 35-51.  Further, as in the other cases, the claims set forth in the complaint were for purported breach of contract, breach of fiduciary duty, and unjust enrichment (as well as other claims that are not relevant to this Motion).  See id. at ¶¶ 52-61, 68-73, 85-90, 103-111.

In February 2005, the Court held a scheduling conference and ordered Plaintiffs to file their motion for class certification on April 15, 2005.  And, in response, on March 16, 2005, Plaintiffs' attorneys moved to voluntarily dismiss the case or, alternatively, to file an amended complaint to assert only individual claims.  See Plaintiffs' Motion for Voluntary Dismissal or Alternatively, Motion for Leave to Amend (Exhibit 10).  As a basis for dismissal, the *Barnhart* Plaintiffs indicated that they wished to pursue their claim in *Kutten* since the "central factual and legal issues presented by both actions are common." Id. at 2.  On April 19, 2005, the Court dismissed the case.  See April 19, 2005 Order (Exhibit 11).

### E. The Fifth Case - *Reinke, et al. v. Bank of America, NA, et al.*, United States District Court for the Eastern District of Missouri.

In December 2004, Plaintiffs' attorneys filed *Reinke*, their third case in Missouri federal court and fifth case overall.  The named Plaintiffs, Donna N. Reinke and Robert Stuart Cohen, were beneficiaries of an estate and other investments that were administered by the Bank and had assets invested in Nations Funds.  See *Reinke* Amended Complaint, ¶¶ 6-7 (Exhibit 12).  Like the other plaintiffs before them, the *Reinke* Plaintiffs asserted claims against the Bank and BAC for, among other things, breach of fiduciary duty, breach of contract, and unjust enrichment.  See id. at ¶¶ 47-62, 75-89.  The *Reinke* Plaintiffs sought to represent the same class.  See id. at ¶¶ 29-46. At the time *Reinke* was filed, *Williams*, *Kutten*, and *Barnhart* were all pending.

On May 9, 2005, the Bank and BAC moved to dismiss the Amended Complaint for a number of reasons, including the *Reinke* Plaintiffs' inability to satisfy the jurisdictional amount requirement.  On December 16, 2005, the Court dismissed the case for lack of subject matter jurisdiction.  See Memorandum and Order (Exhibit 13).

F.     **The Sixth Case -** *Siepel, et al. v. Bank of America, et al.*, **United States District Court for the Eastern District of Missouri.**

1.     **Consistent with their history of abusive litigation practices, Plaintiffs and their attorneys abandoned their original Complaint.**

On December 28, 2005, thirty days after they dismissed *Williams*, Plaintiffs' attorneys filed the Complaint in this, their *sixth* case.  By the time this case was filed, only *Kutten* remained of the other cases filed by Plaintiffs' attorneys.  *Siepel* represents Plaintiffs' attorneys' efforts to recycle named Plaintiffs from previous lawsuits and assert claims and allegations that were dismissed.  Plaintiffs include H. Craig Williams, Elinor Tama Williams, Constance Elaine Williams (all three named Plaintiffs in *Williams*), Donna N. Reinke (a named Plaintiff in *Reinke*), Robert Cohen (a named Plaintiff in *Reinke*), George and Phyllis Siepel, and Carl M. Page.  See *Siepel* Complaint, ¶ 14 (Exhibit 14-A).  Each Plaintiff is the beneficiary of a trust, estate, or IRA:

- Plaintiffs H. Craig Williams, Elinor Tama Williams, and Constance Elaine Williams are beneficiaries of a trust established pursuant to the terms of the Last Will and Testament of Heberton F. Williams.  Their trust was closed in 2001.  See *Siepel* Complaint, ¶14 (c).

- Plaintiff Donna N. Reinke is the beneficiary of the estate of Margaret C. Spencer as set forth in the Last Will and Testament of Margaret C. Spencer. The Bank administered the estate, which closed in early 2004.  See *Siepel* Complaint, ¶ 14(a).

- Plaintiff Robert Cohen is the beneficiary of an IRA that he established with Boatmen's Trust Company.  In 2002, after the Bank acquired Boatmen's Trust Company, Plaintiff Cohen executed an IRA Adoption Agreement ("IRA Adoption Agreement") with the Bank to establish Plaintiff Cohen's IRA under the Bank of America Individual Retirement Account Trust Agreement ("Cohen IRA Agreement").  See IRA Adoption Agreement and Cohen IRA Agreement (Exhibits 15 and 16).  Only the Bank had a relationship with Cohen.  See *Siepel* Complaint, ¶ 14(b).

- Plaintiffs George and Phyllis Siepel are beneficiaries of a trust established pursuant to the terms of the Last Will and Testament of Agnes V. Benstein. The Bank is the only defendant in this case that was a trustee of the Siepel Trust, which left the Bank in 2005.  See *Siepel* Complaint, ¶ 14(d).

- Plaintiff Carl M. Page is the beneficiary of a trust established by Janet P. Wilson.  See Janet P. Wilson Trust Agreement ("Page Trust").  The Bank is presently the trustee of the Page Trust, and is the only defendant in this case that is a trustee of the Page Trust.  See *Siepel* Complaint, ¶ 14(e).

As in the other five cases, the *Siepel* Complaint alleged claims for breach of contract, breach of fiduciary duty, and unjust enrichment.  See *Siepel* Complaint, ¶¶ 60-86.  And, as in the other cases, Plaintiffs and their attorneys are seeking to certify a class of Bank customers who are "beneficiaries, owners, beneficial owners, or principals of trusts, accounts or other entities" that were invested in Nations Funds by the Bank acting as trustee.  See id. at ¶¶ 41-59.

There can be little dispute that this case is the product of Plaintiffs' attorneys' efforts to obtain a new judge for their case because of motions and deadlines looming in *Kutten* and the deadline in *Williams* that required the *Williams* Plaintiffs to submit their motion and evidence in support of class certification, which was avoided by a voluntary dismissal on the eve of the deadline.  The *Siepel* Complaint acknowledged that *Siepel* and *Kutten* are duplicative when it alleged that "pending in this District is *Kutten et al v. Bank of America, et al*, Case No. 4:04-cv-244 ("*Kutten* case") in which many of the claims of the Class herein have previously been asserted and are presently pending."  Id. at ¶ 12.  The Civil Cover Sheet accompanying the *Siepel* Complaint indicated that it is "a related case" to *Kutten*, and the Original Filing Form identified *Siepel* as "substantially equivalent" to *Kutten*.  See *Siepel* Civil Cover Sheet and Original Filing Form (Exhibits 17 and 18, respectively).

More telling, however, is that less than two weeks after filing the Complaint, Plaintiffs' attorneys filed a motion to consolidate *Kutten* and *Siepel*.  In support of consolidation, Plaintiffs' attorneys asserted that "[t]he Second Amended Complaint presently before the Court in the *Kutten* case . . . and the recently filed Complaint in the *Siepel* case . . . set forth near-identical core claims[.]"  Memorandum of Law in Support of Plaintiffs' Motion for Entry of Order Consolidating Cases, pp. 2-3.  (Exhibit 19).  Further, Plaintiffs' attorneys stated that "[b]oth the *Kutten* and *Siepel* cases seek certification of essentially the same nationwide class[.]"  Id. at 5.  Given that both cases raise the same claims and were filed in the same Court, one can only conclude that *Siepel* was filed in order to allow Plaintiffs to seek a new forum for their claims.

The Bank and BAC moved to dismiss the *Siepel* Complaint on numerous grounds, including the fact that the investment of trust assets in affiliated mutual funds is permissible

under state law.  In response, Plaintiffs and their attorneys filed the Amended Complaint – their fourteenth complaint in their seven cases.

>       2.       **The gravamen of the Amended Complaint is the same as the original Complaint and the other cases filed by Plaintiffs' attorneys.**

Seemingly in an attempt to camouflage the similarities between the *Siepel* Amended Complaint, the original Complaint, and other cases filed by Plaintiffs' attorney, the Amended Complaint names Columbia Management Advisors, Columbia Management Distributors, and Banc of America Investment Services as additional defendants and asserts additional claims, including certain federal securities claims.  The gravamen of all of the cases, however, is the same.  The Amended Complaint has the same named Plaintiffs as the original Complaint (and many of the other cases) and alleges the same claims for unjust enrichment and breach of fiduciary duty arising out of the Bank's investment of trusts and other financial assets for which Plaintiffs are beneficiaries into Nations Funds.  See *Siepel* Amended Complaint, ¶¶ 26, 96-99, 100-103, 105-109, 111-115 (Exhibit 14-B).  The addition of new claims and defendants is inconsequential when, as set forth in detail below, those new claims fail as a matter of law and the new defendants have no connection or relationship to these named Plaintiffs.  In their Amended Complaint, Plaintiffs and their attorneys once again seek to represent a class of Bank customers who were the beneficiaries of trusts and other financial assets invested by the Bank, acting as trustee, into Nations Funds.  See id. at ¶¶ 61-65.

Importantly, despite the fact that they amended the Complaint, Plaintiffs and their attorneys have not altered their position that this case and *Kutten* are the substantially similar. By proceeding after filing the *Siepel* Amended Complaint, Plaintiffs and their attorneys clearly continue to take the position that the cases "set forth near-identical core claims" and "seek certification of essentially the same nationwide class."

G.     **The Seventh Case - *Luleff v. Bank of America, N.A. et al.*, United States District Court for the Southern District of New York.**

In Feburary, 2006, yet a seventh action - *Luleff* - was filed in federal court in New York. Plaintiffs' attorney is Daniel Cobrinik, who is co-counsel with Plaintiffs' attorney herein in a case raising similar causes of action against LaSalle Bank, which that court recently dismissed for failing to state a claim.[2]  Although filed in New York, the *Luleff* action concerns a Missouri trust and a Missouri resident.  Thereafter, Plaintiffs' attorneys  herein filed a motion for a multi-district litigation proceeding citing the need for consolidation given the three cases ***they have filed***.  Plaintiffs' attorneys conveniently failed to note for the JPML Panel that each of the cases was filed by them or at their behest.  *Luleff* is stayed pending a decision from the JPML on Plaintiffs' motion to create an MDL with their three remaining cases.

II.     **Only the Bank Has a Relationship With Plaintiffs.**

In response to the Bank and BAC's motion to dismiss, Plaintiffs filed an Amended Complaint adding many additional defendants and including federal securities law claims. The *Siepel* Amended Complaint alleges unspecified wrongdoing against the other Defendants, but fails to allege any facts to support those alleged wrongdoings or even to demonstrate the existence of a connection or relationship between those other Defendants and Plaintiffs.  Indeed, Plaintiffs routinely name "Defendants" collectively in their conclusory allegations without differentiating among the six distinct Defendants.  Some examples of Plaintiffs' conclusory, vague and bald allegations include:

- "***Defendants*** conspired among themselves, ***and with others presently unknown***, in a series of business decisions to 'double dip' . . . . ***They*** so conspired by agreeing to act together for their unjust enrichment at the hands of Plaintiffs and the members of the Class, all of which caused them substantial damages as described below." *Siepel* Amended Complaint, ¶ 9(b) (emphasis added).

---

2     See Hughes v. LaSalle Bank, N.A., 419 F. Supp.2d 605 (S.D.N.Y. 2006) (dismissing case brought by Plaintiffs' counsel herein raising similar allegations).

- "The Bank, together with the ***other Defendants***, was required… to supply every beneficiary…all the information that a reasonable person might consider relevant to investments . . ."  Id. at ¶9(e) (emphasis added).

- "***Defendants*** took advantage of their power over beneficiaries of fiduciary accounts … to market other products and services sold by ***Defendants*** through 'Relationship Managers' …"  Id. at ¶ 9(g) (emphasis added).

- "Through a complicated and barely comprehensible grouping of advisors, subadvisors, subsidiaries, affiliated and unaffiliated service providers, the ***Defendants*** engineered a scheme . . ."  Id. at ¶ 34 (emphasis added).

- "Each of the facts identified above and others were material facts that the ***Defendants*** should have disclosed in the foregoing Nations Funds' prospectuses and in the other documents provided to the beneficiaries."  Id. at ¶ 44 (emphasis added).

- "[***Defendants***] breached their respective duties. . . and operated as a fraud and deceit upon the Siepel Plaintiffs …"  Id. at ¶ 87 (emphasis added).

- Plaintiffs are victims of the [***Defendants'***] "plan" and "scheme" and are entitled to damages.  Id. at ¶ 88 (emphasis added).

The Bank is the only defendant in this case that is a trustee or fiduciary for the trusts, estate, and IRA for which Plaintiffs are beneficiaries.  See *Siepel* Amended Complaint, ¶ 26. (For the Court's convenience, the attached chart reveals the nature of the relationship here or lack thereof between Plaintiffs and Defendants.  Exhibit 20.)  Plaintiffs do not plead that the Defendants, other than the Bank, had a fiduciary relationship or any kind of relationship with Plaintiffs because they did not.

Defendant Bank of America Investment Services, Inc, for example, has no role here whatsoever.  It has no relationship with Plaintiffs and no role in the issues at hand, and Plaintiffs do not allege that it does.  Defendants Columbia Management Advisors, LLC and Columbia Management Distributors, Inc. provide services to Columbia Funds mutual funds.  They do not have any relationship with Plaintiffs of any kind, and Plaintiffs do not allege that they do.  Bank of America Corporation is the Bank's parent/holding company.  It similarly has no relationship with Plaintiffs and, indeed, it is for this reason that the Court in the *Williams* case granted BAC's motion for summary judgment.

There is no question that Plaintiffs just added affiliated entities hoping to show that this case is somehow different and also hoping that some claim or allegation against some Defendant might stick.

## ARGUMENT

I.  **The Court Should Decline Jurisdiction and Dismiss the Amended Complaint.**

A.   **Plaintiffs and their attorneys have engaged in judge shopping.**

"Judge-shopping is a practice that has been universally condemned." Lane v. City of Emeryville, No. 93-16646, 1995 U.S. App. LEXIS 11629, at *4 (9th Cir. May 16, 1995). Judge shopping occurs when a party voluntarily dismisses a case only to refile the same case and assert the same claims in another court or in front of another judge.[3] See, e.g., Vaqueria Tres Monjitas, Inc. v. Rivera Cubano, 341 F. Supp.2d 69 (D.P.R. 2004); McDermott v. Toyota Motor Sales Co., Ltd., 487 F. Supp. 484 (E.D. Tenn. 1980). One court has described judge shopping as "when a litigant discontinues a fray, only to start over again on another day." Steward v. Dow Corning Corp., No. 92-1105-K, 1992 U.S. Dist. LEXIS 4048, at *3 (D. Kan. March 13, 1992). "In the context of interdistrict litigation, judge shopping has been described as the situation existing where plaintiffs '*see* a storm brewing in the first court [and] try to weigh anchor and set sail for the hopefully more favorable waters of another district.'" Id.

"Where judge shopping has been found to exist, the district court has the authority to act to preserve the integrity and control of its docket." Id. at *2. Included within the court's authority is the discretion to decline jurisdiction over a case that has been voluntarily dismissed and refiled for the purpose of judge shopping. See, e.g., Zografos v. Qwest Comms. Corp., 225

---

[3]      Some courts use the terms "judge shopping" and "forum shopping" interchangeably. Regardless of the term used, the act of voluntarily dismissing and refiling a case in another court or in front of another judge is prohibited. Cf. Vaqueria Tres Monjitas Inc. v. Rivera Cubano, 341 F. Supp.2d 69, 73 (D.P.R. 2004) (plaintiffs engaged in "judge shopping" by voluntarily dismissing and refiling the same case) with McDermott v. Toyota Motor Sales Co., Ltd., 487 F. Supp. 484, 486 (E.D. Tenn. 1980) (plaintiff's act of voluntarily dismissing and refiling the same case constituted "forum shopping").

F. Supp.2d 1217, 1223-1224 (D. Or. 2002); McDermott, 487 F. Supp. at 486; Eager v. Kain, 158 F. Supp. 222, 223-224 (E.D. Tenn. 1957).

The Court should decline jurisdiction over this case and dismiss the Amended Complaint because Plaintiffs and their attorneys have engaged in judge shopping.[4]  Plaintiffs' attorneys have filed seven putative class action lawsuits and, ***according to Plaintiffs and their attorneys***, each case has alleged the same claims and sought to certify the same putative class.  Plaintiffs' attorneys have stated on numerous occasions that the cases are "substantially similar" or "nearly identical".  With respect to *Kutten* and this case, Plaintiffs and their attorneys seek to consolidate the cases on the basis that they "set forth near-identical core claims."  See Memorandum of Law in Support of Plaintiffs' Motion for Entry of Order Consolidating Cases, pp. 2-3.  They are now seeking to create an MDL on the very same basis.

Further, Plaintiffs and their attorneys have used their seven cases to cause improper delay and to judge shop.  Each time that they have faced an unfavorable deadline, Plaintiffs' attorneys have improperly attempted to cause delay and, when that did not work, moved to voluntarily dismiss a case so that they could assert those claims in one of the other six cases.  In *Williams*, *Arnold* and *Barnhart*, Plaintiffs' attorneys voluntarily dismissed each case on the eve of the deadline for filing class certification and only after first attempting to cause delay by seeking to transfer, consolidate or stay those cases.  Plaintiffs' attorneys then asserted those dismissed claims in *Kutten* and this case.  Indeed, the majority of the named Plaintiffs in *Kutten* and this case are individuals that were named Plaintiffs in *Williams*, *Arnold*, and *Barnhart*.[5]  Moreover,

---

[4]     While Defendants seek only dismissal at this time, there is no question that this conduct is sanctionable under both Federal Rule 11 and 28 U.S.C. § 1927.  See, e.g., In the Matter of Geoffrey N. Fieger, No. 97-1359, 1999 U.S. App. LEXIS 22435, at *9 (6th Cir. Sept. 10, 1999) (affirming Rule 11 sanctions for judge shopping); Bolivar v. Pocklington, 975 F.2d 28, 32-34 (1st Cir. 1992) (affirming sanction under Rule 11 and Section 1927, in part, due to forum shopping); Lane v. City of Emeryville, No. 93-16646, 1995 U.S. App. LEXIS 11629, at *8-9 (9th Cir. May 16, 1995) (remanding cases for imposition of sanctions for judge shopping).

[5]     In response to requests for admission, the *Williams* Plaintiffs confirmed that Plaintiffs Kutten, Arnold, Scharff, Reinke, and Cohen, were members of the putative class in the Florida case.  See Plaintiffs' Responses to Requests For Admission, ¶¶ 62, 63 at p. 44 (Exhibit 21).

now that Plaintiffs' attorneys are facing the Bank's motion to dismiss and other deadlines in *Kutten*, they are attempting the same type of improper maneuvering.  The filing of the motion to consolidate *Kutten* into this newly filed case—especially less than two weeks after the original Complaint was filed—is another tactic by Plaintiffs' attorneys to avoid an unfavorable deadline and possible dismissal.

It is inconsequential that Plaintiffs have filed an Amended Complaint that asserts additional claims and names additional Defendants.  The Amended Complaint, like the original Complaint and the other cases, is predicated on the Bank, acting as trustee, investing the trusts and other financial assets for which the Plaintiffs serve as beneficiaries into Nations Funds.  The putative class is the same as well.  Plaintiffs and their attorneys cannot avoid dismissal for judge shopping by amending their Complaint to assert additional meritless claims against Defendants that have no relationship or connection to Plaintiffs or their allegations.

In <u>McDermott v. Toyota Motor Sales Co., Ltd.</u>, 487 F. Supp. 484 (E.D. Tenn. 1980), the plaintiff engaged in judge shopping similar to, but on a lesser degree than, that of Plaintiffs and their attorneys in this case.  In <u>McDermott</u>, the plaintiff filed a personal injury case in Tennessee state court and the defendants moved for summary judgment.  <u>See</u> <u>id</u>. at 485.  At oral argument, the court indicated that it was denying defendants' motion "out of an abundance of precaution" and that unless more facts were brought forward at trial, the court would look favorably upon the defendants' motion for directed verdict.  <u>See</u> <u>id</u>.  Following the oral argument, the plaintiff voluntarily dismissed his case and refiled in Tennessee federal court.  <u>See</u> <u>id</u>.  The Tennessee federal court, however, dismissed the case for forum shopping.  <u>See</u> <u>id</u>. at 485-86.  The court indicated that the plaintiff could not simply dismiss and refile his case to avoid a potentially unfavorable ruling.  <u>See</u> <u>id</u>. at 486.  The court held that to "condone such obvious instances of 'forum shopping' would only serve to destroy the independence of the state and federal courts, and to defeat any hope for judicial economy and the orderly resolution of cases."  <u>Id</u>.  The <u>McDermott</u> decision was based largely on <u>Eager v. Kain</u>, a case in which a Tennessee federal

14

court similarly dismissed a case for forum shopping. See Eager v. Kain, 158 F. Supp. 222, 223-224 (E.D. Tenn. 1957).

In addition to McDermott and Eager, numerous courts have dismissed cases, or transferred them back in front of the judge that the plaintiff was attempting to avoid, due to improper judge shopping. See, e.g., Vaqueria Tres Monjitas, 341 F. Supp.2d at 71 (transferring refiled case to court in which the case was originally filed and finding that "what [plaintiffs] may not do, and we cannot stress this enough, is abuse the Court's processes by using Rule 41 as a loophole to circumvent an unfavorable ruling."); Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc., No. C03-3711-MHP, 2003 WL 22387598, at *6 (N.D. Cal. Oct. 14, 2003) (transferring refiled case due, in part, to the fact that plaintiffs engaged in forum shopping and attempted to conceal that forum shopping by using different named plaintiffs); Zografos, 225 F. Supp.2d at 1223-1224 (finding "clear evidence of judge-shopping," dismissing amended complaint to "[p]rotect[] the integrity of the judicial process"); Smith v. Mt. Sinai Hosp., No. 84-Civ-9111-CSH, 1985 U.S. Dist. LEXIS 20526, at * 3 (S.D.N.Y. April 22, 1985) (transferring refiled case back to original court finding that there was the "appearance of 'judge-shopping'" and "a prima facie case of voluntary dismissal and refiling for the forbidden purpose").

All of these facts demonstrate without question that Plaintiffs and their attorneys have engaged in a pattern of improper judge shopping. A party may not, as Plaintiffs and their attorneys have done, improperly use Federal Civil Rule 41 to dismiss and refile a case for the purpose of avoiding an unfavorable deadline or to seek a more favorable judge. The Court, therefore, should protect the integrity of its docket from this attempted judge shopping and decline jurisdiction over this case.

### B. The Court should decline jurisdiction over Plaintiffs' Amended Complaint under the first-filed rule.

The first-filed rule allows a court to decline jurisdiction and dismiss a complaint that is substantially similar to another complaint that was previously filed. The first-filed rule provides that "where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches

has priority to consider the case." Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985); see also Pace Constr. Co., Inc. v. Travelers Cas. & Sur. Co. of America, 259 F. Supp.2d 934, 938 (E.D. Mo. 2003).  The Eighth Circuit has held "that in the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." Orthmann, 765 F.2d at 121 (quotations omitted); see Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993).  The purpose of the rule is to conserve judicial resources and avoid conflicting rulings.  See id.; Pace Constr. Co., 259 F. Supp.2d at 938; Gen. Comm. of Adjustment GO-386 v. Burlington Northern R.R., 895 F. Supp. 249, 251 (E.D. Mo. 1995).

For the first-filed rule to apply, there must be "substantial overlap of the content" between the two cases.  Hallmark Cards, Inc. v. Group One, Ltd., No. 04-CV-63-W-DW, 2004 U.S. Dist. LEXIS 16707, at *4 (W.D. Mo. April 15, 2004).  The cases need not be identical.  Id. "The first-filed rule can apply when the two actions involve additional claims and additional parties."  Id. at *4-5 (applying first-filed rule when second filed case involved additional claims and parties because those differences were "minor" and because the cases were "substantially similar"); see also Gen. Comm. of Adjustment, 895 F.Supp. at 252 (applying first-filed rule when two cases involved different parties because the "legal issue in dispute and the industry affected [were] identical").

The Court should apply the first-filed rule and decline jurisdiction over this case.  First, there can be no question that *Kutten* was filed before this case, as *Kutten* was filed on February 27, 2004 and the original Complaint in this case was filed on December 28, 2005 and the Amended Complaint on April 14, 2006.  Second, according to Plaintiffs and their attorney, *Kutten* and this case involve substantially the same parties.  Both Complaints named the Bank and BAC as defendants.  Although the Amended Complaint in this case also names other Defendants, the naming of additional defendants is not sufficient to preclude application of the first-filed rule.  See Hallmark Cards, 2004 U.S. Dist. LEXIS 16707, at *4 (applying first-filed rule when one of the cases included three additional defendants).  Further, while the cases

16

involve different named Plaintiffs, Plaintiffs and their attorneys argue that the cases seek to certify the same putative class, which is sufficient to apply the first-filed rule. See Peak v. Green Tree Financial Servicing Corp., No. C 00-0953, 2000 U.S. Dist. LEXIS 9711 (N.D. Cal. July 7, 2000) (applying first-filed rule when two complaints involved different named plaintiffs, but sought to certify the same class of plaintiffs). Finally, in both cases the claims are predicated on investments in Nations Funds, including claims for breach of fiduciary duty and unjust enrichment. For purposes of the first-filed rule, it is inconsequential that *Kutten* has some claims that this case does not and vice versa. See Hallmark Cards, 2004 U.S. Dist. LEXIS 16707, at *4 (applying first-filed rule when one of the cases included some different claims).

The case of Peak v. Green Tree Financial Servicing Corp. involved facts similar to this case and is instructive. In Peak, the plaintiff brought an eight claim putative class action lawsuit in the United States District Court for the Northern District of California. See Peak, 2000 U.S. Dist. LEXIS 9711, at *1. Approximately seven months before Peak was filed, another plaintiff filed a similar ten count putative class action lawsuit in the United States District Court for the Eastern District of California. See id. Both cases involved the same defendants, many of the same claims, and had identical putative classes of plaintiffs. See id. To determine whether to dismiss Peak under the first-filed rule, the court considered three factors: the chronology of the two cases, the similarity of the parties, and the similarity of the issues. See id. at *5. The court first determined that the case in the Eastern District of California was filed before Peak. Second, the court held that the parties were sufficiently similar. See id. Both cases named the same defendants and, although the named plaintiffs in the two cases were different, the putative classes were identical. See id. Finally, the court found that the cases presented similar issues because the alleged offending behavior was the same in both cases and the claims were largely the same. See id. Consequently, the court applied the first-filed rule and dismissed the Peak case. See id. at *6-7. See also PCL Constr. Servs., Inc. v. Rainforest Café, Inc., No. 01-1704, 2002 U.S. Dist. LEXIS 1461, at *9-10 (D. Minn. Jan. 28, 2002) (applying first-filed rule to stay the second of

two cases filed by the same plaintiff because both cases involved form contracts and the issues overlapped).

Plaintiffs can point to no compelling circumstances for this Court to disregard the first-filed rule.  In fact, Plaintiffs do not and cannot dispute the substantial overlap between the two cases.  Plaintiffs and their attorneys have alleged numerous times that this case is "related" and "substantially equivalent" to *Kutten*.  See, e.g., *Siepel* Complaint at ¶ 12; Exhibit 18.  Moreover, in their Memorandum of Law in Support of Plaintiffs' Motion for Entry of Order Consolidating Cases, Plaintiffs' attorneys stated that "[t]he Second Amended Complaint presently before the Court in the *Kutten* case . . . and the recently filed Complaint in the *Siepel* case . . . set forth near-identical core claims[.]"  Memorandum of Law in Support of Plaintiffs' Motion for Entry of Order Consolidating Cases, pp. 2-3. (See Exhibit 19).  Plaintiffs went on to assert that "[b]oth the *Kutten* and *Siepel* cases seek certification of essentially the same nationwide class[.]"  Id. at 5.  Plaintiffs and their attorneys have not amended or altered their representations to the Court since filing the Amended Complaint.  Based on Plaintiffs and their attorneys' representations to the Court alone, the Court should find that this case and *Kutten* are substantially similar.

This case should never have been filed and allowing both *Kutten* and this case to proceed is a waste of judicial resources.  Because there is no compelling reason for the Court to act otherwise, it should apply the first-filed rule, decline jurisdiction, and dismiss the Amended Complaint.

## II.    **The Amended Complaint Fails to Comply with Rule 8 of the Federal Rules of Civil Procedure.**

Plaintiffs' Amended Complaint fails the most basic pleading requirements of Rule 8(a)&(e) of the Federal Rules of Civil Procedure.  Federal Civil Rule 8(a)(2) requires a party seeking relief to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Kramer & Frank P.C. v. Wibbenmeyer, No. 4:05cv2395 (RWS), 2006 WL 516842 (E.D. Mo. March 2, 2006) (criticizing counterclaim which was lengthy, redundant, vague and filled with conclusory allegations).  The Supreme Court has stated that a complaint ***must***

provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41 (1957); see also Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005) (finding plaintiffs' securities fraud class action complaint legally insufficient for failing the "simple" test of Conley). When a pleader fails to meet the requirements of Rule 8(a), particularly in the context of securities claims, dismissal is proper. See, e.g., Kennedy v. Nicastro, 503 F. Supp. 1116, 1117, 1120 (N.D. Ill. 1980) (dismissing amended complaint after the district court "labored at length" over the "'securities fraud' class action allegations … in an effort to isolate the few [claims] that successfully surmount even the low threshold of Conley").

Under Federal Civil Rule 8(a), the Amended Complaint fails the simple test of "notice" pleading in several respects. First, the Amended Complaint is neither short nor plain. Rather, the 115-paragraph pleading is replete with vague, redundant and conclusory allegations. It is an "everything but the kitchen sink" type of pleading which fails to succinctly or plainly set forth the facts supporting Plaintiffs' myriad of claims. For example, as pled, "Each of the facts identified above and others were material facts that the Defendants should have disclosed in the foregoing Nations Funds' prospectuses and in the other documents provided to the beneficiaries." See *Siepel* Amended Complaint, ¶44. This conclusory blanket statement epitomizes the "factual allegations" of the Amended Complaint, but is unsupported by any specific facts and is based only upon circular legal conclusions and rhetoric. See, e.g., id. at ¶¶ 3, 7, 8, 30-34, 39, 44, 45, 51, 55. These are precisely the type of unwarranted inferences and sweeping legal conclusions that this Court is free to and should ignore. See Farm Credit Services of America v. American State Bank, 339 F.3d 764, 767 (8th Cir. 2003).

Second, the Amended Complaint's pattern of alleging unspecified wrongdoing against Defendants collectively fails to satisfy the notice requirement of Rule 8. As the Court in Kennedy recognized, plaintiffs cannot be permitted to take a "casual" approach to pleading or engage in a "practice of alleging indiscriminately that 'defendants' performed or omitted to perform some act." Kennedy, 503 F. Supp. at 1117 n.7, 1122. In that case, the court found the

practice of failing to specify which facts and which claims pertained to which defendants unacceptable and held that "plaintiffs owe defendants the obligation to make a good faith differentiation throughout the complaint that will enable each defendant to know with what he or it is charged and to what he or it must make answer." Id. Thus, in upholding the basic "notice" pleading requirements of Rule 8(a), the court "sen[t] plaintiffs back to the drawing board to present a complaint that will not be an imposition on the Court and that the defendants may plead to intelligently." Id. at 1120.

This point is proven by the simple fact that in reading the verbose, incomprehensible allegations in the Complaint, no one can determine precisely what each Defendant did here other than the Bank was the trustee for certain trusts. It is impossible to identify the roles and allegations which pertain to each specific defendant, their relationship with Plaintiffs – because except for the Bank, they had none – and the nature of the purported wrongdoing committed by each Defendant. Further, the Amended Complaint in this case fails to give Defendants sufficient notice of what claims are being brought in what context against what Defendants. Plaintiffs routinely name "Defendants" collectively in their conclusory allegations without differentiating among the six distinct Defendants. See, e.g., *Siepel* Amended Complaint, ¶¶ 9, 34, 44, 87, 88. Indeed, this pattern and practice exemplifies Plaintiffs' casual approach to pleading which has imposed an enormous workload on opposing counsel and this Court to decipher such indiscriminate, vague and conclusory allegations. Accordingly, the Amended Complaint should be dismissed for failing to provide any of the Defendants with adequate notice of the claims being alleged against them or the corresponding factual context for such claims.

Plaintiffs have also failed to comply with Rule 8(e). Under Rule 8(e), "each averment of a pleading must be simple, concise, and direct." See Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 114 (2d Cir. 1982) (dismissing in part various securities claims set forth in a "prolix and discursive 69 page complaint which is anything but the simple, direct, and concise statement mandated by F.R.C.P 8(e)"). In Decker, the Second Circuit recognized that the amended complaint alleging securities fraud before it was an "everything but the kitchen sink" type of

pleading which "would give plaintiff's attorneys carte blanche in the area of liberal federal discovery." Decker, 681 F.2d at 114-115.  Further, the Second Circuit articulated that because the "'*in terrorem*' effect of such unfettered discovery would, to say the least, be substantial, it is important that the wheat in plaintiff's pleading be separated from the chaff." Id.  Both Congress and the Supreme Court have cautioned against permitting plaintiffs to engage in "abusive" practices by filing "routine" and meritless claims in the hopes that discovery will lead to some "plausible cause of action."  Dura Pharmaceuticals, 544 U.S. at 347, quoting H.R. Conf. Rep. No. 104-369, p. 31 (1995).  This is precisely what Plaintiffs are doing here.

Applying the pleading requirements as outlined in Rule 8(e) as well as the policy underlying these pleading requirements, Plaintiffs' Amended Complaint fails to set forth concise and direct allegations.  Rather than enlighten Defendants and this Court regarding the factual allegations surrounding their claims, Plaintiffs' allegations obfuscate and bury any facts related to their claims beneath layers of rhetoric.  For example, Plaintiffs rely upon and cite to various press releases, speeches and advertising materials and claim various schemes and conspiracies without ever attempting to connect these "facts" to any of their bald allegations for securities fraud, breach of fiduciary duty, or unjust enrichment.  See, e.g., *Siepel* Amended Complaint, ¶¶ 7, 8, 11, 12, 13, 14, 30, 63, 64.

Moreover, after more than three years of unsuccessful litigation, Plaintiffs' Amended Complaint serves only to complicate this action by its recent invocation of securities claims in an effort to gain more time and discovery.  Indeed, Plaintiffs' motives are clear in their attempt to cast a wider net by including various new Defendants in this action.  Plaintiffs must not be permitted to hide behind the liberal pleading requirements in the hopes of gaining yet another "bite at the apple" to embark on a massive fishing expedition where they have failed to state any claim or entitlement to relief in a simple, concise or direct pleading.

**III.**     **The Amended Complaint Should be Dismissed Because Plaintiffs Have Failed to State a Claim Upon which Relief can be Granted.**

When ruling on a Federal Civil Rule 12(b)(6) motion to dismiss, the Court may accept only the well-pled allegations in the complaint as true.  See <u>Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519 (1983).  The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  <u>Wiles v. Capitol Indem. Corp.</u>, 280 F.3d 868, 870 (8th 2002).  If, when accepting only the well-pled facts as true, the Court determines that the plaintiff has failed to state a claim upon which relief can be granted, then dismissal of the complaint is warranted.  As outlined below, each Count in the Amended Complaint has fundamental defects warranting dismissal.

**A.**     **The Supreme Court has confirmed that Plaintiffs' Investment Advisers Act claim (Count I) fails as a matter of law.**

In Count One of the Amended Complaint, Plaintiffs allege that the Bank and "Bank Subsidiaries" violated the Investment Advisers Act of 1940.  See <i>Siepel</i> Amended Complaint, ¶¶ 84-88.  Specifically, Plaintiffs assert that Defendants violated 15 U.S.C. § 80b-6(1), (2) and (4), by engaging in fraud by omission by failing to disclose certain information to Plaintiffs, which allegedly caused the financial assets for which Plaintiffs are beneficiaries to be invested into Nations Funds.  See <u>id</u>. at ¶ 87.

Plaintiffs' claim is fatally flawed and should be dismissed for numerous reasons.  First and foremost, Plaintiffs have not alleged that Defendants are "investment advisers" to Nations Funds under the Investment Advisers Act.  An investment adviser includes "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities . . ."  See 15 U.S.C. § 80b-2(11).  A national banking association and holding company are excluded as "investment advisers" within the meaning of the Investment Advisers Act.  See <u>id</u>.  Plaintiffs have alleged no facts in the

Amended Complaint to show that Defendants are "investment advisers" within the meaning of the Investment Advisers Act.

Second, Count I fails because no private right of action exists under 15 U.S.C. § 80b-6. The United States Supreme Court's decision in <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11 (1979), requires this result.  In <u>Transamerica</u>, the Supreme Court addressed the issue of what claims can be brought as a private right of action under the Investment Advisers Act.  In so doing, the Supreme Court specifically rejected the idea that a private right of action exists under 15 U.S.C. § 80b-6.  <u>See id</u>. at 19-24.  Accordingly, Plaintiffs' claim against Defendants for an alleged violation of 15 U.S.C. § 80b-6 is improper and should be dismissed.  <u>See Nielsen v. Professional Financial Mgmt., Ltd.</u>, 682 F. Supp. 429, 439 (D. Minn. 1987) (dismissing claim under 15 U.S.C. § 80b-6 "[b]ecause no such private cause of action exists"); <u>Harris Trust and Savings Bank v. Ellis</u>, 609 F.  Supp. 1118, 1123 (N.D. Ill. 1985) (dismissing claim under 15 U.S.C. § 80b-6 because "there is no such private right of action"); <u>Hackett v. Continental Can Co.</u>, 518 F. Supp. 1281, 1284 (E.D. N.Y. 1981) (dismissing claim under 15 U.S.C. § 80b-6 because it "does not afford an implied private cause of action").[6]

---

[6]     Although the Supreme Court in <u>Transamerica</u> held that no private right of action exists under 15 U.S.C. § 80b-6, the Court did hold that a private right of action exists under 15 U.S.C. § 80b-15.  <u>See Transamerica</u>, 444 U.S. at 18-19.  Under 15 U.S.C. § 80b-15(b), any investment advisor contract made in violation of a provision of the Investment Advisers Act, or the performance of which involves a violation of the Investment Advisers Act, is void and may be rescinded by one of the parties to the contract.  <u>See</u> 15 U.S.C. § 80b-15(b).  Plaintiffs, however, have alleged no such claim under 15 U.S.C. § 80b-15(b).  Plaintiffs specifically reference and quote 15 U.S.C. § 80b-6 as the basis for their claim, but make no allegations relating to 15 U.S.C. § 80b-15 or any investment advisor contract.  Moreover, even if Plaintiff had attempted to assert a claim under 15 U.S.C. § 80b-15, they have no standing to do so.  Only a party to an investment advisor contract has standing to seek rescission of that contract under 15 U.S.C. § 80b-15 and Plaintiffs have not and cannot allege that they are parties to an investment advisor contract with any of Defendants.  <u>See</u>, <u>e.g.</u>, <u>Clark v. Nevis Capital Mgmt., LLC</u>, 2005 U.S. Dist. LEXIS 3158, at *40-41 (S.D. N.Y. March 3, 2005) (dismissing rescission claim under 15 U.S.C. § 80b-15 because "[o]nly parties to an investment advisory contract may sue for rescission under section 215"); <u>Zurich Capital Markets, Inc. v. Coglianese</u>, 332 F. Supp.2d 1087, 1114 (N.D. Ill. 2004) ("In order to sue under [the Investment Advisor] Act and seek rescission of the contract, [the plaintiff] must be a party to the contract.").

Plaintiffs have failed to state a claim upon which relief can be granted and their Investment Advisers Act claim (Count I) should be dismissed.

### B.   Plaintiffs' claim under the Exchange Act (Count II) is time-barred and inadequately pled and should be dismissed.

#### 1.   Plaintiffs' Exchange Act claim is time- barred.

Count II of the Amended Complaint attempts to set forth a claim pursuant to Section 10b(5) of the Exchange Act and SEC Rule 10b-5 (collectively referred to as "Section 10b"). This claim should be dismissed because it was filed after expiration of the applicable statute of limitations.  The statute of limitations for violation of Section 10b(5) of the Exchange Act and SEC Rule 10b-5 was recently clarified by the Sarbanes-Oxley Act.  Under that Act, an action for securities fraud must be brought within *two* years after the date the facts constituting the violation are discovered or within five years of the violation.  28 U.S.C. § 1658(b); Adc Telecommunications, Inc. Securities Litig., 409 F.3d 974, 976-77 (8th Cir. 2005).

In this case, Plaintiffs plead that the investments involving the alleged omissions which constitute the basis of their Section 10b claim took place in and around 1998, 1999 or 2000.  See *Siepel* Amended Complaint, ¶¶ 32, 36, 37, 45.  However, Plaintiffs' Amended Complaint was not filed until April 14, 2006 – fully six to eight years after the alleged violation of the Exchange Act.  Therefore, even accepting the alleged omissions as true, Plaintiffs' Section 10b claim was filed well after expiration of the applicable statute of limitations.  Plaintiffs' Section 10b claim should be dismissed.

#### 2.   Plaintiffs have not satisfied Rule 10b-5's pleading requirements.

Section 10b(5) and Rule 10b-5 prohibit fraudulent conduct in the sale and purchase of securities.  See 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5.  Specifically, Rule 10b-5 provides that it is unlawful for any person, directly or indirectly:

    (a)    To employ any device, scheme, or artifice to defraud,

    (b)    To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements

made, in the light of the circumstances under which they were made, not misleading, or

(c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  In cases involving publicly traded securities, a Section 10b cause of action is broken down into six elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiff relied; (5) resulting in economic loss; and (6) loss causation.  See Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

Importantly, each of these six elements is subject to "special pleading standards adopted by Congress in the [Reform Act]."[7]  In re Navarre Corp. Securities Litig., 299 F.3d 735, 741 (8th Cir. 2002).  "These pleading standards are unique to securities and were adopted in an attempt to curb abuses of securities fraud litigation."  Id.  Specifically, to state a claim under Section 10b of

---

[7]     The Reform Act states, in relevant part:

> (1) Misleading statements and omissions. In any private action arising under this title [15 U.S.C. §§ 78a et seq.] in which the plaintiff alleges that the defendant-
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> **the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.**
>
> (2) Required state of mind. In any private action arising under this title [15 U.S.C. §§ 78a et seq.] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title [15 U.S.C. §§ 78a et seq.], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b) (emphasis added).

the Exchange Act, plaintiffs must satisfy not only Rule 9(b) specificity, but also the heightened pleading standards set forth in the Reform Act.  The Reform Act, like Rule 9(b), requires that plaintiffs identify the misleading statements or omissions made by *each* defendant and explain why *each* statement or omission was misleading.  See 15 U.S.C. § 78u-4(b)(1); In re Royal Ahold, 351 F. Supp. 2d 334, 368-69.  So called "group pleading" – a presumption that "statements in company generated documents represent the collective work of those individuals directly involved in the company's daily management" – is inconsistent with the particularity requirements of Rule 9(b) and the Reform Act.  See In re Royal Ahold, 351 F. Supp. 2d at 370; see also In re Cable & Wireless, PLC, Sec. Litig., 321 F. Supp. 2d 749, 773 (E.D. Va. 2004); Glaser v. Enzo Biochem., Inc., 303 F. Supp. 2d 724, 734 (E.D. Va. 2003).  In other words, plaintiffs may not "presume" that a particular defendant is responsible for making a statement.

The Reform Act, like Rule 9(b), also requires specific pleading of facts showing that each defendant acted with scienter.  In particular, the Reform Act requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  Congress enacted this more stringent pleading standard "to curtail the filing of meritless lawsuits" and to create a uniform pleading standard among the circuits.  See H.R. Conf. Rep. No. 104-369, at *41 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 740; Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 344 (4th Cir. 2003).

Given Rule 10b-5's strict pleading requirements, the factual allegations set forth in Plaintiffs' Amended Complaint fall far short of establishing a cause of action under the Exchange Act.  The Amended Complaint alleges that, to maximize the Bank's profits, the Bank failed to fully disclose facts explaining the alleged conflicts of interest involved with the conversion of units of common trust funds to shares of Nations Funds mutual funds.  See *Siepel* Amended Complaint, ¶9(b).  Specifically, according to Plaintiffs, the Bank did not disclose that it allegedly did not consider any non-proprietary mutual funds for the Conversions; did not disclose its financial interests in selling its funds; did not disclose that the Conversions would

allegedly result in an increase in expenses to the Plaintiffs; did not disclose that it allegedly did not negotiate the fees with Nations Funds; did not disclose that the Bank's proprietary funds were the only investment for the Conversions; and did not disclose that many of the Nations Funds were new or relatively new.  See id. at ¶ 9(h)(i)-(vi).

However, even assuming *arguendo* that absolutely all of these facts are true (which they are not), Plaintiffs' allegations fall far short of establishing a cause of action under Section 10b. Indeed, what is most telling about Plaintiffs' Amended Complaint is not what is alleged, but what is omitted:

- First, Plaintiffs fail to plead that their Section 10b claim complies with the applicable statute of limitations.  To the contrary, Plaintiffs' Section 10b claim is time-barred;

- Second, Plaintiffs fail to allege that they participated in the decision to purchase Nations Funds, in other words that they were parties to the transactions about which they now complain.  If they were not parties to the transaction Plaintiffs cannot assert securities fraud claims because they cannot have been induced into buying or selling the securities;

- Third, but for broad legal conclusions, Plaintiffs fail to allege that the so-called omissions were material, an essential element of any Section 10b claim;

- Fourth, even if the so-called omission were material, Plaintiffs fail to adequately allege that any party other than the Bank had a duty to disclose the omitted information.  Without such a duty all of the other Defendants cannot be held liable under Section 10b;

- Fifth, Plaintiffs' factual allegations are completely devoid of anything remotely establishing scienter on behalf of any of the Defendants.  The Section 10b claim should be dismissed on this basis alone; and

- Sixth, Plaintiffs' factual allegations are also completely devoid of anything remotely establishing loss causation suffered as a result of the alleged omissions. Once again, the Section 10b claim should be dismissed on this basis alone.

Therefore, despite Plaintiffs' attempts at overwhelming Defendants with repetitive and conclusory allegations to essentially "see what sticks," Plaintiffs do not plead a Section 10b claim adequately, and Count II should be dismissed as a matter of law.  As noted by the Eighth Circuit, the special and stringent pleading standards for Section 10b claims were adopted by Congress "in an attempt to curb abuses of securities fraud litigation."  In re Navarre, 299 F.3d at 741.  This is precisely what Plaintiffs are trying to perpetrate here.

### 3.      Plaintiffs' Section 10b claim should be dismissed because they did not participate in the decision to purchase Nations Funds.

With the exception of Cohen who controlled his investments, the other Plaintiffs are beneficiaries of a trust or estate, and as such, they do not and cannot plead any authority over investment decisions.  Because they do not plead that they had authority to purchase the securities investments, the Section 10b claim must be dismissed.  Only a person who is defrauded "in connection with" a purchase or sale of securities can bring a Section 10b claim. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 737-38 (1975).  Section 10b ensures that parties to securities transactions have access to full and accurate information when making investment decisions.  See O'Brien v. Continental Ill. Nat'l Bank and Trust Co. of Chicago, 593 F.2d 54, 60 (7th Cir. 1979).  Persons who are not parties to the transaction cannot assert securities fraud claims because they cannot have been induced into buying or selling the securities.  See id.; see also Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co., Inc., 800 F.2d 177, 181 (7th Cir. 1986) (affirming district court's dismissal of Section 10b claim because plaintiffs had no authority to make investment decisions). Accordingly, Plaintiffs' Section 10b claim fails as a matter of law because they have not pled that they controlled the investments of their estates or trusts.

### 4.      Plaintiffs' Section 10b claim should be dismissed because Plaintiffs fail to plead a material omission.

#### a.      Plaintiffs have not pled materiality.

Plaintiffs' Amended Complaint draws the legal conclusion that each of the allegedly omitted facts were material facts that Defendants should have disclosed.  See Siepel Amended Complaint, ¶ 44.  However, Plaintiffs' materiality explanation, an essential element of any Section 10b claim, ends with that legal conclusion, which the Court may ignore.  Plaintiffs fail to specifically explain which facts were material, why they were material and how the knowledge of these facts would have changed the result of the investments or conversions.  See K-Tel International, Inc. Securities Litig., 300 F.3d 881, 897 (8th Cir. 2002) ("A fact is material if it is

substantially likely 'that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.") (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)).  Without such an explanation, Plaintiffs fail to specifically plead the very first element of a Section 10b claim.  As such, Plaintiffs fail to state a Section 10b claim as a matter of law, and their Amended Complaint should be dismissed.

### b.    *Plaintiffs have not pled a duty to disclose.*

Moreover, even if Plaintiffs had adequately alleged materiality (which they did not), Plaintiffs' Section 10b claim against each Defendant, other than the Bank, fails as a matter of law because Plaintiffs fail to adequately allege that the other Defendants had a duty to disclose the alleged omissions.  As explained by the Eighth Circuit in K-Tel International, Inc. Securities Litig., "[m]ateriality alone is not sufficient to place a company under a duty of disclosure.'  In fact, '[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5."  Id. at 898 (citing In re Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997) and Basic Inc., 485 U.S. at 239, n. 17.)).  Thus, unless the omission of facts makes statements that are made materially misleading, or unless disclosure is required by a regulation or statute, the failure to speak gives rise to no claim.  See id. at 238; Oran v. Stafford, 226 F.3d 275, 285-86 (3d Cir. 2000).

In this case, Plaintiffs attempt to skirt Rule 10b-5's pleading requirements by imputing the Bank's fiduciary duty upon the other Defendants.  See Siepel Amended Complaint, ¶ 3. However, Plaintiffs provide no factual or even legal basis for extending the fiduciary duty. Rather, they simply rely on overbroad group pleadings and hope to get past this stage.  Yet, as explained above, such "group pleading" is insufficient to satisfy the particularity requirements of Rule 9(b) and/or the Reform Act.  There can be no presumption that a person who apparently maintained his silence in fact was responsible for making a false statement.  Indeed, the Supreme Court rejected the notion of aiding and abetting liability under Section 10b, precisely what Plaintiffs are trying to advance here.  Central Bank of Denver v. First Interstate Bank of Denver,

511 U .S.164, 177 (1994); see also Gariety v. Grant Thornton, LLP, 368 F.3d 356, 369 (4th Cir. 2004).  Thus, absent particular facts tying a defendant to a particular statement, there can be no claim under Section 10b.  See In re Royal Ahold, 351 F. Supp. 2d at 371 (rejecting "non-speaker" aiding and abetting liability under Central Bank and requiring that to state a claim under Section 10(b), defendant must "be alleged to have made a misrepresentation, which he knew or should have known would be communicated to investors").

Therefore, without adequately alleging that each Defendant had an affirmative duty to disclose the alleged omissions, and without adequately defining that duty, the Amended Complaint fails to set forth a Section 10b claim.

### 5.   *Plaintiffs' Section 10b claim must be dismissed for failure to allege scienter.*

The Reform Act requires that a Rule 10b complaint state "with particularity" facts giving rise to a "strong inference" that the defendants acted with the scienter required for the cause of action.  See In re Navarre Corp. Secs. Litig., 299 F.3d at 743.  Scienter generally means the intent to deceive, manipulate, or defraud.  In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 894-95.  In this case Plaintiffs' allegations of scienter (or lack thereof) are defective in at least two respects.  First, Plaintiffs fail to provide an adequate factual basis for a strong inference that **each** Defendant acted with scienter, and improperly suggest that a so-called "group pleading" presumption relieves them of their obligation to plead scienter as to each defendant.  Second, Plaintiffs seek to rely on generic allegations of motive to commit fraud that are inadequate as a matter of law.

### a.   *Plaintiffs fail to set forth a strong inference of scienter as to each Defendant.*

Nothing in the Amended Complaint even attempts to set forth a strong inference of scienter as to each Defendant.  Rather, Plaintiffs' allegations attempt to group all of the Defendants together as one mind engaged in some form of conspiracy to maximize the Bank's profits.  See *Siepel* Amended Complaint, ¶ 9(b).  Such group pleading or conspiracy allegations,

however, do not fulfill the pleading requirements of the Reform Act.  To the contrary, the

Reform Act states that in

> Any private action arising under this chapter in which the plaintiff
> may recover money damages only on proof that the defendant
> acted with a particular state of mind, the complaint shall, with
> respect to each act or omission alleged to violate this chapter, state
> with particularity facts giving rise to a strong inference that the
> defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2).  Thus, the Reform Act (and also Rule 9(b)) plainly requires that

plaintiffs plead a particularized factual basis that *each* defendant is culpable, and precludes

attribution of knowledge or intent from one defendant to another.

Moreover, the so-called "group pleading" presumption does not assist plaintiffs in tying

defendants to allegedly misleading omissions or statements.  See In re Royal Ahold, 351 F.

Supp. 2d at 371.  In other words, "group pleading" is entirely irrelevant to pleading scienter.

Even courts that tolerate group pleading do not accord it any weight in evaluating the sufficiency

of plaintiffs' scienter allegations, and limit its application to the identification of those persons

responsible for having made a particular statement or omission.  See, e.g., D.E. & J Ltd.

Partnership v. Conaway, 284 F. Supp. 2d 719, 742 (E.D. Mich. 2003) ("even assuming *arguendo*

that the group pleading … doctrine survived the passage of the PSLRA, those courts that have

continued to apply the group pleading doctrine have held that scienter must be pled separately as

to *each* defendant") (citing cases).

Once again, Plaintiffs' overbroad and vague pleadings fail to satisfy the narrow and

specific pleading requirements of the Reform Act and Rule 9(b).  Without fulfilling these

requirements, Plaintiffs' Section 10b claim fails as a matter of law.

### b.      *Plaintiffs cannot plead scienter with generic motive allegations.*

Plaintiffs' allegations of scienter also fail as a matter of law because they rely upon

generic allegations, which could be imputed to anyone.  "[S]uch a generalized motive, one which

could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for

purposes of inferring scienter". See Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996). To demonstrate motive, a plaintiff must show "concrete and personal benefit to the individual defendants resulting from the fraud." In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 894; see In re Gander Mt. Co., No. 05-183, 2006 U.S. Dist. LEXIS 1973, at *23 (D. Minn. Jan. 17, 2006).

Plaintiffs must plead that each defendant was motivated to obtain benefits for himself other than those that all business people have the desire and means to achieve. "Motive and opportunity are generally relevant, but particularly important to establishing scienter is a showing of unusual or heightened motive to meet the Reform Act standard." In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 894 (internal citation omitted). Thus, Plaintiffs' assertions that the Bank sought to maximize its profits (see *Siepel* Amended Complaint, ¶ 9(b)), or that the Bank and BAC sought to minimize their operating expenses while maximizing profits (see id. at ¶ 32) are too vague to support the conclusion that a particular Defendant had an intent to deceive.

Indeed, all business people and entities are motivated by profit. Something more is necessary to distinguish the motives of an alleged fraudulent actor from those shared by everyone; otherwise, the requirement of particularized pleading of scienter would be rendered a nullity. See In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d at 894-95; Fidel v. Farley, 392 F.3d 220, 232-33 (6th Cir. 2004) (rejecting scienter allegation based on outside auditor's motive to keep client because auditor "would always be motivated to maintain positive relations with a current client, and there is no indication that its motive to retain Fruit of the Loom as a client was any different than its general motive to retain business"); PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 690 (6th Cir. 2004) (observing that courts "distinguish motives common to corporations and executives generally from motives to commit fraud"); GSC Partners CDO Fund v. Washington, 368 F.3d 228, 238 (3d Cir. 2004) (holding that underwriter defendant's desire to generate fees was too generic to give rise to inference of scienter); In re Royal Ahold, 351 F. Supp. 2d at 369 n.19 ("While motive may be a good indication of scienter, simply alleging a defendant's desire to protect his job and compensation is not sufficient, because these motives may be seen as common to all corporate executives").

6.      *Plaintiffs' Section 10b claim should be dismissed because they fail to adequately plead loss causation.*

Plaintiffs' Section 10b claim should also be dismissed because they fail to adequately allege loss causation.  To state a claim under Section 10b, Plaintiffs have the burden of pleading (and eventually proving) that the acts or omissions of the Defendants caused the losses for which they seek to recover.  See 15 U.S.C. § 78u-4(b)(4).  Such causation is often referred to as "loss causation."  To plead loss causation, Plaintiffs must set forth facts showing a causal connection between the material misrepresentation or omission and the alleged loss.  See Dura Pharmaceuticals, Inc., 544 U.S. at 341-42.

Loss causation, like all other elements of a Section 10b claim, must be pled with specificity.  However, in this case Plaintiffs fail to plead their alleged losses with absolutely any detail.  Instead, Plaintiffs assert that the Defendants' alleged omission of information regarding alleged conflicts of interest involved with the investment in Nations Funds mutual funds resulted in materially higher investment related expenses for Plaintiffs.  See *Siepel* Amended Complaint, ¶ 39.  Plaintiffs provide no further detail as to how the alleged omissions resulted in higher expenses, what those higher expenses were, and the amount of their alleged losses.  Such lack of specificity is inadequate under Section 10b.  See In re Morgan Stanley and Van Kampen Mut. Fund Sec. Litig., No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *10 (S.D.N.Y. April 18, 2006) ("Plaintiffs do not state which funds lost money, and they do not tie these losses to defendants' actions with the specificity required by the securities laws.  This does not constitute the sufficient pleading of a loss.")

Moreover, to adequately allege loss causation the loss must be of a sort that Section 10b was intended to remedy.  Section 10b protects "investors against manipulation of stock prices."  Basic, 485 U.S. at 230.  For example, loss causation is typically found when a stock price is inflated by misrepresentations or omissions.  See In re PEC Solutions, Inc. Sec. Litig., No. 03-CV-331, 2004 WL 1854202, at *11 (E.D. Va. May 25, 2004) ("to establish loss causation for a securities fraud claim, the plaintiff must allege: (1) that he or she purchased a security at a

33

market price that was artificially inflated due to a fraudulent misrepresentation and (2) that the artificial inflation was actually lost due to the alleged fraud." (citation omitted)), aff'd, 418 F.3d 379 (4th Cir. 2005).  However, in this case the Plaintiffs do not complain about the price of the Nations Funds mutual funds, but complain about the lack of disclosure of certain information regarding the Bank's benefits from the investments.  This is not the type of impropriety that Section 10b was designed to prevent.  See In re Morgan Stanley, 2006 WL 1008138, at *9-10.

For example, in Castillo, three investors asserted Section 10b claims against Dean Witter for its alleged failure to disclose an incentive compensation system that promoted the sale of its proprietary funds through its retail outlets.  See Castillo v. Dean Witter Discover & Co., 1998 WL 342050, at *4-5 (S.D.N.Y. June 25, 1998).  The system rewarded brokers for selling proprietary products with commissions higher than those paid on foreign funds.  In that case, it was undisputed that the total amount of fees was disclosed, but the plaintiffs complained about how those fees were allocated.  See id. at *3.  The court held that plaintiffs could not allege loss causation since "the allocation of fees would not affect the damages for the losses claimed by plaintiffs.  It is the total fees charged that would affect the asset value of a mutual fund and the decision to invest.  The prospectuses disclosed these amounts."  Id. at *5.  In addition, the court held that the plaintiffs did not plead proximate causation, because "the complaint contains no allegations that any causal relationship exists between the compensation of the brokers (account executives) and the performance of any fund."  Id.

Similarly, in this case it is undisputed that the fees were disclosed, but that Plaintiffs complain about the allocation of those fees.  See Siepel Amended Complaint, ¶ 41 ("[T]he Nations Funds prospectuses and other of the Conversion Disclosure Documents issued during the Class Period in connection with the Conversions did disclose estimated or actual fees and expenses that would be charged to the Nations Funds, including fees and expenses paid by NFT and the Nations Funds to the Bank Subsidiaries…these prospectuses uniformly concealed that, in order to reduce the amount of 'credits' or 'fee waivers' that the Bank would apply to certain fiduciary accounts, re-allocation of various expenses were made to benefit the Bank and Bank

Subsidiaries[.]").  However, as in <u>Castillo</u>, such complaints do not set forth a causal relationship between the fees and an alleged loss.  Rather, the allocation of fees had no effect on the price of the NFT Funds, and is therefore immaterial to a Section 10b claim.  See <u>In re Morgan Stanley</u>, 2006 WL 1008138, at *9.

As such, Plaintiffs' failure to plead loss causation renders their Section 10(b) claim insufficient as a matter of law, and Count II should be dismissed.

### C.   Plaintiffs' claims under Sections 11 and 12 of the Securities Act (Count III) should be dismissed for failing to state a claim as a matter of law.

Count III of Plaintiffs' Amended Complaint is brought pursuant to Sections 11 and 12 of the Securities Act of 1933.  See *Siepel* Amended Complaint ¶¶ 92-94.  Plaintiffs' claims in Count III should be dismissed on multiple grounds.  First, Plaintiffs lack standing to assert these claims because they are not purchasers.  Second, Plaintiffs' claims are time-barred.  Third, even assuming *arguendo* that these claims are otherwise viable, which they are not, Plaintiffs have failed to sufficiently allege that they have been harmed in such a manner compensable under the Securities Act.

### 1.   Plaintiffs lack standing to pursue Section 11 and 12 claims because they are not purchasers of the securities in question.

To advance claims under these provisions of the Securities Act, plaintiffs must plead that the registration statement (Section 11) and the prospectus (Section 12) pursuant to which they purchased the securities at issue contained an "untrue statement of material fact" or "omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. §77k(a); 15 U.S.C. §77*l*(a)(2).  Here, Plaintiffs' claims under Section 11 and Section 12 should be dismissed because the Plaintiffs are not purchasers.  Plaintiffs claim only a beneficial interest in the securities in question and have no standing to pursue such claims under Section 11.  <u>Barnes v. Osofsky</u>, 373 F.2d  269, 273 (2d. Cir. 1967).  Additionally, to have standing under Section 12, a plaintiff must be able to tender the securities and Plaintiffs have failed to allege the requisite authority to do so.  <u>Monetary Mgmt. Group, Inc. v. Kidder, Peabody & Co.</u>, 604 F. Supp. 764, 768 (E.D. Mo. 1985).  In support of this argument, the Bank

Defendants incorporate Section II, A of Columbia Funds Series Trust Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint as if set forth in full.

### 2.    Plaintiffs' claims under Sections 11 and 12(a)(2) are time-barred.

#### a.    *Plaintiffs have failed to plead compliance with Section 13.*

The claims encompassed in Count III should be dismissed because Plaintiffs have failed to plead compliance with the applicable statute of limitations.  Claims under Sections 11 and 12(a)(2) are subject to the statute of limitations set forth in Section 13 of the Securities Act of 1933 which provides that such claims must be brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence…."  15 U.S.C. §77m.  Section 13 also provides that "in no event" shall such claims be brought more than three years after the relevant offering or sale of securities.  See id.[8]

Section 13 contains an affirmative pleading requirement that plaintiffs must plead specific compliance with this provision.  See Davidson v. Wilson, 973 F.2d 1391, 1402 and n.8 (8th Cir. 1992).  Compliance with Section 13 is "substantive" and essential.  See id. (citations omitted).  Plaintiffs must "plead and prove facts that show that [the] action was filed within the time periods specified by statute."  Caviness v. Derand Resources Corp., 983 F.2d 1295, 1302 (4th Cir. 1993).  For example, Plaintiffs must plead "the actual date of purchase of [the] investments, the time and circumstances of the discovery of the alleged fraudulent statements, and the reasons why discovery was not made earlier."  Davidson, 973 F.2d at 1402 n.8 (affirming dismissal of Section 12 claim where plaintiffs failed to plead compliance with Section 13 with specificity).  The Eighth Circuit also noted that in order to properly allege such a claim, the

---

[8]     The three-year period of limitations is an absolute statute of repose that is not subject to equitable tolling.  15 U.S.C. §77m; see also Maxwell v. LaBrunerie, 731 F. Supp. 358, 361 (W.D. Mo. 1989).  Additionally, the extended statute of limitations in the Sarbanes-Oxley Act of 2002 does not apply to Section 11 or Section 12 claims.  See Cohen v. Northwestern Growth Corp., 385 F. Supp. 2d 935 (D. S.D. 2005); In re Worldcom, Inc. Sec. Litig., 308 F. Supp. 2d 214, 225-28 (S.D.N.Y. 2004).

complaint must also include the "diligent efforts which plaintiff undertook in making or seeking such discovery." Id. (citing Hill v. Derr, 521 F. Supp. 1370, 1389 (D.Del. 1981)).

The Amended Complaint fails to comply with Section 13 in any respect. Nowhere in the Amended Complaint's 115 paragraphs do Plaintiffs allege the dates that their respective trusts purchased the investments or the dates or circumstances under which they discovered the alleged concealment or fraud concerning the fees charged for such investments. Notably, Plaintiffs have neither attempted to explain why the discovery was not made earlier nor to describe the diligent efforts they undertook to discover such facts. On this basis alone, Count III should be dismissed.

### b.     *Plaintiffs' Sections 11 and 12 claims are time-barred.*

Even giving all credence to Plaintiffs' ambiguous allegations, Plaintiffs' claims are barred by the one year and three year applicable statute of limitations as outlined in Section 13. The only dates contained in the 115-paragraph Amended Complaint relating specifically to the challenged investments in proprietary mutual funds and the corresponding disclosure of the "Conversion" are alleged as occurring in and around 1998, 1999 or 2000. See *Siepel* Amended Complaint, ¶¶ 32, 36, 37, 45. As such, Plaintiffs' claims under Sections 11 and 12 that the registration statement or prospectus issued in connection with the "2000 Conversion" must have been brought "within *one year* after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." See 15 U.S.C. §77m (emphasis added). Plaintiffs' claims must have been brought within *three years* after the sale of the proprietary mutual funds as required by Section 13 which is not subject to equitable tolling. See infra n. 12.

Applying these principles to the little information contained on the face of the Amended Complaint, Plaintiffs' claims are clearly time-barred. Plaintiffs herein had inquiry notice of the existence of their potential claims because, as alleged in the Amended Complaint, Plaintiffs admit they received various disclosure forms and the prospectus which purportedly contained the material misrepresentations or omissions regarding the "2000 Conversion" in and around 1999

and 2000.  See *Siepel* Amended Complaint, ¶¶ 36, 37, 45.  The Amended Complaint was filed

*six* years later.  Courts have held that an investor's Section 11 and 12 claims are barred by

Section 13 where the investor was put on constructive notice of the pertinent matters as a result

of receiving a prospectus (regardless of whether the investor read the prospectus) and receiving

and signing disclosures forms.  See Dodds v. Cigna Sec. Inc., 12 F.3d 346, 350-52 (2d Cir.

1993).  Thus, Plaintiffs here should be deemed to have discovered any alleged fraud for purposes

of triggering the statute of limitations when the disclosures and prospectuses were

"disseminated" in and around 1999 and 2000.

Moreover, as outlined herein, the *Williams* Plaintiffs initially brought suit in Florida state

court on December 31, 2002 based on allegations regarding investments in Nations Funds.  Thus,

under Section 13, even giving the *Williams* Plaintiffs the benefit of the doubt that the date of

discovery corresponded to the date of their initial filing, they had only one year, until December

31, 2003, to bring their securities claims for any alleged misrepresentation or omission in the

registration statement or the prospectus at issue.  The claims are unquestionably time-barred.

### 3. Plaintiffs have not and cannot properly allege harm compensable under the Securities Act.

Plaintiffs' claims as alleged in Count III for violations of Sections 11 and 12(a)(2) are

subject to dismissal because they fail to allege any facts demonstrating they have suffered harm

within the meaning of either Section.  Indeed, Plaintiffs' vague and conclusory assertion in

paragraph 94 of the Amended Complaint speaks volumes:

> the Defendants caused Nations Funds shares to be issued and sold
> to the Siepel Plaintiffs' fiduciary account and those and those of
> the members of the Federal Securities Law Sub-Class, all of which
> was in violation of §§ 11 and 12 of the Securities Act, all of which
> *caused them damages in an amount which cannot presently be
> determined*"

(emphasis added).  Plaintiffs have not and cannot allege any well-pled facts that they are entitled

to any recoverable damages under the Securities Act.

Under Section 11, there is only *one* measure of damages:

> [T]he difference between the amount paid for the security . . . and
> 1) the value thereof as of the time such suit was brought, or 2) the
> price at which such security shall have been disposed of in the
> market before suit, or 3) the price at which such security shall have
> been disposed of after suit but before judgment if such damages
> shall be less than the damages representing the difference between
> the amount paid for the security . . . and the value thereof as of the
> time such suit was brought.

15 U.S.C. §77k(e).  Further, as stated above, "any difference between the price paid and the later

lower value or price – whether at sale or at the time of suit – must be attributable to the

misrepresentation and not depreciation resulting from some other cause, such as a general

downtrend in the market."  In re Mutual Funds Investment Litig., 384 F. Supp.2d 845, 866 (D.

Md. 2005).

Because the existence of recoverable damages is an element of a Section 11 claim, "a

plaintiff must plead facts demonstrating that he suffered the particular type of injury

contemplated by the statute."  Id. citing Metz v. United Counties Bancorp, 61 F. Supp. 2d 364,

378 (D.N.J. 1999).  It is simply not enough to "merely plead injuries, the plaintiff must plead a

certain kind of injury," namely that the share price on the date of the complaint (or pre-complaint

sale) was *lower* than on the date of purchase.  See id. at 377-78.  Here, Plaintiffs' Amended

Complaint is devoid of any facts or allegations relating to the value of each of the Plaintiffs'

shares of proprietary mutual funds at any time.

Plaintiffs' Section 12(a)(2) claims should be dismissed for the same reasons.  "Although

the statutory language of Section 12(a)(2) is different, the effect is the same."  In re Mutual

Funds Investment Litig., 384 F. Supp.2d at 866.  Section 12(a)(2) provides for *two* alternative

remedies: (1) rescission upon plaintiffs' prompt tender of shares in exchange for the original

purchase price, or (2) rescissionary damages if plaintiff has sold his shares.  Id. citing 15 U.S.C.

§77l(a)(2); Randall v. Loftsgaarden, 478 U.S. 647, 656 (1986).  As is true under Section 11, "if a

plaintiff sells the securities at issue for an amount greater than the plaintiff's purchase price, then

the plaintiff has suffered no [recoverable] damages."  PPM Am., Inc. v. Marriott Corp., 853 F.

Supp. 860, 876 (D.Md. 1994).

Under both Sections 11 and 12, plaintiffs may not recover damages for any loss in value of their investment "resulting from" something other than the challenged registration statement or prospectus.  15 U.S.C. §§ 77k(e), 77*l*(b).  Because Plaintiffs have not pled any factual basis for damages under either Section 11 or Section 12(a)(2), or for rescission under Section 12(a)(2), their claims should be dismissed.

**D.    Plaintiffs' claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act in Counts II and III fail to state a claim as a matter of law and should be dismissed.**

*1.    Plaintiffs have failed to allege a primary violation of the Securities Laws.*

Included in Counts II and III are allegations of controlling person liability.  Section 15 of the Securities Act and Section 20(a) of the Exchange Act do not provide an independent basis for liability.  Rather, these provisions impose liability on those who "controlled" any person liable for a primary violation of the relevant Acts.  See 15 U.S.C. §77(o), 78t(a).  Because Plaintiffs have failed to state a claim against any Defendant for a primary violation of the federal securities laws, their claims for control person liability necessarily fail.  See, e.g., Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997) (where plaintiffs presented no actionable claim for violation of Section 11 or 12, or Section 10(b), the claims for controlling person liability were properly dismissed); In re Mutual Funds Investment Litig., 384 F. Supp.2d 845, 867 n. 21 (finding plaintiffs' claims under Section 15 failed where no primary violation of Section 11 or 12 was committed); In re Rural Cellular Corp., No. Civ. 02-4893 (PAM/RLE), 2004 WL 1278725, at *5 (D. Minn. June 6, 2004) (dismissing Section 20 claim for control person liability because such a claim is derivative of a Rule 10(b) claim and plaintiffs failed to state such a claim under Rule 10(b)).

*2.    Plaintiffs have failed to adequately allege "control."*

Not only do Plaintiffs fail to allege a primary violation by any "controlled person," but Plaintiffs' bald allegations of "control" are also deficient.  For a plaintiff to sufficiently plead

these claims, "it is necessary that, at the least, defendants be informed whether they are alleged to be primary or secondary violators, as to which primary violator they are allegedly controlling persons, and whether they are controlling persons as a result of status or affirmative acts." Hagert v. Glickman, Lurie, Eiger & Co., 520 F. Supp. 1028, 1035 (D. Minn. 1981) (dismissing claims where general allegations relating to control person liability were insufficient). The Eighth Circuit has adopted a two-prong test in which plaintiffs must establish (1) that the defendant "actually participated in (*i.e., exercised* control over) the operations of the corporation in general" and (2) that the defendant "possessed the power to control the specific transaction or activity upon which the primary violation is predicated, but he need not prove that this later power was exercised." Metge v. Baehler, 762 F.2d 621, 631 (8th Cir. 1985), cert. denied, 474 U.S. 1072 (1986).

Plaintiffs' Amended Complaint fails to sufficiently allege "control" for purposes of liability under either Section 15 or Section 20. Plaintiffs rely only upon sweeping legal conclusions and unwarranted inferences with respect to the general allegations that the Bank and/or BAC were "control persons" within the meaning of Section 15 or Section 20. See *Siepel* Amended Complaint, ¶¶ 2, 21(c), 27, 56, 90, 93. No facts are presented which illustrate that the Bank or BAC actually participated in or exercised control over the operations of any of the other Defendants or even possessed the power to control the other Defendants. Plaintiffs simply have failed to adequately allege "control" and these claims should be dismissed as well.

### E. SLUSA mandates dismissal of Plaintiffs' state law class claims (Counts III-VI).

In 1995, after determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to impose procedural and substantive restrictions on private securities suits in federal court, including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations. Spencer v. Wachovia Bank, N.A., No. 05-

81016, slip. op. at 3 (S.D. Fla. May 10, 2006) (Exhibit 1).[9]  Seeking to avoid PSLRA's restrictions, securities class action plaintiffs began to frame their allegations of securities fraud as state law causes of action and pursue relief in state court.  Congress enacted the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") to close this loophole and to ensure that national, federal standards would be applied to challenges involving publicly traded securities. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S.Ct. 1503, 1511 (2006); Dudek v. Prudential Sec., Inc., 295 F.3d 875, 877 (8th Cir. 2002); In re Lutheran Broth. Variable Ins. Prods. Co. Sales Practices Litig., 105 F. Supp.2d 1037, 1039 (D. Minn. 2000); see also SLUSA, Pub. L. No. 105-353, § 2, 112 Stat. 3227, 3227 (Congress enacted SLUSA "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA].")

"SLUSA provides for the immediate dismissal of certain putative class actions based on state law alleging an untrue statement or omission of a material fact made in connection with the purchase or sale of a covered security." Vohs v. Miller, 323 F. Supp.2d 965, 973 (D. Minn. 2004) (citing Dudek, 295 F.3d at 877 n.1).  Preemption and dismissal under SLUSA is appropriate for any claim that meets four criteria: (1) the action is a "covered class action" under SLUSA, (2) the action purports to be based on state law, (3) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) the defendant's alleged misrepresentation or omission of a material fact was made "in connection with" the purchase or sale of a "covered security." Sofonia v. Principal Life Ins. Co., 378 F. Supp.2d 1124, 1128 (S.D. Iowa 2005) (citing Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002)); 15 U.S.C. §§ 78bb(f)(1)-(2); Spencer, slip op. at 4.

---

9       SLUSA prevents plaintiffs from bringing state law claims as class claims.  It does not foreclose plaintiffs from bringing individual state law claims.  Spencer v. Wachovia Bank, N.A., No. 05-81016-CIV-RYSKAMP/VITUNAC, slip op. at 16 (S.D. Fla. May 10, 2006) (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,  126 S.Ct. 1503, 1514 (2006)) (Exhibit 1).

The Court must focus on the substance of Plaintiffs' allegations and be wary of efforts to defeat application of SLUSA through artful pleading.  See Dudek, 295 F.3d at 879.  The presence or absence of a key word or phrase is not determinative of SLUSA's applicability, but rather whether a reasonable reading of the complaint reveals allegations generally within SLUSA's purview.  See Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304 (3d Cir. 2005).  When the "gravamen" or "essence" of the complaint involves an untrue statement or substantive omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal.  See Dudek, 295 F.3d at 879; see also SEC v. Zandford, 535 U.S. 813, 819 (2002).  In this case, Plaintiffs' efforts to circumvent SLUSA through artful pleading are obvious.  Their state law claims are preempted and should be dismissed.  Spencer, slip op. at 1-13.

### 1.    Plaintiffs allege a covered class action.

Under SLUSA, a "covered class action" is a lawsuit in which "[d]amages are sought on behalf of a class of more than 50 persons or prospective class members . . . ."  15 U.S.C. §§ 78bb(f)(5)(B)(i)(I); 77p(f)(2)(A)(i)(I).  Here, Plaintiffs purport to bring various state law claims on behalf of a nationwide class and state subclasses of "many thousands" of beneficiaries who had trust assets invested in Nations Funds by the Bank acting as trustee.[10]  See *Siepel* Amended Complaint at ¶¶ 61-66.  Plaintiffs' lawsuit meets SLUSA's definition of a covered class action.

### 2.    Plaintiffs' claims are founded on state law.

Plaintiffs' claims are also clearly founded on state law, as they assert state law claims for breach of fiduciary duty and unjust enrichment.  See id. at ¶¶ 95-115.  See also Spencer, slip op. at 4-5 (claims for breach of fiduciary duty and unjust enrichment arising out of bank/trustee's investment of trust assets in affiliated mutual funds involved state law claims).

---

[10]    Defendants do not concede that the predominance requirement for class certification, or any other requirement for class certification under Fed. R. Civ. P. 23, can be satisfied here.

### 3. The core allegations in Plaintiffs' Amended Complaint are that Defendants misrepresented or omitted material facts.

On its face, Plaintiffs' Amended Complaint alleges that Defendants misrepresented and omitted key material facts. Plaintiffs' Amended Complaint centers on the singular theme that Defendants invested trust assets and other financial assets in Nations Funds through certain misrepresentations and omissions about the value of those investments, purported conflicts of interest and the related fees and expenses. Plaintiffs' numerous allegations of misrepresentation and omission include, but are not limited to:

> This Complaint alleges that the Bank and BAC, by and through NFT and the Bank Subsidiaries which operated the Defendants' proprietary mutual funds business, breached the fiduciary duties owed to their Clients by *failing to disclose, inter alia*, material conflicts of interest at the time disclosures were required to be made, as well as *by failing to disclose* the incremental increases in expenses the Clients sustained when the Bank and BAC implemented a corporate decision on a nationwide basis to funnel assets in the Bank's fiduciary accounts to the Bank's proprietary mutual funds, the Nations Funds . . . . In connection with sales of the shares in these proprietary mutual funds to the accounts of Plaintiffs and all members of the Class as defined below, the Bank, NFT and the Bank Subsidiaries *failed to exercise good faith and fully disclose* all material facts and *failed to fully disclose* all material facts to them and/or exercise reasonable care to avoid misleading them as more fully set forth below.

Siepel Amended Complaint, ¶ 3 (emphasis added); see also id., ¶9(d) (alleging further non-disclosures).

> "Private Bank" employees, acting under pre determined Bank policy, provide investment planning advice under the guise that this advice is customized when in fact it is not. Instead, the Bank delivered a platform to peddle the Defendants' proprietary mutual funds and other financial "products". The Defendants' scheme was *never disclosed* to the Bank's Clients and included, but was not limited to:
>
> (i) the Bank's *failure to disclose* that it did not consider any non-proprietary mutual funds as appropriate for investments in fiduciary accounts;
>
> (ii) the Bank's *failure to disclose* adequately that it had a direct financial interest in selling its own proprietary mutual fund products to its fiduciary accounts;
>
> (iii) the Bank's *failure to disclose* that the Conversions would result in a material increase in the expenses of investing the assets of affected fiduciary accounts at the expense of Plaintiffs and the members of the Class;
>
> (iv) the Bank's *failure to disclose* to Plaintiffs, members of the Class and others to whom disclosure was required that it had not negotiated in any

meaningful way the fees and expenses that were being charged to the Nations Funds by the Bank's affiliates (including the Bank Subsidiaries) and that the Bank did not negotiate with non-affiliated firms that could provide the same investment advice or other services at lesser cost;

Id. at ¶ 9(h) (emphasis added).

> ***None of these material facts were expressly disclosed*** to Plaintiffs, members of the Class or to others to whom the Bank was obligated to make disclosure, in any of the letters and other documents provided to them at the time of the Conversions at the time the Bank was soliciting its designation as corporate fiduciary or during the time the Bank served as fiduciary of the affected accounts.

Id. at ¶ 9(i) (emphasis added).

> Although Plaintiff Reinke signed a Receipt and Waiver of Notice of Filing Declaration of Completion of Probate on March 6, 2004, she was induced to do so by the filing of a ***false and misleading*** Declaration of Completion of Probate which, *inter alia*, ***concealed from*** Plaintiff Reinke and the Superior Court that the Bank, as Personal Representative, had engaged in self-dealing; that it had purchased shares of the Nations Funds for the Estate's account knowing that alternative investments could have been purchased for the Estate with higher investment yields with comparable safety; that the Nations Funds prospectuses distributed to Plaintiff Reinke in connection with the Estate's accounts ***were false and misleading in material respects*** as set forth below and ***did not adequately disclose*** to her "the true direct and indirect expenses charged by Nations Funds" . . . .  Thus, Plaintiff Reinke's acknowledged receipt of "all to which she is entitled from the Personal Representative" ***was induced fraudulently***.

Id. at ¶ 26(a) (emphasis added).

> Although not every member of the Class affected by the Conversions received documents seeking authorizations for the Conversions as well as Nations Funds prospectuses (that were made a part of registration statements filed by NFT or one of the Bank Subsidiaries covering the various offerings and sales of Nations Funds shares), in response to such coercion and ***the deceptive and unclear information*** provided by the Bank in the disclosure/authorization forms and accompanying prospectuses that were among the Conversion Disclosure Documents, co-trustees and beneficiaries of fiduciary accounts who received such forms, signed the enclosed forms, thereby providing to the Bank their ***uninformed and fraudulently induced*** "consent" to the Conversions.

Id. at ¶ 38 (emphasis added).

> Enclosed with the Bank's form letters sent to fiduciary accounts beneficiaries and/or co-fiduciaries were various Nations Funds prospectuses and other Conversion Disclosure Documents which were drafted ***so as to conceal***, *inter alia*, the motives of the Bank and BAC for the Conversions into Nations Funds, the conflicts of interest between the Bank and members of the Class, the benefits of the Conversions to them and the Bank Subsidiaries and the materially increased expenses that would be incurred by the fiduciary accounts as a result of the Conversions.

Id. at ¶ 40 (emphasis added).

Although the Nations Funds prospectuses and other of the Conversion Disclosure Documents issued during the Class Period in connection with the Conversions did disclose estimated or actual fees and expenses that would be charged to the Nations Funds, including fees and expenses paid by NFT and the Nations Funds to the Bank Subsidiaries, these prospectuses ***uniformly concealed*** that, in order to reduce the amount of "credits" or "fee waivers" that the Bank would apply to certain fiduciary accounts, re-allocations of various expenses were made to benefit the Bank and Bank Subsidiaries and the expense of the fiduciary accounts affected by the Conversions.

Id. at ¶ 41 (emphasis added).

In fact, the Bank and the lawyers who drafted these documents, including lawyers for Defendant NFT, used such language ***to conceal*** the fact that although in many cases there was a credit for certain of the post-Conversion investment advisory fees to be incurred by fiduciary accounts, the credits were insufficient to offset the substantially higher expenses that fiduciary accounts would bear post-Conversion and that the Bank intended to reduce or eliminate the credit as soon as practicable thereafter once consents were obtained and/or the Conversions completed.

Id. at ¶ 46 (emphasis added).

The Nations Funds prospectuses, in disclosing that one or more of the Bank Subsidiaries were responsible for the overall management and supervision of the investment management of each of the Nations Funds ***failed to disclose*** that the fees therefore were excessive and, to the extent sub-advisors were engaged to be responsible for the day-to-day investment decisions of particular Nations Funds, the aggregate investment advisory fees paid were excessive and duplicative.

Id. at ¶ 49(d); see also id. ¶ 49(e) (emphasis added).

Indeed, Class members have sought to obtain such information or other similar information relating to the expenses of investing the assets of fiduciary accounts in the Nations Funds from the Bank and have never received "straight" or any answers to their questions with respect thereto and ***have received misleading or downright deceptive*** information as to the impact of such investments upon them and their fiduciary accounts.

Id. at ¶ 51 (emphasis added).

The disclosure of fees associated with mutual fund investments is an area comprehensively regulated by federal securities laws and thus is precisely the type of action which SLUSA was intended to pre-empt.  See Press v. Quick & Reilly, Inc., 218 F.3d 121, 131-32 (2d Cir. 2000).  In cases like this where plaintiffs have attempted to conceal claims based on the misrepresentation or omission of material facts with state law labels, courts in this Circuit have disregarded these labels and dismissed the claims as preempted by SLUSA.  See, e.g.,

Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 803 (8th Cir. 2003); Dudek, 295 F.3d 875; Sofonia, 378 F. Supp. 2d 1124.

In Spencer, as in this action, the plaintiff alleged that Wachovia, the trustee, by investing trust assets in affiliated mutual funds – Evergreen Funds – without disclosing that such funds were affiliated with Wachovia, and by charging undisclosed advisory and management fees against the trust assets in relation to these funds, engaged in self-dealing in breach of its duty of loyalty to trust beneficiaries. Slip op. at 1-2 (Exhibit 1). In trying to avoid SLUSA preemption, the plaintiff in Spencer argued that her claim was for breach of fiduciary duty and was not predicated on misrepresentations or omissions (id. at 5) – no doubt the same argument Plaintiffs will try to raise here. In rejecting plaintiff's arguments in Spencer, the court noted that the Complaint is "replete with claims of misrepresentation." Id. at 7. The Court went on to quote allegations from the Spencer Complaint that are present in Plaintiffs' Amended Complaint. Cf. quotes from *Siepel* Amended Complaint above with slip op. at 1-2, 8 (Exhibit 1).[11]

Each and every count of Plaintiffs' state law claims incorporates by reference all of the alleged misrepresentations and omissions. See *Siepel* Amended Complaint, ¶¶ 95-115. In other words, as in Spencer, the "gravamen" of the Amended Complaint is one of misrepresentation and omission with respect to investments in a covered security in connection with Plaintiffs' accounts. See Spencer, slip op. at 9.

### 4.    *Plaintiffs' claims are in connection with the purchase of a covered security.*

#### a.    *Plaintiffs' claims involve a covered security.*

There is no dispute given Plaintiffs' securities laws claims that Nations Funds are "covered" securities, which are defined as securities that satisfy the standards of the Securities Act of 1933, Sections 18(b)(1) and (b)(2), including "those securit[ies] issued by an investment

---

[11]    It is no surprise that the allegations of the Spencer and *Siepel* Complaints are similar because Plaintiffs' attorney in Spencer was also co-counsel with Plaintiffs' attorney herein for two years in the *Williams*, *Arnold* and *Kutten* actions, until they withdrew their appearance in those actions in February, 2005.

company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940." <u>See</u> 15 U.S.C. §§ 77p(f)(3), 77r(b); <u>Spencer</u>, slip op. at 5; <u>see also</u> <u>Sofonia</u>, 378 F. Supp. 2d at 1128-1129; <u>In re Lutheran Broth. Variable Ins. Prods. Co. Sales Practices Litig.</u>, 105 F. Supp. 2d at 1040.

### b.     The "in connection with" requirement is met in this case.

The Supreme Court has traditionally given a broad interpretation to the phrase "in connection with" and has held that this language is to be construed "not technically and restrictively, but flexibly to effectuate its remedial purpose," which is "to achieve a high standard of business ethics in the securities industry." <u>Zandford</u>, 535 U.S. at 819; <u>see also</u> <u>Merrill Lynch</u>, 2006 WL 694137, at *7 (citing <u>Super. of Ins. of N.Y. v. Bankers Life & Cas. Co.</u>, 404 U.S. 6 (1971); <u>Zandford</u>, 535 U.S. at 820). In <u>Merrill Lynch</u>, the Supreme Court recently affirmed that the traditional broad interpretation that has been given to this language extends to the "in connection with" phrase as it is used in SLUSA. Specifically, the Supreme Court held that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." <u>See id</u>. at *7. "The requisite showing, in other words, is 'deception "in connection with the purchase or sale of any security," not deception of an identifiable purchaser or seller.'" <u>Id</u>. (citing <u>United States v. O'Hagan</u>, 521 U.S. 642, 651, 658 (1997)). <u>See also</u> <u>Zandford</u>, 535 U.S. at 825 (When the complaint "describes a fraudulent scheme in which the securities transactions and breaches of fiduciary duty <u>coincide</u>[,] . . . [t]hose breaches [are] 'in connection with' securities sales within the meaning of § 10(b).")

Relying on this interpretation, the Court in <u>Spencer v. Wachovia Bank</u> dismissed the state law claims on SLUSA grounds. Precisely as in this case, in <u>Spencer</u>, the plaintiffs, on behalf of a putative class, asserted state law claims for breach of fiduciary duty and unjust enrichment against Wachovia. <u>See</u> <u>Spencer</u>, No. 05-81016, slip op. at 1-2. (Exhibit 1). The <u>Spencer</u> plaintiff alleged that Wachovia, among other things, (1) violated state law by investing trust assets in affiliated funds while acting as trustee, (2)  failed to disclose certain material

information relating to the investment in the affiliated funds, (3) "devised a scheme to maximize its profits by forcing the irrevocable trusts to invest in the Evergreen Funds whether or not such investments were in the best interests of the trusts", (4) improperly profited by charging both trustee and mutual fund fees.  See id.  The allegations in Spencer track those in this case.

After finding that the other requirements of SLUSA were clearly met, the court in Spencer addressed the "in connection with" requirement for SLUSA preemption.  The court reasoned that the plaintiff was essentially alleging that Wachovia misled trust beneficiaries about its investment in affiliated funds and the expenses associated with those transactions.  See id. at 12-13.  Because Wachovia's conduct was premised on, and furthered by, the purchase of the affiliated mutual funds, the court held that the plaintiff's state law claims for breach of fiduciary duty and unjust enrichment were "in connection with" the purchase of the shares of the affiliated funds.  See id. at 13.  The court in Spencer, therefore, held that SLUSA preempted plaintiff's state law class claims.

Spencer is squarely on point with this case.  Plaintiffs here allege what amounts to a scheme to fraudulently induce beneficiaries of trust accounts, estates, and IRAs to consent to the Bank using the assets of those investments to invest in Nations Funds by misleading them about the value of those investments and the related fees and expenses.  The alleged breach of fiduciary duty and unjust enrichment are premised on, and were allegedly furthered by, the purchase of shares of affiliated mutual funds for the trusts and estates.[12]  As such, Plaintiffs' state law claims are "in connection with" a securities transaction and are preempted by SLUSA.

---

[12]     The damages Plaintiffs seek are also relevant in connecting the allegations to the securities transactions.  See Rowinski, 398 F.3d at 301.  Plaintiffs allege that they are entitled to any investment losses resulting from the investment of trust assets into Nations Funds, as well as the reimbursement of management and advisory fees charged to the trust assets in relation to those investments.  These damages "connect" the allegations of misrepresentations about the Nations Funds and the fees associated with those funds to transactions in securities.  Cf. Behlen v. Merrill Lynch, 311 F.3d 1087, 1094 (11th Cir. 2002) (allegations of "excess fees and commissions" incurred in association with securities transactions are a relevant factor in determining whether claims are "connected" to securities transactions), cert. denied, 539 U.S. 927 (2003)).

Precisely as the Court in <u>Spencer</u> ruled just ten days ago, all requirements for SLUSA preemption have been met here and, accordingly, the state law class claims in the Amended Complaint must be dismissed.

> **F.      Plaintiffs' unjust enrichment and breach of fiduciary duty claims (Counts III-VI) should be dismissed because the challenged conduct is proper under state law.**

Plaintiffs' claims for breach of fiduciary duty and unjust enrichment are predicated on the faulty contention that the investment of assets in affiliated mutual funds and collection of both the trustee fee and mutual fund fees was improper.  Plaintiffs have failed to state a claim upon which relief can be granted because the alleged improper conduct that forms the basis for their claims— investment in Nations Funds and collection of fees —was expressly authorized by state law.

The laws of virtually every state, including the states governing Plaintiffs' trusts, estate and IRA here, permit a trustee like the Bank to invest trust assets in affiliated mutual funds and to collect trustee and mutual fund fees.  <u>See</u> Fla. Stat. Ann. § 737.402 (Florida); Iowa Code § 633.123A(1) (Iowa); Mo. Stat. Ann. § 362.550 (11) (Missouri); N.M. Stat. Ann. § 46-2A-1 (New Mexico); Ann. Rev. Code Wash. § 11.100.035(3) (Washington); <u>see also</u> 1996 OCC ltr. LEXIS 33 (OCC Interpretive Letter No. 722 (May 1996)) (the Office of the Comptroller of the Currency, which regulates the Bank, has opined that a national bank may invest trust assets in proprietary mutual funds and receive trustee fees notwithstanding any fees the mutual fund servicer may charge); Restatement (Third) of Trusts, Prudent Investor Rule § 227, cmt. m, at 51; <u>see</u> <u>Hughes v. LaSalle Bank, N.A.</u>, 419 F. Supp.2d 605 (S.D.N.Y. 2006) (in dismissing the same claims brought by the same Plaintiffs' counsel, the Court noted that the applicable state law "expressly permits a trustee to invest and reinvest the trust estate in a mutual fund, including those mutual funds 'for which the trustee or an affiliate acts as a advisor or manager' and receives 'reasonable remuneration' for any services provided to the mutual funds.").

Accordingly, because the Bank's actions were authorized under state law, it is axiomatic that those actions could not breach a duty of care owed to Plaintiffs.[13]

Furthermore, because state law granted the Bank the authority to invest the assets of those investments in affiliated mutual funds, Plaintiffs have failed to plead sufficient facts to state a claim for unjust enrichment. In all of the states in which Plaintiffs reside, a claim for unjust enrichment requires that it be "unjust," "inequitable," or a violation of "the fundamental principles of justice, equity, and good conscience" for the defendant to retain the benefit at issues. See Blackmon v. Iverson, 324 F. Supp. 2d 602, 612-13 (E.D. Pa. 2003); JB Contracting, Inc. v. Bierman, 147 S.W.3d 814, 819 (Mo. Ct. App. 2004); Tooltrend, Inc. v. CMT Utensili, SLR, 198 F.3d 802, 805-08 (11th Cir. 1999) (applying Florida law); Growney Equipment, Inc. v. Ansley, 888 P.2d 992, 994 (N.M. Ct. App. 1994); Iowa Waste Systems, Inc. v. Buchanan County, 617 N.W.2d 23, 30-31 (Iowa Ct. App. 2000); Summer Oaks Ltd. P'ship v. McGinley, 55 P.3d 1100, 1104 (Or. Ct. App. 2002); HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989); United States for the Use and Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc., 290 F.3d 1199, 1204 (9th Cir. 2002) (applying Washington state law). Here, because the Bank's conduct was authorized by state law, Plaintiffs cannot show as a matter of law that it would be "unjust," "inequitable," or against "the fundamental principles of justice, equity, and good conscience" to keep any alleged benefit.

Moreover, the Court in Spencer dismissed the plaintiff's claim for breach of fiduciary duty for failing to allege a compensable harm and the claim for unjust enrichment because she

---

[13]     A fiduciary duty requires the existence of a special relationship of trust and confidence where one a person has the duty to act in the interests of the other. See In re Johnson , 292 B.R. 821, 828 (Bankr. E.D. Pa. 2003); Arnold v. Erkmann, 934 S.W.2d 621, 628-30 (Mo. Ct. App. 1996); Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp., 850 So.2d 536, 540 (Fla. Dist. Ct. App. 2003); Azar v. Prudential Ins. Co. of America, 68 P.3d 909, 925-27 (N.M. Ct. App. 2003); Shivvers v. Hertz Farm Mgmt., Inc., 595 N.W.2d 476, 480 (Iowa 1999); Bennett v. Farmers Inc. Co. of Oregon, 26 P.3d 785, 798-99 (Or. 2001); Prime Leasing, Inc. v. Kendig, 773 N.E.2d 84, 96 (Ill. App. Ct. 2002); Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002). Plaintiffs have not alleged any facts to show that they have a relationship of any kind, fiduciary or otherwise, with any Defendants except for the Bank as trustee.

failed to plead that she had no adequate legal remedy.  Spencer, slip op. at 13-16 (Exhibit 1).

The same grounds warrant dismissal of Plaintiffs' individual state law claims here as well.

### G.   Plaintiff Cohen's claims should be dismissed for mandatory arbitration.

Plaintiff Cohen's claims arise from the Robert S. Cohen Managed Individual Retirement

Account, which he established with Boatmen's Trust Company in 1997.  In 2002, after the Bank

acquired Boatmen's Trust Company, Plaintiff Cohen executed the IRA Adoption Agreement

with the Bank to establish the Cohen IRA Agreement.  Under the Adoption Agreement and the

IRA Agreement, Plaintiff Cohen designated the Bank as trustee of his IRA.  The IRA Adoption

Agreement includes an arbitration provision contractually binding Plaintiff Cohen to submit all

disputes regarding his IRA to binding arbitration:

> **13.7 Arbitration.**  Any controversy or claim between the Grantor or Beneficiary and the Trustee (or their heirs, successors and Personal Representatives) relating to the trust or this Trust Agreement shall at the request of a party be determined by arbitration.  The arbitration shall be conducted in the state in which the trust is primarily administered and shall be administered by J.A.M.S./ENDISPUTE ("J.A.M.S."), which shall appoint an arbitrator.  If J.A.M.S., or any successor organization of J.A.M.S., is unable or legally precluded from serving, then the American Arbitration Association ("A.A.A.") shall appoint an arbitrator.  If A.A.A. is unable or legally precluded from serving, then the affected parties shall agree as to the arbitrator.  In any arbitration proceeding, the United States Arbitration Act (Title 9, U.S. Code) and any rules of practice and procedure of the organization that appointed the arbitrator shall govern.

See Exhibit 15 at p. 13.

The Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), governs arbitration provisions

such as the one agreed to by Plaintiff Cohen.  By enacting the FAA, Congress intended to

establish a "national policy favoring arbitration."  Southland Corp. v. Keating, 465 U.S. 1, 10

(1984); see also Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001).

"The FAA establishes that 'as a matter of federal law, any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability.'"  Lyster, 239 F.3d at 945 (quoting Moses H. Cone Memorial Hospital v. Mercury

Constr. Corp., 460 U.S. 1, 24 (1983)).  A court's enforcement of an arbitration provision governed by the FAA is not discretionary; rather, it must give full effect to "Congress' clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  Moses H. Cone, 460 U.S. at 22.

Here, all of Plaintiff Cohen's claims arise from the administration of the IRA Agreement and IRA Adoption Agreement.  Such claims clearly fall within the broad arbitration provision, which provides:  "***Any controversy or claim*** between the Grantor . . . and the Trustee . . . relating to the trust or this Trust Agreement ***shall*** at the request of a party be determined by arbitration." See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) (finding that use of the phrase "in connection with or relating to" "resolves any doubt that [the clause] is a 'broad' clause").  And when the parties agree to such a broad arbitration provision, "even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration."  Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co., 118 F.3d 619, 621 (8th Cir. 1997); see also Pennzoil Exploration, 139 F.3d at 1067 ("Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.").

When, as here, no useful purpose will be served by granting a stay of the litigation because ***all*** of Plaintiff Cohen's claims are subject to arbitration, the court should dismiss those claims with prejudice.  See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Lewis Tree Serv., Inc. v. Lucent Tech., Inc., 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002); Reynolds v. Halliburton Co., 217 F. Supp. 2d 756, 758 (E.D. Tex. 2002).

## CONCLUSION

Based on the foregoing, Defendants Bank of America, N.A., Columbia Management Advisors, LLC, Banc of America Investment Services, Inc., Columbia Management Distributors, Inc. and Bank of America Corporation request that the Court decline jurisdiction over the

Amended Complaint due to Plaintiffs and their attorneys' judge shopping and violation of the first-filed rule or dismiss the Amended Complaint because Plaintiffs have failed to state a claim upon which relief can be granted.

DATED:  May 19, 2006

Respectfully submitted:

BRYAN CAVE LLP

By: /s/ Jeffrey S. Russell
Edward Dowd, Jr.
Jeffrey S. Russell
Darci Madden
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Telephone: 314.259.2000
Facsimile:  314.259.2020

Gregory B. Jordan
Mary J. Hackett
Christopher J. Soller
Sharon L. Rusnak
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: 412.288.3131
Facsimile:  412.288.3063

Counsel for Defendants Bank of America, N.A.; Columbia Management Advisors, LLC; Banc of America Investment Services, Inc., Columbia Management Distributors, Inc. and Bank of America Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 19th day of

May, 2006 upon the following counsel of record by the Court's electronic filing system:


Steven M. Hamburg, Esq.
Holly M. McIntyre, Esq.
Summers, Compton, Wells & Hamburg, P.C.
8909 Ladue Road
St. Louis, MO  63124

Richard D. Greenfield, Esq.
Greenfield & Goodman LLC
7426 Tour Drive
Easton, MD  21601

Amy Boomhouwer, Esq.
Gancedo & Nieves LLP
144 W. Colorado Boulevard
Pasadena, CA  91105

Stephen M. Colangelo, Esq.
Morrison & Foerster LLP
1650 Tysons Blvd., Suite 300
McLean, VA  22102

Barry A. Short
Louis, Rice & Fingersh, L.C.
500 North Broadway, Suite 2000
St. Louis, Mo  63102

/s/ Jeffrey S. Russell
Counsel for Defendants Bank of America,
N.A.; Columbia Management Advisors,
LLC; Banc of America Investment Services,
Inc., Columbia Management Distributors,
Inc. and Bank of America Corporation,