**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

GEORGE SIEPEL et. al,            )
                                       )
                                       )     Case No. 05:CV:2393  PAM
               Plaintiffs,     )
     v.                           )     JURY TRIAL DEMANDED
                                         )
BANK OF AMERICA, N.A. et. al.    )
                                       )
                                       )
               Defendants.     )

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS**

GREENFIELD & GOODMAN LLC
RICHARD D. GREENFIELD
7426 Tour Drive
Easton, Maryland
(410)745-4149
(410) 745-4158 (Fax)

Lead Counsel for Plaintiffs and the Class

SUMMERS, COMPTON, WELLS & HAMBURG
PROFESSIONAL CORPORATION

/s/ Steven M. Hamburg
STEVEN M. HAMBURG      #3313
HOLLY M. MCINTYRE      #112203
8909 Ladue Road
St. Louis, MO 63124
(314) 991-4999
(314) 991-2413 (Fax)

GANCEDO & NIEVES LLP
Hector G. Gancedo
Amy M. Boomhouwer
144 W. Colorado Blvd.
Pasadena, CA 91105
(626) 685-9800

LOCKRIDGE GRINDAL NAUEN PLLP

Richard A, Lockridge
W.Joseph Bruckner
Suite 2200
100 Washington Ave. South
Minneapolis, MN 55401
(612)339-6900

COUNSEL FOR PLAINTIFFS AND THE CLASS

# TABLE OF CONTENTS

I.     INTRODUCTION…………………………………………………………………3

II.    LEGAL STANDARD FOR DISMISSAL……………………......................................5

III.   ARGUMENT ……………………………………………………………………....6

      A.    Plaintiffs' State Law Claims are not Barred by SLUSA………...………....8

           1.    Plaintiffs' State Law Claims of Breach of Fiduciary Duty and Unjust Enrichment are not "State Law Based Private Securities Class Actions"…………………………………………………………..8

           2.    Plaintiffs Did Not Purchase Or Hold Nations Funds Shares So As To Trigger the Application of SLUSA……………………………………………….……………10

           3.    SLUSA Is Inapplicable To Plaintiffs' State Law Claims And There Is No Pre-Emption………………………………….......................11

           4.    There is Not Complete Pre-Emption…………...……………….…26

      B.    Plaintiffs' Breach of Fiduciary Duty Claims State a Claim for Relief Against Defendants………………………………………………….....28

      C.    Plaintiffs Have Adequately Pled Their Unjust Enrichment Claim……………………………………………………………………33

      D.    Arbitration Of Plaintiff Cohen's Claims………………………….……34

           1.    Standard For A Motion To Compel Arbitration………..………....34

           2.    Arbitration Cannot Be Compelled In This Matter Because There Exists No Valid Agreement To Arbitrate…………………………....35

           3.    Missouri Law Requires The Court To Determine The Validity Of Agreement To Arbitrate…………………………..…………………..36

           4.    This Court Can Determine that the Arbitration Clause is Not Legally Binding under the Circumstances in the Case……………………..37

5.    Circumstances Surrounding Dr. Cohen's Execution of the Agreements………………………………………………………39

V.    CONCLUSION…………………………………………………....…42

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Anthony International, L.P.,* 341 F.3d 256 (3rd. Cir. 2003)………………35

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)…………………………………..35

*Barrett v. McDonald Investments, Inc.,* 870 A.2d 146 (Me. 2005)……………………...37

*Behlen v. Merrill Lynch,* 311 F.3d 1087 (11th Cir. 2002)…………………………………17

*Benson v. RMJ Securities Corp.,* 683 F. Supp. 359 (S. D. N. Y.1988) …………………..9

*Blackmar v. Lichtenstein,* 438 F. Supp. 803 (E.D. Mo. 1977) …………………………...9

*Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975)……………………12, 25

*Bratek et al. v. Beyond Juice, LLC, et al.,*
2005 U.S. Dist. LEXIS 9992 (E. D. Pa.  2005) …………………………………………36

*Burns v. Prudential Securities,* 116 F. Supp.2d 917, 921 ………………………………27

*Carter v. Arkansas,* 392 F.3d 965, 968 (8th Cir. 2004)......................................................6

*Childress Painting & Assocs. v. John Q. Hammons Hotels Two., L.P.,*
106 S.W.3d 558 (Mo. Ct. App. 2003)……………………………………………………33

*Cluett, Peabody & Co., Inc.,* 842 F.2d 928, 931, *cert. denied,*
109 S.Ct. 311 (7th Cir. 1998)……………………………………………………………..22

*Congregation of Passion, Holy Cross v. Kidder Peabody,* 800 F. 2d 177 (7th Cir.
1986)………………………………………………………………………………………22

*Conley v. Gibson,* 355 U.S. 41 (1957)..................................................................................6

*Cridlebaugh v. Putnam County State Bank of Milan,*
192 S.W.3d 540 (Mo. Ct. App. 2006)……………………………………………………33

*Ctr. Physicians v. Painewebber Group,* U.S. Dist. LEXIS 22657 (May 8, 1996)………41

*Daly v. U.S. Bancorp Piper Jaffray, Inc.,* 110 P.3d 1057 (Montana
2005)……………………………………………………………………………………..37

*Davis v. Kozlowski,* MDL 02-1335-PB, Civ. 04-1338-PB,

2005 WL 662694 at 2 (D.N.H. March 17, 2005)………………………………..……24

*Dudek v. Prudential Sec. Inc.,* 296 F.3d 875 (8th Cir. 2002)………………………...12, 13

*Dunn Indus. Group, Inc. v. City of Sugarcreek,* 112 S.W.3d 421………………………36

*Estate of Athon v. Conseco Fin. Servicing Corp.,* 88 S.W.3d 26 (Mo. Ct. App. 2002)………………………………………………………………………………..36

*Estate of Burford ex rel. Bruse v. Edward D. Jones & Co., L.P.,* 83 S.W.3d 589 (Mo. App.2002)………………………………………………………36

*E-Time Sys., Inc. v. Voicestream Wireless Corp.,* 2002 WL 1917697 (E.D. Pa. Aug. 19, 2002)………………………………….…...34

*Federated Dep't Stores Ins. V. Moitie,* 452 U.S. 394 (1981)  ……………………………26

*First Option of Chi., Inc. v. Kaplan,* 512 U.S. 938, 944 (1995)…………………………35

*Fleet Boston Robertson Stephens, Inc., v. Innovex, Inc.,* 264 F.3d 770 (8th Cir. 2001)……………………………………………………......41

*Fortune Funding, LLC v. Ceridian Corp.,* 368 F.3d 985 (8th Cir. 2004) …………….…21

*Franchise Tax Bd. v.  Constructive Laborers Vacation Trust,* 463 U.S. 1(1983)……….27

*Gaming Corp. of America v. Dorsey & Whitney,* 88 F.3d 536 (8th Cir. 1996). ………..27

*Gens v. Resolution Trust Corp.,*  112 F.3d 569(1st Cir.1997) *cert. denied,* 522 U.S. 931, (1997) …………………………………………….……..21

*Gilmore v. County of Douglas, Neb.,* 406 F.3d 935 (8th Cir. 2005)...................................6

*Green v. Ameritrade, Inc.,* 279 F.3rd 590 (8th Cir. 2002)…………………………….25

*Green v. Ameritrade, Inc.,*  120 F. Supp.2d 795 (D. Neb. 2000) *aff'd* 279 F.3d 590 (8th Cir. 2002)………………………………………………………………………………...28

*Gray v. Seaboard Securities, Inc.,* 241 F.Supp.2d 213 (N.D.N.Y. 2003) *rev'd* 126 Fed. Appx 14 (2d. Cir. 2005)………….17

*Haber v. Kobrin ,*1983 WL 1332, *3 (S. D. N. Y.1983) …………………………………9

*Harris v. Sal Financial Services, Inc.,* 606 S.E.2d 293 (Ga. 2004) ……………………38

*Hitcom Corp. v. Flex Fin. Corp.,* 4 S.W.3d 618 (Mo. Ct. App.1999) …………………..36

*Hossaini v. W. Mo. Med. Ctr.,* 140 F.3d 1140 (8th Cir.1998)…………………………..20, 21

*Houlihan v. Offerman & Co., Inc.,*  31 F.3d 692 (8th Cir. 1994)………………………...36

*In re Wedemeir,* 237 F.3d 938 (8th Cir. 2001)……………………………………………....22

*In Re Mutual Funds Investment Litigation,*
MDL #1586, Case No. 04-md-15862 ......................................................................19, 20

*In re Oxford Health Plans, Inc. Securities Litigation,*
199 F.R.D. 119, (S. D. N. Y. 2001) …………………………………………………...…9

*James v. Gerber Prods. Co.* 483 F.2d 944 (6th Cir. 1973)……………………………...…..9

*John R. Boyce Family Trust v. Snyder,* 128 S.W.3d 630 (Mo. Ct. App. 2004)…...……...38

*Klamberg v. Roth,* 425 F. Supp. 440 (S. D. N. Y. 1976) …………………………………9

*Knieriem v. Group Health Plan, Inc.*  434 F.3d 1058 (8th Cir. 2006)……………………..6

*Kutten v. Bank of America, et al.,* 04:-cv-244……………………………………………10

*Latigo Ventures v. Laventhol & Horwath,* 876 F.2d 1322 (7th Cir. 1989)………………..23

*Leonard v. Southwestern Bell Corp. Disability Income Plan,*
341 F.3d 696 (8th Cir. 2003)……………………………………………………………..21

*Leonard v. Terminix International Co.,* 854 So.2d 570 (Ala. 2002)…………………….39

*Levinson v. United States,* 969 F.2d 260 (7th Cir.1992)…………………………………21

*LHLC Corp. v. Cluett, Peabody & Co., Inc.,*
842 F.2d 928, 931, *cert. den*ied, 109 S.Ct. 311 (7th Cir. 1988)………………………..22

*Linan-Faye Const. Co. v. Housing Auth. of Camden,* 49 F.3d 915 (3rd. Cir.
1995)………………………………………………………………………………………..21

*Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir.1996)
*cert. denied,* 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997)………….………..21

*Maharaj v. Bankamerica Corp.,* 128 F.3d 94 (2nd. Cir. 1997)……………………...……21

*MDCM Holdings v. Credit Suisse First Boston Corp.,*
216 F. Supp.2d 251 (S.D.N.Y 2002)……………………………………………………15

*Merrill Lynch, Pierce, Fenner & Smith v. Dabit,*
126 S. Ct. 1503, 1505-6 (2006)………….......................................................5, 19, 23, 25, 26

*Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58 (1987) ……………………….…… 26

*Meyer v. Putnam International Voyager Fund,* 20 F.R.D. 127 (D.C. Mass 2004)……....14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985)…………………………………………………….…………………..35

*MM & S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 364 F.3d 908 (8th Cir. 2004)…….5

*Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.,*
4 F.3d 605 (8th Cir.1993) ……………………………………………….…………………21

*Morris v. California,* 966 F.2d 448 (9th Cir.1991)………………………………………20

*Netco, Inc. v. Dunn,* 2005 WL 858031 (Mo. Ct. App.)…………………………………36

*Nitro Distributing, Inc. v. Dunn,* L 858079, 5-6 (Mo. Ct. App. 2005)…………………..36

*Norman v. Salomon Smith Barney, Inc.,*
 350 F. Supp. 2d 382 (S. D. N. Y. 2004)……………………………….……………..14

*O'Brien v. Continental Ill. Nat'l Bank and Trust Co. of Chicago,*
593 F.2d 54 (7th Cir. 1979)…………………………………..……………………17, 18

*Par-Knit Mills, Inc. v. Stockbridges Fabrics Co.,* 636 F.3d 51 (3rd. Cir. 1980)…….34, 36

*Parnes v. Gateway 2000, Inc.,* 122 F.3d 539 (8th Cir. 1997)............................................6

*Pickens v. Soo Line Railroad Co.,* 264 F.3d 773 (8th Cir. 2001)…………..………….22

*Press v. Quick Reilly, Inc.,* 218 F.3d 121 (2nd. Cir. 2000)………………………………16

*Professional Management Associates Inc. Employees' Profit Sharing Plan*
*v. KPMG,* 335 F.3d 800 (8th Cir. 2003)……………………………………..…….12, 13

*Prudential Ins. Co. of America v. National Park Medical Center, Inc.,*
413 F.3d 897 (8th Cir. 2005)………………………………………………….……21

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,*
81 F.3d 355 (3rd. Cir. 1996)………………………………………..…………….21

*SEC v. Zandford,* 535 U.S. 813 (2002)………………………………….…….18, 19

*Shaw v. Charles Schwab & Co., Inc.,* 128 F. Supp.2d 1270 (C. D. Cal. 2001)…….15, 24

*Sonfonia v. Principal Life Ins. Co.,* 378 F. Supp. 2d 1124 (S. D. Iowa 2005)…………14

*Specht v. Netscape Communications Corp.,*
150 F. Supp. 2d 585 (S. D. N. Y. 2001), *aff'd.,* 306 F. 3d 17 (2nd. Cir. 2002)…………40

*Spencer v. Wachovia Bank, N.A.,* No. 05-81016, Slip. Op. (Fla. May 10, 2006) ….17, 19

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
2001 WL 1182927 (S. D. N. Y. 2001) *aff'd* 332 F.3d 116 (2nd. Cir. 2003)…………....15

*Stone Motor Co. v. GMC,* 293 F.3d 456 (8th Cir. 2002)………………………………5, 39

*Taft v. Burlington Northern R.R. Corp.,* 926 F. Supp. 866 (D. Minn. 1996)……………27

*The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 25 (1913) .........................................26

*Total Petroleum, Inc. v. Davis,*  822 F.2d 734 (8th Cir. 1987)…………………………...21

*Triarch Industries, Inc. v. Crabtree,* 158 S.W.3d 772 (Mo. banc
2005)……………………………………………………………………………………….37

*Trott v. Paciolla,* 748 F.Supp. 305 (E. D. Pa 1990)……………………………………...35

*Trustee of Hotel Employers v. Amivest,* 733 F. Supp. 1180 (N. D. Ill. 1990)…………....22

*Twin Chimney Homeowners Association v. J.E. Jones Construction Co.,*
168 S.W.3d 488 (E. D. Mo. 2005) …………………………………………………….....38

*United States for Use of American Bank v. C.I.T. Constr.,* 523 (5th Cir. 1991)………….21

*U.S. ex rel. Gebert v. Transport Administrative Services,*
 260 F.3d 909 (8th Cir. 2001)…………………………………………………………….22

*Versage v. Township of Clinton N.J.,* 984 F.2d 1359 (3rd. Cir. 1993)…………………...35

*Vohs v. Miller,* 323 F.Supp.2d 965 (D. Minn. 2004)………………………………….....13

*Volt Information Sciences, Inc. v.*
*Board of Trustees of Leland Stanford Junior Univ.,*  498 U.S. 468 (1989)……...…..35, 40

*Warda v. Commissioner of Internal Revenue,* 15 F.3d 533 (6th Cir. 1994)……………..21

*Whitney v. Alltel Communications, Inc.,* 173 S.W.3d 300 (Mo. Ct. App. 2005) ………..38

*Willems v. U.S. Bancorp Piper Jaffray, Inc.,* 107 P.3d 465 (Montana 2005)……………38

*Wulf v. Adaptive Motion Control Systems, Inc.,*
2003 WL 23305 (D. Neb. 2003) ………………….………………………………………6

*Wyldes v. Hundley,*  69 F.3d 247 (8th Cir.1995), *cert. denied,* 517 U.S. (1996)………....20

*Xpedior Cred. Trust v. Credit Suisse First Boston,*
341 F. Supp.2d 258 (S.D.N.Y. 2004)………..……………………………………..15

*Zink v. Merrill Lynch Pierce Fenner & Smith,* 13 F.3d 330 (10th Cir. 1003)……………39

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| GEORGE SIEPEL et. al, ) | |
| ) | |
| ) | Case No. 05:CV:2393  PAM |
| Plaintiffs, ) | |
| v.                          ) | JURY TRIAL DEMANDED |
| ) | |
| BANK OF AMERICA, N.A. et. al.   ) | |
| ) | |
| ) | |
| Defendants.    ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS**

## I.  INTRODUCTION

On December 28, 2005, Plaintiffs George and Phyllis Siepel, Craig, Elinor and Constance

Williams and Carl Page, beneficiaries of irrevocable trusts of which the Defendant Bank of

America, N.A. (hereinafter "Bank") was trustee, together with Donna Reinke, a beneficiary of an

estate whose account was administered by the Bank, and Robert Cohen, whose IRA account was

managed by the Bank, filed their Class Action Complaint alleging state law claims for breach of

fiduciary duty and unjust enrichment.[1]  Defendants filed Motions to Dismiss the Complaint,

asserting that Plaintiffs' claims were barred by the Securities Litigation Uniform Standards Act

("SLUSA").

On April 14, 2006, Plaintiffs filed an Amended Complaint alleging federal securities laws

claims in addition to the state law claims.  On May 19, 2006, the Defendants each filed a motion

to dismiss, asserting that 1) Plaintiffs' state law claims were pre-empted by SLUSA;  2) no

causes of action were stated under the federal securities laws; 3) the breach of fiduciary duty and

---

[1] The class is defined as "all beneficiaries, owners, beneficial owners, or principals of trusts, accounts or other
entities for which the Bank or any of its parents, subsidiaries, affiliates, predecessors, successors or assigns acted as
a trustee, fiduciary or agent and that were directly or indirectly invested in Nations Funds Mutual Funds at any time
from September 8, 1998" to the present, a class which has already been stipulated to by each of the Defendants, their
affiliates and others in connection with the settlement of certain related claims against them in *In re Mutual Funds
Investment Litigation*, MDL-1586, where it was designated as a "Fiduciary Sub-Class."

unjust enrichment claims should be dismissed because the challenged conduct is proper under

state law; and 4) Plaintiff Cohen's claims should be dismissed for mandatory arbitration.

(collectively referred to herein as "Motion")   For the reasons outlined below, Defendants'

Motion is without merit and should be denied.

First, Plaintiffs' primary cause of action against Defendants has always been the breach

of fiduciary duty claim.[2]  The allegations related to Defendants' affirmative misrepresentations

and failure to disclose material facts to the members of the Class support this claim.  These

allegations do not convert the breach of fiduciary claim into what the Defendants suggest is a

"meritless and private lawsuit  . . . harming the nation's securities markets" or a case where

Plaintiffs intended "to frame their allegations of securities fraud as state law causes of action and

pursue relief in state court." Bank's Brief at 28.[3]

Second, the Defendants make inconsistent factual assertions in their Motion.  On the one

hand, the Defendants maintain that Plaintiffs have no federal securities claims because they are

not buyers or sellers of securities; they had no authority over investment decisions and were not

defrauded "in connection with" the purchase or sale of securities. On the other hand, Defendants,

at the same time, argue that the "in connection with" the purchase of securities requirement is

met for SLUSA pre-emption purposes. Defendants' position is disingenuous because federal case

law analyzing federal securities cases and those analyzing SLUSA cases, employ the same

analysis in determining whether the "in connection with" requirement is satisfied. *See, Merrill*

---

[2]   The Plaintiffs are beneficiaries of various types of the Bank's fiduciary accounts; e.g. trusts, estates, asset
management accounts. Unless the context otherwise indicates, references to the Bank herein also refer to Defendants
Bank of America Corporation ("BAC"), the Bank's parent corporation, and Defendants Columbia Management
Advisors, LLC; Columbia Management Distributors, Inc. and Banc of America Investment Services, Inc.
(collectively "Bank Subsidiaries" in Complaint).
[3]   The Amended Memorandum of Law in Support of Motion to Dismiss of Defendants Bank of America, N.A.,
Columbia Management Advisors, LLC, Columbia Management Distributors, Inc., Banc of America Investment
Services, Inc., and Bank of America Corporation is referred to herein as "Bank Brief." The Memorandum of

*Lynch, Pierce, Fenner & Smith v. Dabit*, 126 S. Ct. 1503, 1505-6 (2006) (hereinafter "*Dabit*").

Accordingly, if Plaintiffs were not defrauded "in connection with" the purchase or sale of

securities for purposes of Rule 10b-5, Plaintiffs state law claims cannot be preempted by SLUSA

as being "in connection with" the sale of a covered security.

Third, contemporaneously with this Memorandum, Plaintiffs are filing a Motion for

Leave to File Second Amended Complaint, together with the proposed Second Amended

Complaint, which removes the securities claims (Counts I-III) of the Amended Complaint

without prejudice.

Finally, in their Motion, Defendants complain that the Plaintiffs in this, and other related

cases, have proceeded "without ever having to prove the merits of a single case." Plaintiffs are

prepared, should  Defendants' Motion be denied, to move promptly for certification of the Class

herein and for partial summary judgment on the issue of liability to demonstrate the transparency

of the Bank's pretense that Plaintiffs' claims are substantively unmeritorious.[4]

## II.  LEGAL STANDARD FOR DISMISSAL

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept all factual

allegations in the complaint as true and grant every reasonable inference in favor of the

nonmovant. *MM & S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 364 F.3d 908, 909 (8th

Cir.2004) (citing *Stone Motor Co. v. GMC,* 293 F.3d 456, 464 (8th Cir.2002)). "A motion to

dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of

facts to warrant a grant of relief." *Gilmore v. County of Douglas, Neb.,* 406 F.3d 935, 937 (8th

---

Defendant Columbia Funds Series Trust in Support of Motion to Dismiss Amended Complaint is referred to herein
as "NFT Brief."
[4]  Plaintiff Reinke and the Williams Plaintiffs and their counsel have had the benefit of substantial discovery in their
earlier, now-dismissed cases, which discovery overwhelmingly supports certification of the Class and partial
summary judgment. Plaintiffs will seek access to that discovery which has been previously designated as
"Confidential" for use in this case.

Cir.2005) (citing *Carter v. Arkansas,* 392 F.3d 965, 968 (8th Cir.2004)); *See Knieriem v. Group Health Plan, Inc.,* 434 F.3d 1058, 1060 (8th Cir. 2006).  Under Rule 12(b)(6), the party moving for dismissal has the burden of proving that no claim has been stated. To prevail, the movant must show beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.  This language emphasizes the limited applicability of Rule 12(b)(6) as the predicate for a final dismissal of the action, a disposition that courts generally disfavor because it summarily terminates cases on their merits. Moore's Federal Practice 3d, § 12.34[1][a], citing, among others, *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); and *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997).*Wulf v. Adaptive Motion Control Systems, Inc.*  2003 WL 23305, 2 (D. Neb. 2003).

## III.  ARGUMENT

Plaintiffs and the Class members are beneficiaries of fiduciary accounts managed and controlled by the Bank as the corporate fiduciary. ¶1.[5]  As a fiduciary, the bank owes Plaintiffs and the Class a duty of loyalty and the duty to act in the best interest of the Plaintiffs and the Class.  ¶9(e), 96-99.  The Bank, however, failed to do so.  Instead, implementing a corporate decision on a nationwide basis to funnel assets in the fiduciary accounts for which it served as fiduciary to the Bank's proprietary mutual funds, the Nations Funds.  Moreover, it outright refused to invest its fiduciary accounts in outside mutual funds. ¶3, 4.

Notwithstanding its promises of customized and unique investment management for its fiduciary accounts, the Bank utilizes its proprietary mutual funds and acts otherwise to provide standardized and thoughtless "wealth management," failing to explain to beneficiaries the conflicts of interest inherent in the use of only its proprietary funds in the accounts and the

---

[5] All citations to  "¶___" herein refer to paragraphs of Plaintiffs' Amended Complaint.

Bank's strategy of turning its fiduciary business into profit centers which generate excessive and unjust profits. ¶ 7, 8, 9(b), 9(c), 8(d), 9(g), 15, 17, 31-34.

The Amended Complaint includes examples of the Bank's **failure to be forthright with the beneficiaries of its accounts**, including the full extent to which the Bank was profiting excessively, the increased costs of the investments to the beneficiaries and the lack of any real benefit to the beneficiaries from using only Nations Funds in their accounts, particularly as compared to better managed or lower-expense non-proprietary mutual funds or alternate investments.. ¶ 39-47.

The Amended Complaint further alleges that the Bank, in violation of its fiduciary duty, failed to determine the suitability and/or propriety or the relative costs and benefits of investments in the Nations Funds when it converted assets to the Nations Funds on a wholesale basis without performing an account-by-account analysis and failed to evaluate the use of outside mutual funds in the fiduciary accounts. ¶ 55-7.

As a result of the Bank's conduct, it reaped many millions of dollars in money management, investment advisory and other fees. Plaintiffs and the Class members were damaged by the charging of these fees. ¶ 60. The Bank charged improper investment management/advisory as well as administrative fees while concurrently charging trustee fees to manage the same assets without any benefit to the beneficiaries or the fiduciary accounts. ¶ 47. In undertaking its course of conduct, the Bank inequitably enriched itself, failed to consider the best interest of those for whom it was serving as fiduciary, breached its duty of loyalty and put its own interests ahead of the Plaintiffs and the Class.

In their Motion, Defendants challenge the Amended Complaint on grounds that it fails to state a claim upon which relief can be granted because:

a)      SLUSA mandates dismissal of Plaintiffs' state and common law claims;

b)      the Defendants' challenged conduct was proper under state law; and

c)       Plaintiff Cohen's Claims Should be dismissed in favor of Arbitration.[6]

**A.      *Plaintiffs' State Law Claims are not Barred by SLUSA***

> **1.      *Plaintiffs' State Law Claims of Breach of Fiduciary Duty and Unjust Enrichment are not "State Law Based Private Securities Class Actions"***

The foundation for the Amended Complaint ("Complaint") is set forth in paragraph 9 thereof.  In 9(a), Plaintiffs assert:

> "The focus of this lawsuit is, in the context of a massive acquisition spree described below, the corporate strategy of BAC and the Bank to consolidate the fiduciary operations of the various Acquired Banks and to generate operational efficiencies therefrom to make up for the deterioration of the Bank's traditional profit model, commercial lending.  In the course of carrying out such strategy, BAC and the Bank planned to and did bulk-up their captive and proprietary mutual funds business to provide the Bank with incremental sources of profit from fee and other income generated by its subsidiaries and affiliates, including the Bank Subsidiaries. They did so from various services provided to the Nations Funds, including investment advisory, distribution and other services.  The assets held in the Bank's fiduciary accounts were and are a perfect "cookie jar" for the Bank to use to "seed" and/or bulk up its proprietary mutual funds and better enable the Bank to streamline its so-called "Private Bank," increase the use of "Call Centers" and otherwise extract economies of scale from fiduciary operations."

In paragraph 9(b), Plaintiffs allege that the Bank's strategy included a business decision to "double-dip" from the fiduciary accounts in the Bank's control by having assets re-directed from fee and expense free investments into investments that would earn the Bank and BAC additional and unearned fee income from their related businesses, including mutual funds (the Conversions), resulting in unjust enrichment to the Defendants.  In addition to the mutual fund-

---

[6] As Plaintiffs have dismissed its federal securities law claims, Plaintiffs will not address those claims in this Memorandum.

related income received by the Bank and its subsidiaries, the Bank continues to receive fees that are directly withdrawn by it from the affected fiduciary accounts.

Plaintiffs further allege that in breach of the Bank's fiduciary duty to be honest and forthright with the Plaintiffs, (who bring their common and state law based Counts as **beneficiaries** of fiduciary accounts, **not as investors and not as purchasers of securities**), the Bank and BAC concealed the truth about their profit enhancing strategy by using their fiduciary accounts as distribution channels for their own mutual funds, including failing to inform beneficiaries that the Bank was self-dealing and had serious conflicts of interest.

In a nutshell, Plaintiffs assert that the Bank breached its fiduciary duty by exploiting captive fiduciary accounts (accounts for which the creating documents contain no viable method for removal of the Bank as fiduciary) to enhance Defendants' profits by using proprietary mutual funds as investments in the affected accounts. Not once in the Complaint do Plaintiffs allege they purchased, bought or acquired any of the Bank's proprietary funds, indeed, they have no investment control or power to acquire anything.[7]  The Plaintiff beneficiaries were subservient to the Bank as corporate fiduciary and had no power to control what assets the Bank bought for their accounts. The claim that Plaintiffs assert against the Bank for breach of its fiduciary duty

_____

[7] As indicated above, Plaintiffs had alleged in the alternative now-withdrawn federal securities claims that the Bank purchased for their accounts Nations Funds mutual funds. In making such alternative claims, Plaintiffs asserted standing as "de facto" purchasers of the mutual funds shares. *Haber v. Kobrin* 1983 WL 1332, *3 (S.D.N.Y. 1983); *Klamberg v. Roth*, 425 F. Supp. 440, 442-43 (S.D.N.Y. 1976); *In re Oxford Health Plans, Inc. Securities Litigation* 199 F.R.D. 119, *123 (S.D.N.Y.,2001) (it has been established that a trust beneficiary may sue under Rule 10b-5.); *Benson v. RMJ Securities Corp.* 683 F. Supp. 359, *366 (S.D.N.Y.,1988); *James v. Gerber Prods. Co*. 483 F.2d 944, 948-49 (6th Cir. 1973); *Blackmar v. Lichtenstein*, 438 F. Supp. 803, 806 (E.D. Mo. 1977)This standing to assert federal securities claims, however, did not make them purchasers or holders of covered securities as contemplated by SLUSA.  The Defendants, in fact, have urged this and another federal court that the Plaintiffs are neither purchasers nor holders of Nations Funds shares and none of them has purchased or sold the assets in their accounts or has the power to do so. Indeed, as alleged in ¶4 of the Complaint, even a Co-Trustee/beneficiary such as Judge Medler had no ability to determine the investments in the Lubbe Trust accounts. Neither she nor any of the Plaintiffs herein is a "purchaser" and none of the Bank's misrepresentations or omissions of material facts as abundantly alleged in the Complaint resulted in Plaintiffs' reliance thereupon. The Bank was going to and did purchase Nations Funds shares for its fiduciary accounts without regard to whether it lied to beneficiaries of those accounts or not.

include its failure to make adequate disclosures in regard to the administration of their accounts

on a Class-wide basis. However, all of the Defendants' alleged misrepresentations and omissions

of facts, however material and egregious, were and are only **ancillary** to these fundamental

breach of fiduciary duty and unjust enrichment claims and those additional claims asserted under

state and common law.

Count III of the Complaint, at ¶¶ 96 through 99, incorporates by reference the previous

paragraphs and seeks relief under state law.  Count IV, Plaintiffs' claim of unjust enrichment,

generally alleges the necessary elements for an unjust enrichment claim: (1) a benefit conferred

on the Defendants by the Plaintiffs; (2) appreciation by the Defendants of the fact of such

benefits; and (3) the acceptance and retention of those benefits by the Defendants under

circumstances which render the retention of those benefits without payment would be

inequitable. See, Complaint at ¶¶s 101, 102 and 103.  Counts V and VI assert Class claims under

state law for breach of fiduciary duty as well.

Upon its review of a similarly worded complaint, which the Court dismissed for lack of

subject matter jurisdiction, *Kutten v. Bank of America, et al*, 04:-cv-244, the Court found that

Plaintiffs' allegations stated a claim for breach of fiduciary duty. Plaintiffs assert the same claim

in their Complaint here (Counts III-VI).  In their Motion, the Defendants do not and can not

claim that Plaintiffs improperly rely on the Class Action Fairness Act of 2005 for federal

jurisdiction over these state and common law claims. Thus, this action should be allowed to

proceed on the merits.

### 2. *Plaintiffs Did Not Purchase Or Hold Nations Funds Shares So As To Trigger the Application of SLUSA*

As made abundantly clear in Defendants' Motion, and throughout the Complaint, none of

the Plaintiffs did or could make purchases for their fiduciary accounts.  SLUSA cannot be used

to cause the dismissal of their state law claims when Plaintiffs are not purchasers of, or owners

of, covered securities; nor have any of the Plaintiffs relied on Defendants' misrepresentations

and omissions of material facts in connection with such purchases or ownership.

### 3.      *SLUSA Is Inapplicable To Plaintiffs' State Law Claims And There Is No Pre-Emption*

In their Memoranda in Support of their Motion, the Defendants state repeatedly that

Plaintiffs, as beneficiaries of the Bank's fiduciary accounts, are not purchasers or sellers of

securities.  Specifically, the Bank states:

1)      **"Plaintiffs are beneficiaries of a trust or estate, and as such, they do not and cannot plead any authority over investment decisions. . ."''<u>Persons who are not parties to the transaction cannot assert securities fraud claims because they cannot have been induced into buying or selling the securities. . . plaintiffs had no authority to make investment decisions."</u>**

Bank's Brief at p. 17 [emphasis added]

2)      "Plaintiffs' claims under Section 11and Section 12 should be dismissed because **they are not purchasers. Plaintiffs claim only a beneficial interest in the securities in question** and have no standing to pursue such claims under Section 11"

Bank's Brief at p. 23 [emphasis added]

3)      **"PLAINTIFFS LACK STANDING BECAUSE THEY ARE NOT PURCHASERS. . .they did not purchase any shares of Nations Funds,"**

 NFT Brief at p. 9, incorporated by reference into the Bank Defendants Memorandum [emphasis added]

4)      **". . .[Plaintiffs] do not allege that they control investments in those accounts, or that they had authority to make investment decisions for them"**

Id. at p. 11 [emphasis added]

5)      "because the **plaintiffs did not participate in the purchase of Nations Funds in their fiduciary accounts, or have the authority to do**

**so**, their Section 10(b)(5) claims must also be dismissed.  Only a person defrauded in connection with a purchase or sale of securities can bring a 10(b)(5) claim. . . **Persons who are not parties to the transaction cannot assert securities fraud claims because they could not have been induced into buying or selling the securities** [citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 737-38 (1975)]"

*Id.* at p. 12 [emphasis added]

Notwithstanding Defendants' factual contention that Plaintiffs are not purchasers, sellers or holders of securities, and therefore, did not rely on disclosure material in connection with the purchase or sale of securities, Defendants maintain that SLUSA requires the dismissal of Plaintiffs' state law claims for breach of fiduciary duty and unjust enrichment.

Defendants rely on *Dudek v. Prudential Sec. Inc.,* 296 F.3d 875, 877 (8th Cir. 2002) and *Professional Management Associates Inc. Employees' Profit Sharing Plan v. KPMG*, 335 F.3d 800 (8th Cir. 2003) ("*PMA*") in support of their position that SLUSA mandates the dismissal of Plaintiff's state law claims because the Complaint alleges untrue statements or omission of material fact by the Bank.  This reliance is misplaced.

In *Dudek,* the plaintiffs therein were the purchasers of annuities who alleged state law claims that the defendants breached their fiduciary duty by selling plaintiffs inappropriate annuities. The Court found that the five state law causes of action addressed unlawful marketing of tax-deferred annuities for use in tax-deferred accounts and that the defendants' misconduct **caused plaintiffs therein to invest** in inappropriate securities. Consequently, regardless of how the Dudek plaintiffs pled their claims, they were using state law claims to circumvent federal securities laws because they were essentially asserting that Defendant made untrue statements "in connection with the purchase or sale of a covered security." *Id*. at 879.

In *Dudek*, plaintiffs' claims therein were, as recognized by the trial court and accepted as so by the Eighth Circuit: "… **in substance** based on material misrepresentations and non-

disclosures…" *Id.* at 878. [emphasis added].  Here, Plaintiffs claims are not based on material

representations and non-disclosure; nor did Plaintiffs rely on any material representations and

non-disclosures in connection with the sale of securities.

In *PMA*, the Eighth Circuit, relying on its earlier opinion in *Green* v. *Ameritrade, Inc*.,

279 F. 3rd 590, 598 (8th Cir 2002), reiterated that:

> "…SLUSA governs when a complaint can reasonably be read as alleging
> a…purchase of a covered security **made in reliance** on the allegedly faulty
> information provided to [the plaintiff] and to putative class members…"

> *PMA* at 803. [emphasis added]

Although the Court in PMA went on to describe SLUSA in more literal terms, it did so in

the context of reaffirming its holding in *Dudek, supra,* stating:

> "We have previously held the allegation that misconduct **caused a plaintiff to
> invest** in inappropriate securities is a claim in connection with the purchase or
> sale of a covered security for purposes of SLUSA pre-emption"

> *PMA* at 803. [emphasis added]

The *PMA* Court concluded ultimately, in citing to *Dudek that PMA's claim* is **essentially**

**a securities fraud claim**, [and] SLUSA governs." PMA at 803. [emphasis added].

Other cases cited by Defendants are readily distinguishable.  For example, in *Vohs v.*

*Miller*, 323 F.Supp.2d 965 (D. Minn. 2004), Plaintiffs were ***investors*** suing directors and officers

regarding their untrue statements touting the company's performance and asserted claims under

federal and state law.  The *Vohs* Court stated that "pre-emption [of the state law claims] under

SLUSA is appropriate where a complaint can reasonably be read as alleging **a sale or purchase**

of a covered security **made in reliance on the allegedly faulty information provided** to [the

plaintiff] and to putative class members by [the defendants.]" *Id.* at 973. (emphasis added.)

Accordingly, the Court dismissed the state law claims.

In this case before the Court, however, Plaintiffs did not purchase Nations Funds shares. Further, any such purchase could not have been made **in reliance on the omissions or misrepresentations** because they had no authority to make investment decisions.  The Bank made the investment decisions for Plaintiffs' fiduciary accounts. The Bank, in its capacity as corporate fiduciary, was and is, the only purchaser of Nations Funds shares.

In *Sonfonia v. Principal Life Ins. Co*., 378 F. Supp. 2d 1124 (S. D. Iowa 2005), plaintiffs therein were policy holders of the defendant who claimed that they were unable to exchange or "purchase" shares of stock using their insurance policies issued by the defendant as currency because of defendant's misrepresentation of the terms of a settlement of a previous class action. While standing generally for the proposition that SLUSA will pre-empt claims made to circumvent federal securities laws by asserting them under state law, *Sonfonia* is factually distinguishable from the facts of this case.

While Defendants are correct that Plaintiffs cannot avoid the pre-emption of SLUSA through "artful pleading", "neither may defendants avoid every possible securities claim by recasting any lawsuit in which a [Bank trustee] is a defendant into a securities fraud action." *Norman v. Salomon Smith Barney, Inc.,* 350 F. Supp. 2d 382, 386 (S. D. N. Y. 2004).  Courts have routinely held that a defendant's attempt to do so will not work.

For example, *in Meyer v. Putnam International Voyager Fund*, 20 F.R.D. 127 (D.C. Mass 2004), the plaintiff, the custodian of her Roth IRA account (substantively the same as Plaintiff Cohen's IRA account here), asserted a breach of fiduciary claim in connection with the defendant's allowing short-term trading in its funds.  In response to defendant's arguments that the "purchase or sale" and "in connection with" requirements were met because the claims

related to market-timing in mutual funds, the Court ruled that the breach of fiduciary claims fell outside of SLUSA pre-emption. *Id.* at 129.

In *MDCM Holdings v. Credit Suisse First Boston Corp.,* 216 F. Supp.2d 251 (S.D.N.Y. 2002), an issuer of securities brought state law claims against its underwriter for secretly underpricing stock in a public offering. The Court refused to find SLUSA pre-emption with respect to plaintiff's allegations that defendant failed to carry out promises made in connection with a securities transaction. *See also, Xpedior Cred. Trust v. Credit Suisse First Boston*, 341 F. Supp.2d 258 (S. D. N. Y. 2004) (finding no allegation of "any manipulative or deceptive device or contrivance" relating to securities transaction to bring conduct within SLUSA's pre-emption, hence fiduciary duty claim did not fall within scope of state securities action).

Likewise, in *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 2001 WL 1182927 (S.D.N. Y. 2001), *aff'd* 332 F.3d 116 (2d Cir. 2003), the Court refused to find SLUSA pre-emption because the requisite connection between a fraud and a purchase and sale was not met. Following Second Circuit precedent, the Court stated that such a connection is only found when the fraud alleged is that the plaintiff bought or sold a security in reliance on representations as to its value. *Id.* at 2. Specifically, the Court stated, "[w]hile the transaction fees charged by Merrill Lynch affect the cost of trading, this cost is part of Merrill Lynch's bargain with its account holders and is not sufficiently connected to the underlying securities to meet the requirement that the misrepresentations about those fees be ''in connection with' the purchase or sale of covered securities." *Id* at 5.

Finally, in *Shaw v. Charles Schwab & Co., Inc*., 128 F. Supp.2d 1270 (C. D. Cal. 2001), the Court refused to apply SLUSA to pre-empt the claims of the plaintiffs therein against a securities broker for its on-line trading practices, finding that the misrepresentation allegations

were not "intrinsically related to the securities being traded" and the "in connection with" requirement was not met. *Id*

In the case *sub judice*, Plaintiffs' claims are not, "in substance, based on material misrepresentations and non-disclosures." Defendants' wrongful deceptions, however egregious they were, were **merely ancillary** to the Bank's breaches of fiduciary duty and the unjust enrichment of the Defendants. Since Plaintiffs were not actual purchasers of securities, every reference to misrepresentation and omission of facts can be deleted from the Complaint and their breach of fiduciary duty and unjust enrichment claims would nevertheless survive.

Since Defendants argue that Plaintiffs themselves were not purchasers of the Nations Funds purchased for their fiduciary accounts, no statement to them, true or not, could be relevant to the decision to purchase those shares.  *See,* e.g. Complaint at ¶4.  Indeed, as Defendants concede, Plaintiffs had no power or authority to make such a decision.

Defendants rely on the case of *Press v. Quick & Reilly, Inc*., 218 F.3d 121, 131-13 (2d Cir. 2000) for the proposition that SLUSA was intended to pre-empt actions related to mutual fund fees.  However, a review of the Court's opinion in *Press* reveals that it is not a SLUSA case at all and was limited to the issue of whether the broker-dealer defendants violated § 10(b) of the Securities Exchange Act of 1934, and Rules 10b-5 and 10b-10 promulgated thereunder by failing to disclose their receipt of fees from money market funds and advisers for those funds that the defendants therein selected for "automatic sweeps" of their customers' accounts.

While it is true that Plaintiffs here have alleged the receipt of fees by the Bank as "double dipping" and that the full extent of those fees were not disclosed and/or misrepresented, this conduct is set forth as an example of the Bank's breach of fiduciary duty to the beneficiaries of accounts to whom the Bank owed the highest duty of loyalty, as well as Plaintiffs' damages. This

allegation does not convert Plaintiffs' state law breach of fiduciary duty claims into securities claims under state law.

Defendants primary rely on the case of *Spencer v. Wachovia Bank*, N.A., No. 05-81016, Slip. Op. (Fla. May 10, 2006) (Exhibit 1 to the Bank's brief) in support of their position. This reliance, however, is misplaced and conflicts with the guidance provided not only by the Eighth Circuit, but leading cases in other jurisdictions. Moreover, the rationale for the decision in *Spencer* is suspect and the authority cited therein is not precedent for this case.

In *Spencer*, the Court primarily relied on the Eleventh Circuit case of *Behlen v. Merrill Lynch*, 311 F.3d 1087 (11th Cir. 2002). In *Behlen*, plaintiffs were purchasers of stock in an "aggressive growth mutual fund" who brought suit against a brokerage firm and a fund manager claiming that **they were sold** more expensive Class B shares when they were eligible to purchase cheaper Class A shares. Plaintiffs alleged that the purchase of the Class B shares were the result of misrepresentations. In finding that the fees and commissions paid by the Plaintiffs were "incidental to the sale of securities" **to plaintiffs** therein, the Court held SLUSA pre-empted the claims.

The facts of *Behlen* are distinguishable from this case in that Defendants concede that, unlike in *Behlen*, Plaintiffs are not purchasers of securities and, in fact, are not even parties to the Bank's purchases of Nations Funds shares for its fiduciary accounts. S*ee O'Brien, supra* at 60. The Court denied leave to amend because the proposed amendment by plaintiffs therein would not have avoided SLUSA's pre-emption.

Likewise, *Gray v. Seaboard Securities, Inc*., 241 F.Supp.2d 213 (N.D.N.Y. 2003), *rev'd* 126 Fed. Appx. 14 (2d Cir. 2005) involved misrepresentations to a group of investors by the defendants of an affiliation with an analyst resulting in payments of elevated commissions and

plaintiff's purchases of stock allegedly recommended by the analyst. Because the commissions accrued in connection with the sale and purchase of securities, SLUSA pre-empted the claims of misrepresentation brought under state law.

Aside from being neither purchasers nor sellers who relied upon misrepresented or omitted material facts, any such reliance, if it existed at all, must have been upon "an untrue statement or omission of a material fact **in connection with** the purchase or sale of a covered security." [SLUSA, 15 USC §779p)(b); 15 USC §78bb(f)(1)]. *Spencer* cites *O'Brien v. Continental Ill. Nat'l Bank and Trust Co. of Chicago*, 593 F.2d 54, 60 (7th Cir. 1979), for the proposition that even trustees of a pension fund trust who had given a bank investment authority could not sue under §10(b) of the Exchange Act because in such an instance, the bank's

> **"failure to disclose information about the purchase or sale to the beneficiary or agent does not satisfy the 'in connection with' requirement of § 10(b). The enforcement of fiduciary and contractual duties owed by a trustee to agent to the beneficiary or principal is the concern of state law, not the federal securities laws."**
>
> *O'Brien* at 63 [emphasis added].

Thus, while Defendants cite *O'Brien* in support of their assertion that Plaintiffs have no standing to pursue §10(b) claims, following the logic of the Seventh Circuit, none of the Defendants' deceptions of Plaintiffs were made "in connection with" the purchases and sales of Nations Funds shares for Plaintiffs' fiduciary accounts. Absent the ability to "connect" this critical clause to the facts in this case, application of SLUSA to Plaintiffs' state law claims is inappropriate.

The *Spencer* Court's analysis of whether the claims of plaintiff therein were in connection with the sale of securities relies on *SEC v. Zandford,* 535 U.S. 813 (2002). *Zandford* analyzed the "in connection with" language used in Rule 10b-5.  The Supreme Court reiterated its conclusion

that an alleged fraud is "in connection with" a purchase or sale of securities occurs **when fraud coincides** with the purchase or sale.  Obviously, since Plaintiffs in this case were not parties to the purchases by the Bank of Nations Funds shares as conceded by the Defendants, none of the Plaintiffs was defrauded in purchasing these shares for their accounts.  Therefore, the "in connection with" requirement of SLUSA is not applicable to Plaintiffs' claims of breach of fiduciary duty/unjust enrichment, which are not pre-empted under *Zandford*.

Next, *Spencer* discusses the recent decision by the Supreme Court in *Dabit,* which the Court explains extended the holding in *Zandford* and its predecessors to include "holders." *Dabit* was a suit by a broker and a former retail customer who alleged state law claims including breach of fiduciary duty.  The specific claim related to the brokerage firm's manipulation of stock prices which resulted in the broker and his clients retaining or delaying the sales of their securities.  Those who delayed in selling are "holders."  The specific issue was whether the holder's claims fell outside SLUSA's pre-emptive scope and whether the Court's prior Rule 10b-5 analysis of "in connection with" should be applied to SLUSA. The Court decided that if the complaint alleges requisite fraud and misconduct such as that alleged therein--fraudulent manipulation of stock prices--the plaintiff's identity as a buyer, seller or holder did not matter and such claims are pre-empted. Here, none of Plaintiffs are, or were, a holder of the Nations Funds shares that were purchased by the Bank for their fiduciary accounts and the Defendants cannot credibly argue otherwise, having argued that the shares were purchased by the Bank, not Plaintiffs.

Moreover, the Defendants cannot now be heard to assert that Plaintiffs are "holders".  On March 7, 2005, the Defendants filed a Memorandum in Support of their Motion to Dismiss the class action Complaint in the Bank of America Sub-Track of *In Re Mutual Funds Investment*

*Litigation*, MDL #1586, Case No. 04-md-15862. (*See* Exhibit 1 attached hereto). In seeking to

dismiss the **securities claims** asserted by Doris Griffith, a beneficiary of a trust for which the

Bank is Trustee, and who is similarly situated to the Plaintiffs herein (as well as the named

representative of the Fiduciary Sub-Class in MDL#1586),  NFT, BAC and the Bank took the

position that:

> **Griffith is not, and was not, a Nations Funds shareholder**. Notwithstanding
> Griffith's attempts in the Class Complaint to imply that she purchased
> Nations Funds herself, see id. ¶ 13, her certification reveals the reality:
> "Bank of America, N.A. purchased on multiple occasions varying amounts
> the shares of [Nations funds.]" Griffith Cert. ¶ 4. Because they are **neither
> purchasers nor owners of the mutual fund shares**, neither Griffith nor the
> putative members of her sub-class have standing to assert claims
> under the federal securities laws."

> [emphasis added].

Therefore, the Bank, BAC and NFT have taken the position that Plaintiffs herein (who

are in fact members of the Fiduciary Sub-Class being represented by Ms. Griffith in MDL

#1586) are neither purchasers, shareholders nor owners (i.e."holders") of the Nations Funds

shares.  Defendants, therefore, are judicially estopped in this Circuit from arguing in this case

that the Plaintiffs *are* purchasers, shareholders, owners or holders of the Nations Funds shares,

implicating the "in connection with" language in SLUSA, as this would be clearly inconsistent

with their earlier position. *See Hossaini v. W. Mo. Med. Ctr.,* 140 F.3d 1140, 1143 (8th

Cir.1998).

*Hossaini* is the Eighth Circuit's definitive analysis of the judicial estoppel doctrine. The

Court observed generally that judicial estoppel prohibits a party from taking inconsistent

positions in the same or related litigation. *See, Wyldes v. Hundley,* 69 F.3d 247, 251 n. 5 (8th

Cir.1995), *cert. denied,* 517 U.S. 1172, 116 S.Ct. 1578, 134 L.Ed.2d 676 (1996) (quoting *Morris

v. California,* 966 F.2d 448, 452 (9th Cir. 1991). The Defendants here can only assert an

argument as to SLUSA applicability if they take an "about face" on their position in MDL #1586

and the positions they have taken in their Motion and Memorandum. The Eighth Circuit has

clearly said that they may not do so.

Hossaini points out that the underlying purpose of the doctrine is "to protect the integrity

of the judicial process." *Total Petroleum, Inc. v. Davis,* 822 F.2d 734, 737 n. 6 (8th Cir.1987).

*See also Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.,* 4 F.3d 605, 609 (8th Cir.1993)

(applying judicial estoppel in a diversity case).  In *Hossaini*, the Court indicated that the Eighth

Circuit had

> " **not heretofore defined with precision the elements of the doctrine.** Among
> the circuits that have recognized judicial estoppel, **the apparent majority view is
> that the doctrine applies only where the allegedly inconsistent prior assertion
> was accepted or adopted by the court in the earlier litigation**. *See Maharaj v.
> Bankamerica Corp.,* 128 F.3d 94, 98 (2d Cir.1997); *Gens v. Resolution Trust
> Corp.,* 112 F.3d 569, 572-73 (1st Cir.1997), *cert. denied,* 522 U.S. 931, 118 S.Ct.
> 335, 139 L.Ed.2d 260 (1997); *Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir.1996),
> *cert. denied,* 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997); *Warda v.
> Commissioner of Internal Revenue,* 15 F.3d 533, 538 (6th Cir.1994); *Levinson v.
> United States,* 969 F.2d 260, 264-65 (7th Cir.1992); *United States for Use of
> American Bank v. C.I.T. Constr.,* 944 F.2d 253, 258-59 (5th Cir.1991). **Under the
> minority approach, on the other hand, judicial estoppel applies even where
> no court has accepted the prior assertion if the party taking contrary
> positions demonstrates an intent to play "fast and loose" with the courts.** *See
> Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 361 (3d
> Cir.1996).

The *Hossaini* Court ultimately concluded, in that case, it was

> "**unnecessary to choose between the foregoing views….** Under either
> formulation, judicial estoppel is limited to those instances in which a party takes a
> position that is clearly inconsistent with its earlier position. *See Linan-Faye
> Const. Co. v. Housing Auth. of Camden,* 49 F.3d 915, 933 (3d Cir.1995).

*Hossaini* has since come before the Eighth Circuit a number of times since 1998 and has

been re-affirmed in each instance, most recently in *Prudential Ins. Co. of America v. National

Park Medical Center, Inc.*, 413 F.3d 897, 905 (8th Cir. 2005); *See also, Fortune Funding, LLC v.*

*Ceridian Corp.*, 368 F.3d 985, 990 (8th Cir 2004); *Leonard v. Southwestern Bell Corp. Disability Income Plan,* 341 F.3d 696, 702 (8th Cir. 2003); *In re Wedemeier,* 237 F.3d 938, 941 (8th Cir. 2001); *U.S. ex rel. Gebert v. Transport Administrative Services,* 260 F.3d 909, 917 (8th Cir. 2001); *Pickens v. Soo Line Railroad Co*., 264 F.3d 773, 779 (8th Cir. 2001).  Thus, Defendants are clearly estopped from taking a contradictory position to the one they have taken to an identically situated plaintiff, Ms. Griffith, a member of the Class herein.

The case of *Trustees of Hotel Employers v. Amivest*, 733 F. Supp. 1180 (N.D. Ill. 1990) is also instructive in the analysis of the "in connection with" requirement.  In *Amivest*, pension fund trustees brought suit against an investment advisor alleging securities fraud relating to the advisor's investments in mutual funds because the advisor received substantial concealed commissions from the funds.  The Court dismissed the §10b-5 claims of plaintiffs on the basis that the fraud alleged centered on the fiduciary and contractual obligations the advisor owed to the funds and "the connection of the mutual funds to the alleged fraud is only tangential.  Rule 10b-5 and § 10(b) proscribe fraud in connection with the purchase or sale of a security; it is not enough that the fraud occurs in a transaction of which a security is a part." (citations omitted). *Id.* at  p. 1185. *See also, Congregation of Passion, Holy Cross v. Kidder Peabody*, 800 F. 2d 177 (7th Cir. 1986).

In *Amivest,* like here, "the fraud alleged . . . relates only to their relationship with Amivest. The alleged fraud was not related to a decision whether or not to invest in a particular security." *Id.* Moreover, because the plaintiffs in *Amivest* had no investment authority, like here, any information, disclosed or concealed, would not have affected the *investment* decisions made by the defendant therein. *See*, *LHLC Corp. v. Cluett, Peabody & Co., Inc*. 842 F.2d 928, 931, *cert. den*ied, 109 S.Ct. 311 (7th Cir. 1988).  "A fraud that does not affect the decision to make the

investment in which the loss complained of is incurred is not actionable under Rule 10b-5."
*Latigo Ventures v. Laventhol & Horwath,* 876 F.2d 1322 (7th Cir. 1989).

As Defendants assert that Plaintiffs similarly had no authority over the mutual fund investments, the breach of fiduciary duty claims relating to Defendants' failure to disclose certain information related the Bank's Nations Funds investments are not "in connection with" the purchase of securities.  Therefore, arguments that SLUSA pre-empts Plaintiffs' breach of fiduciary claims are misplaced.

All of the cases cited by the Defendants (other than *Spencer*), which they claim support SLUSA pre-emption for this case, were brought by purchasers, investors or holders of securities who alleged misrepresentations were made to them integral to their own transactions. In this case, **no allegation is made by the Plaintiffs** that the misrepresentations or omissions of facts by the Defendants to the Plaintiffs resulted in any one of the Plaintiffs deciding to hold and not sell Nations Funds shares in their fiduciary accounts.  Indeed, as Defendants concede, the Plaintiffs have and had no power to control such investments. The Plaintiffs are not purchasers, nor are they holders in the sense that they have retained securities based on any misrepresentation made by the Defendants.  Rather, they are passive victims of the Bank's breaches of fiduciary duty, which has unjustly enriched all Defendants.

*Dabit* recites that a stated purpose of SLUSA is "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the 1995 Act. SLUSA § 2(5), 112 Stat. 3227." *Dabit*, at. 151.  SLUSA's legislative history describes the statute's purpose as follows: "[T]o protect the interest of shareholders and employees of public companies that are the target of 'strike' suits. H.R. Conf. rep. 105-803 (1998) 13. "Strike suits" have been described as "shareholder derivative actions begun with the hope of winning large