UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE SIEPEL; PHYLLIS SIEPEL; H. CRAIG WILLIAMS; ELINOR TAMA WILLIAMS; CONSTANCE ELAINE WILLIAMS; DONNA N. REINKE; ROBERT COHEN; CARL M. PAGE and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; COLUMBIA FUNDS SERIES TRUST f/k/a NATIONS FUNDS TRUST; COLUMBIA MANAGEMENT ADVISORS, LLC, COLUMBIA MANAGEMENT DISTRIBUTORS, INC., BANC OF AMERICA INVESTMENT SERVICES, INC. AND BANK OF AMERICA CORPORATION,<br><br>    Defendants. | Case No. 4:05-CV-2393 (PAM) |

**REPLY OF DEFENDANTS BANK OF AMERICA, N.A., COLUMBIA MANAGEMENT ADVISORS, LLC, COLUMBIA MANAGEMENT DISTRIBUTORS, INC., BANC OF AMERICA INVESTMENT SERVICES, INC. AND BANK OF AMERICA CORPORATION IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

## INTRODUCTION

In their opposition to the Bank Defendants' Motion to Dismiss, Plaintiffs do not address and indeed just ignore many of Defendants' arguments warranting dismissal of this case. For instance, Plaintiffs raise *no* opposition to Defendants' argument that this Court should decline jurisdiction of this case as a result of Plaintiffs and their counsel's judge shopping during their four year litigation odyssey against Bank of America, filing eight cases and fifteen complaints in four states, with five dismissals, before more than 10 judges. Plaintiffs in this action alone have filed three actions and seven complaints. The court records cannot be disputed, and undoubtedly, Plaintiffs did not offer any opposition because there is none to offer.

Additionally, as outlined in Defendants' Motion to Dismiss, Plaintiffs' federal law claims are without merit. Rather than address *any* of Defendants' arguments as to these claims,

Plaintiffs declare that the claims *for now* are "withdrawn *without prejudice*" holding the door open for Plaintiffs' counsel to reassert these claims if the mood strikes them.  Having failed to address Defendants' arguments, Plaintiffs' abandoned federal claims should be dismissed *with* prejudice.

The only issue Plaintiffs brief is whether their state law claims are preempted under the Securities Litigation Uniform Standards Act ("SLUSA").  In opposition, Plaintiffs claim that this case is "not based on material representations and non-disclosures … in connection with the sale of securities," and therefore SLUSA does not apply.  Yet their Amended Complaint refers to Defendants' failure to disclose material facts or misrepresentations in connection with the purchase of mutual funds more than *50* times.[1]  Further, just three months ago a district court rejected Plaintiffs' very arguments in a case squarely on point.  Spencer v. Wachovia Bank, N.A., No. 05-81016-CIV-RYSKAMP/VITUNAC (S.D. Fla. May 10, 2006).  Plaintiffs claim that the scope of SLUSA preemption is narrow, citing decisions rendered before the United States Supreme Court's decision in Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 126 S. Ct. 1503 (2006), broadening the scope of SLUSA preemption.  As the Court confirmed in Spencer, this is *exactly* the kind of case that SLUSA is intended to preempt.

It is undisputed that Plaintiffs have forum shopped.  It is undisputed that Plaintiffs' federal claims fail as a matter of law.  Supreme Court precedent, confirmed in a case squarely on point decided just three months ago, mandates dismissal of Plaintiffs' remaining claims.  The Bank Defendants' Motion to Dismiss should be granted.

---

[1]  For example, Paragraph 3 of the Amended Complaint states in part: "***In connection with sales of the shares in these proprietary mutual funds to the accounts*** of Plaintiffs and all members of the Class as defined below, the Bank, NFT and the Bank Subsidiaries ***failed to exercise good faith and fully disclose all material facts and failed to fully disclose all material facts to them and/or exercise reasonable care to avoid misleading them as more fully set forth below.***"  Amended Complaint ¶3 (emphasis added).

### A. Given Plaintiffs' Lack of Opposition, the Amended Complaint Must Be Dismissed

In opposing a motion to dismiss, silence is not golden. Indeed, if a plaintiff fails to respond to arguments raised in a dispositive motion, the court should dismiss the claims. See, e.g., Figueroa v. U.S. Postal Service, 422 F. Supp.2d 866, 879 (N.D. Oh. 2006) (dismissing claims plaintiffs failed to address in motion to dismiss with prejudice); Scognamillo v. Credit Suisse First Boston LLC, No. C03-2061 TEH, 2005 WL 2045807, at *11 (N.D. Cal. Aug. 25, 2005) (plaintiffs' failure to respond to arguments warrants dismissal with prejudice); Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("If the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case."); Newdow v. Cong. of the United States, No. S-05-2339, 2006 U.S. Dist. LEXIS 38588, at *6 n. 5 (D. Cal. June 12, 2006) (interpreting plaintiff's silence as a non-opposition to defendants' motions and granting dismissal).

In repeatedly summarizing Defendants' arguments raised in their Motions to Dismiss, Plaintiffs try to focus the court on arguments they believe Defendants have raised to disguise the fact they have simply ignored many of Defendants' arguments. Plaintiffs' Opposition 1-2, 15-16. Plaintiffs cherry-picked the arguments they addressed and proffered absolutely no defense to other arguments raised in Defendants' motions. As outlined in the Bank Defendants' Memorandum, by filing these cases, voluntarily dismissing them to avoid court-imposed deadlines and unfavorable rulings, and reasserting those dismissed claims in other cases and in other jurisdictions, Plaintiffs and their attorneys have engaged in impermissible judge shopping. Plaintiffs offer no defense to this argument because they have none.

For example, the Williams Plaintiffs in this action, Craig, Tama and Constance Williams, first initiated this action in Florida state court in December, 2002. After three years of discovery, the Bank moved to strike the class allegations. In response, Plaintiffs pleaded for more time and a class certification hearing promising the Court that they then would be ready to move for certification. The Court scheduled a hearing date and ordered Plaintiffs to move for certification

along with a proffer of all evidence by November 30, 2005.  Plaintiffs served additional, extensive discovery only to voluntarily dismiss the action on November 29, 2005 – one day before their class certification deadline.  Thirty days later, the Williams Plaintiffs resurfaced as putative class representatives in this action to begin anew, in another jurisdiction and before yet another judge.

Moreover, as further evidence of their judge shopping and contrary to the representations to this Court in their response, Plaintiffs' counsel did not dismiss the Williams action against Bank of America Corporation (BAC).  Instead, they are currently pressing the action before a new Florida state court judge, including again noticing the deposition of BAC's Chief Executive Officer – a discovery tactic which this Court has already denied.2  Indeed, Plaintiffs are improperly prosecuting the same action in two courts.  Such blatant forum and judge shopping should not be condoned, and this Court should decline jurisdiction of this action and dismiss the case.  See, e.g., Zografos v. Qwest Comms. Corp., 225 F. Supp.2d 1217, 1223-1224 (D. Or. 2002).  Plaintiffs offer no argument that would require a different result.

Plaintiffs also are mute as to Defendants' arguments that the federal claims should be dismissed with prejudice.  Indeed, cognizant that their securities law claims are time-barred and otherwise legally deficient, Plaintiffs refused to respond to Defendants' arguments and instead spent nearly 30 pages in their opposition brief arguing that this Court should circumvent SLUSA and inappropriately permit them to recast their securities law claims as state law class claims.  Their declaration that the federal law claims are withdrawn without prejudice to be reasserted at some future time should be of no moment.  Plaintiffs had more than 75 days to respond to ***all*** the arguments raised in Defendants' motion to dismiss and because they intentionally refused to do

---

2   At the time Plaintiffs voluntarily dismissed the action, Bank of America, N.A. was the only defendant.  BAC was granted summary judgment in May, 2005.  However, Plaintiffs appealed that decision on procedural grounds, and the case as to BAC was remanded to a new Florida state court judge in May, 2006.  In their voluntary dismissal notice as to the Bank, Plaintiffs excluded BAC from the dismissal hoping to keep their forum options open.

so they should be foreclosed from reasserting them.  Accordingly, this Court should dismiss Counts I-III of the Amended Complaint with prejudice.

> **B.     Plaintiffs' Class Claims are Preempted by SLUSA and Must Be Dismissed**

In arguing against SLUSA preemption, Plaintiffs rely only upon authority decided before the United States Supreme Court's decision in <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 126 S.Ct. 1503, 1514 (2006), and upon factual arguments which are simply inconsistent with the language in their many complaints, including their third proposed complaint.

First, Plaintiffs claim in their opposition that their Amended Complaint is "not a case about non-disclosures or misrepresentations" with respect to the sale of mutual funds; however, Plaintiffs' allegations defeat their own argument.  Notably, Plaintiffs' summary of their allegations at pages 16-18 of their Opposition includes only a single citation to one paragraph of their Amended Complaint.  Simply stated, Plaintiffs' summary of their case in their Opposition is inconsistent with the allegations in their complaints.  Indeed, the allegations in the Amended Complaint leave no doubt that the elements of SLUSA have been satisfied warranting preemption – particularly allegations that Defendants misrepresented or omitted a material fact "in connection with" the purchase or sale of a mutual fund.  Below are just a few of the allegations from Plaintiffs' 115-paragraph Amended Complaint which demonstrate that the complaint squarely rests upon alleged non-disclosures and misrepresentations:

- "***In connection with sales of the shares in these proprietary mutual funds to the accounts*** of Plaintiffs and all members of the Class as defined below, the Bank, NFT and the Bank Subsidiaries ***failed to exercise good faith and fully disclose all material facts and failed to fully disclose all material facts to them and/or exercise reasonable care to avoid misleading them as more fully set forth below.***"  Amended Complaint ¶3 (emphasis added).

- "***Nor did it disclose*** to the victims of the Conversions that the expenses ultimately paid by the Bank's fiduciary accounts from the use of Nations Funds would increase materially as a direct result of the Conversions, ***facts known to and concealed by the Defendants from the Nations Funds prospectuses and other Conversion Disclosure Documents (i.e. those documents disseminated by the Defendants in connection with the offering and sale of Nations Funds shares to the Bank's fiduciary accounts in connection with the Conversions)***."  Amended Complaint ¶9(d) (emphasis added).

- *"[D]efendants failed to disclose material facts* including, *inter alia*, the critical conflicts of interest that were embedded within the fiduciary, investment advisory and other services they provided and the other services they offered, particularly with respect to the purchases of Nations Funds for their accounts." Amended Complaint ¶9(e) (emphasis added).

- "that the *Nations Funds prospectuses distributed to Plaintiff Reinke in connection with the Estate's accounts were false and misleading in material respects as set forth below and did not adequately disclose to her "'the true direct and indirect expenses charged by Nations Funds'"* Amended Complaint ¶26(a) (emphasis added).

- "Further, *as with the prospectuses and other documents provided to beneficiaries and co-fiduciaries, the Bank concealed* all the benefits it and its affiliates would derive from the Conversions, including those derived from "bulking-up" the Nations Funds and from utilizing the Nations Funds to benefit corporate customers of the Defendants at the expense of the holders of Nations Funds shares." Amended Complaint ¶36 n.4 (emphasis added).

Further, Plaintiffs' Opposition is replete with references that their allegations concern Defendants' "failure to disclose" and that Defendants' affirmative misrepresentations and disclosures in connection with the purchases of shares of mutual funds form the crux of their claims. Plaintiffs' Opposition 12, 14. This is precisely the type of claim SLUSA is intended to preempt. See Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp.2d 684, 693 (S.D.N.Y. 2006) (holding that dismissal on SLUSA grounds appropriate where plaintiff's claim is a "securities fraud wolf dressed up in a breach of contract sheep's clothing.").

For this same reason, Plaintiffs' proposed Second Amended Complaint fares no better. Plaintiffs "Proposed Second Amended Complaint" attempts to disguise their misrepresentations and omission allegations by simply rephrasing them as a failure to disclose. For example, the Proposed Second Amended Complaint states, "at no time has the Bank distributed to plaintiffs any statement fully and completely disclosing the wrongdoing described below including, *inter alia*, its conflicts of interest associated with the use of Nations Funds in its fiduciary accounts." Proposed Second Am. Compl. at ¶ 9(d); see also ¶¶ 19, 20, 26(a), 39, 40, 41, 48(c), 48(d), 49, 50, and 51. Changing the wording of their allegations does nothing to change that fact that those allegations are grounded on alleged misrepresentations and omissions and are not "ancillary" but rather central to their claims. Where, as here, Plaintiffs make a transparent attempt to dress a

securities fraud claim in state law clothing, the claims are preempted, and SLUSA requires that they be dismissed.

Next, Plaintiffs cite to a number of pre-<u>Dabit</u> cases which narrowly construed the "in connection with" requirement of SLUSA to purchasers of securities. Plaintiffs claim that because Plaintiffs did not "hold" the securities and were not direct purchasers, SLUSA does not apply. This is precisely the argument the United States Supreme Court rejected in <u>Dabit</u>. There the Court clarified that class claims by ***non-purchasers*** that "coincide" with the purchase or sale of a covered security are preempted by SLUSA. <u>See</u> Dabit, 126 S.Ct. 1503, 1513-14 (2006) ("Under our precedents, it is enough that the fraud alleged "coincide" with a securities transaction--whether by the plaintiff or by someone else."). The Court further held that "for purposes of SLUSA pre-emption that distinction is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale of securities.'" <u>Id.</u> at 1515.

On the heels of the <u>Dabit</u> decision, the Court in <u>Spencer v. Wachovia Bank</u> held that a trust beneficiary's state law claims concerning investment of trust assets in affiliated mutual funds satisfied the "in connection with a purchase or sale of security" requirement of SLUSA warranting dismissal of the state law class claims with prejudice. <u>Spencer v. Wachovia Bank, N.A.</u>, No. 05-81016-CIV-RYSKAMP/VITUNAC (S.D. Fla. May 10, 2006). The plaintiff in <u>Spencer</u> stood in the shoes of Plaintiffs here – she was a beneficiary of a trust challenging the Bank's decision to invest certain trust assets in affiliated mutual funds. The Court in <u>Spencer</u> found the plaintiff's argument that she did not purchase the affiliated mutual fund shares for the trust and therefore could avoid SLUSA to be of no moment. According to the Court in <u>Spencer</u>, the "Supreme Court held that SLUSA preempted the claims of the broker-owners and the client-owners even though the client-owners were not the purchasers of the securities." Slip op. at 12.

In rejecting the very arguments Plaintiffs raise herein that they can avoid SLUSA because they did not purchase the securities and had no authority to do so, the Court in <u>Spencer</u> stated:

> Spencer essentially alleges that Wachovia schemed to mislead trust beneficiaries about the funds in which Wachovia intended to invest the trust assets, as well as the fees and expenses associated with those transactions.  The Complaint alleges that this scheme was premised on, and furthered by, the purchase of Evergreen Funds.  Spencer is not merely a passive holder of the securities; she ties her alleged injury directly to what she sees as the "forced purchase" of Evergreen Funds with trust assets. . . .  Thus, the alleged breach of fiduciary duty, as well as the claims for unjust enrichment and money had and received, coincide with the scheme to invest trust assets in Evergreen Funds and collect fees related to those investments.  Spencer claims entitlement to any investment losses resulting from investment of trust assets in Evergreen Funds, as well as reimbursement of the "other expenses."  These damages also "connect" the allegations of misrepresentations about Evergreen Funds and the fees associated with those funds,to transactions in securities.

Slip op. at 12-13.  <u>See also</u> <u>In re Salomon Smith Barney Mutual Fund Fees Litigation</u>, No. 04 Civ. 4055 (PAC), 2006 WL 2085979, at **18-19 (S.D.N.Y. July 26, 2006) (dismissing plaintiffs' state law breach of fiduciary claims ***with prejudice*** applying <u>Dabit's</u> broad interpretation of SLUSA's "pre-emptive" sweep where allegations "coincide" with challenged securities transaction).

Plaintiffs' musical complaints in this action confirm the application of SLUSA.  When faced with SLUSA preemption in response to their first complaint, Plaintiffs amended their complaint adding securities law claims, thereby conceding that SLUSA controls here.  In response to those claims, Defendants pointed out, among other things, that Plaintiffs' securities law claims are time-barred and that their Amended Complaint failed to meet the strict pleading requirements of SLUSA.  Realizing that their securities law claims are in peril, Plaintiffs retreated, seeking to withdraw their securities law claims to try again with the state law class claims.  Plaintiffs' plea now is that because they have acquiesced and withdrawn their securities law claims, the Court should let them circumvent SLUSA and proceed with their state law class claims.  The law does not work that way.  Plaintiffs' state law class claims are preempted under SLUSA.  The fact that the securities claims are time-barred or otherwise fail as a matter of law

does not give Plaintiffs an escape hatch to evade SLUSA and proceed with their state law class claims.

Accordingly, Plaintiffs' state law class claims should be dismissed.

### C. Plaintiff Cohen's Claims Should be Dismissed Because His Claims are Subject to Mandatory Arbitration

Plaintiffs misstate the standard for deciding a motion to compel arbitration in Missouri. Plaintiffs do correctly note that federal courts must look to relevant state law to determine whether a valid arbitration agreement exists and to decide whether to compel arbitration. See Plaintiffs' Opposition at section D, subsection 2. Plaintiffs then cite cases applying Pennsylvania law in support of their contention that any doubts should be resolved against arbitration. That is not the correct standard. Under Missouri law, a "motion to compel arbitration of a particular dispute should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 429 (Mo. 2003) (per curiam). In fact, the Missouri Supreme Court has stated that "[d]oubts as to arbitrability should be resolved in favor of coverage." Id.

Plaintiffs make three principal arguments against arbitration of Dr. Cohen's claims. First, Plaintiffs claim that arbitration clauses are unenforceable "in the context of a fiduciary relationship." Second, they contend that the arbitration clause is unenforceable because it allegedly was not disclosed to Dr. Cohen. Third, Plaintiffs argue that the arbitration clause is unenforceable because it is contained in a "contract of adhesion." None of these arguments has any merit.

Contrary to Plaintiffs' first argument, numerous courts have upheld and enforced arbitration agreements in the context of a fiduciary relationship. See, e.g., Nettleton v. Edward D. Jones & Co., 904 S.W.2d 409 (Mo. Ct. App. 1995) (staying litigation between investor and brokerage firm in favor of arbitration, pursuant to contractual agreement); Gaines v. Fin.

Planning Consultants, Inc., 857 S.W.2d 430 (Mo. Ct. App. 1993) (affirming award of arbitration panel in dispute between investor and brokerage firm); Dinsmore v. Piper Jaffray, Inc., 593 N.W.2d 41, 45-47 (S.D. 1999).  There is no heightened duty for a fiduciary to make special efforts to disclose an arbitration agreement where these provisions are conspicuous and clear on their face, as they are here.  See generally State ex rel. PaineWebber, Inc. v. Voorhees,  891 S.W.2d 126 (Mo. 1995) (en banc) (enforcing investor's agreement to arbitrate dispute with securities broker and noting that broker's fiduciary duties did not include a duty to explain a conspicuous arbitration clause); Blount v. Smith Barney Shearson, Inc., 695 So.2d 1001, 1003-04 (La. Ct. App. 4th Cir. 1997).  Any obligation to make disclosure is satisfied by presentation of the document itself to the client.

     Plaintiffs' second argument fares no better.  As discussed above, the arbitration provision was prominently disclosed just above the signature line on the customer agreement and again in the attached Terms of Investment Services Agreement booklet which Dr. Cohen signed, and the law does not impose any additional burden to verbally disclose or explain the obligation to submit disputes to arbitration.  Dinsmore, 593 N.W.2d at 45-47; Blount, 695 So.2d at 1003-04.  Furthermore, Dr. Cohen cannot resist arbitration by pleading ignorance of the existence or meaning of the arbitration clause.  "Missouri has long recognized that a person signing an agreement has a duty to read it."  Farmland Industries, Inc. v. Bittner, 920 S.W.2d  581, 584 (Mo. App. 1996).  Accordingly, without a showing of fraud, "a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs."  Id.

     Plaintiffs do not and cannot dispute that Dr. Cohen signed the agreement, which contains an arbitration provision that is clear and conspicuous on its face.  See Declaration of Robert S. Cohen at ¶ 4, attached as Exhibit 7 to Plaintiffs' Opposition.  Dr. Cohen's understanding or lack of understanding of the agreement simply is not relevant because he is presumed to have read and understood the content of the documents he signed.  Id.  Under Missouri law, Dr. Cohen "would reasonably expect disputes involving whether either party was in default under its terms

to be subject to arbitration rather than litigation." <u>Green Point Credit, L.L.C. v. Reynolds</u>, 151 S.W.3d 868, 875 (Mo. App. 2004).

Plaintiffs' third argument is also flawed because Missouri law does not treat arbitration agreements as "contracts of adhesion." As one court observed, "[a]n agreement to settle disputes of that nature by arbitration instead of litigation is not unreasonably unfair, even between parties of unequal bargaining power. A provision so requiring is not unenforceable on the basis that it is a contract of adhesion." <u>Green Point Credit</u>, 151 S.W.3d at 875. Accordingly, Dr. Cohen's claims are subject to arbitration.[3]

## **CONCLUSION**

Given that it is undisputed that Plaintiffs and their counsel have engaged in judge shopping and that the federal law claims are without merit, the Amended Complaint should be dismissed with prejudice. Plaintiffs' state law class claims are preempted by SLUSA and the amendment they propose is futile. Accordingly, these class claims should be dismissed with prejudice.

          Respectfully submitted,

          BRYAN CAVE LLP

          By: /s/ Jeffrey S. Russell
          Edward L. Dowd, Jr. #28785
          Jeffrey S. Russell #4232
          Darci F. Madden #95927
          One Metropolitan Square
          211 N. Broadway, Suite 3600
          St. Louis, MO  63102
          Telephone: 314.259.2000
          Facsimile:  314.259.2020

---

[3]   Plaintiffs' final suggestion that the case continue as to Bank of America Corporation ("BAC") even if Cohen's claims against the Bank are subject to arbitration should likewise be rejected. Indeed, such a procedure would amount to a waste of judicial resources where Plaintiffs' claims center upon the Bank, not BAC, and would be addressed in arbitration. Accordingly, dismissal, or at the very least a stay, is proper as to the claims against BAC.

Gregory B. Jordan
Mary J. Hackett
Christopher J. Soller
Sharon L. Rusnak
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone: 412.288.3131
Facsimile:  412.288.3063

Attorneys for Defendants Bank of America, N.A., Bank of America Corporation, Columbia Management Advisors, LLC, Columbia Management Distributors, Inc., and Banc of America Investment Services, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served this 14th day of August, 2006 upon the following counsel of record by the Court's electronic filing system:

>Steven M. Hamburg, Esq.
>Holly M. McIntyre, Esq.
>Summers, Compton, Wells & Hamburg, P.C.
>8909 Ladue Road
>St. Louis, MO  63124
>
>Richard D. Greenfield, Esq.
>Greenfield & Goodman LLC
>7426 Tour Drive
>Easton, MD  21601
>
>Amy Boomhouwer, Esq.
>Gancedo & Nieves LLP
>144 W. Colorado Boulevard
>Pasadena, CA  91105
>
>Stephen M. Colangelo, Esq.
>Morrison & Foerster LLP
>1650 Tysons Blvd., Suite 300
>McLean, VA  22102
>
>Barry A. Short
>Louis, Rice & Fingersh, L.C.
>500 North Broadway, Suite 2000
>St. Louis, Mo  63102

>/s/ Jeffrey S. Russell
>Counsel for Defendants Bank of America, N.A., Bank of America Corporation, Columbia Management Advisors, LLC, Columbia Management Distributors, Inc., and Banc of America Investment Services, Inc.

Date:  August 14, 2006