UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

George Siepel et al.,                                     Civil No. 05-2393 (PAM)

                    Plaintiffs,

v.

Bank of America, N.A. et al.,

                    Defendants.

_____

This matter is before the Court on several Motions.[1]  For the following reasons, the

Court grants in part Defendants' Motion for Stay and for Costs and Fees, denies Plaintiffs'

Motions for Sanctions, grants Defendants' Motions to Dismiss, and denies Plaintiffs' Motion

for Leave to file a Second Amended Complaint.

**BACKGROUND**

**A.      The Amended Complaint**

        Plaintiffs are present or former beneficiaries of trusts and other financial accounts

maintained by Defendant Bank of America, N.A. ("Bank").  They commenced this action

on behalf of themselves and the following putative class:

> All beneficiaries, owners, and beneficial owners, or principals of trusts,
> accounts or other entities for which the Bank or any of its parents,
> subsidiaries, affiliates, predecessors, successors or assigns acted as a trustee,
> fiduciary or agent and that were directly or indirectly invested in Nations
> Funds Mutual Funds at any time from September 8, 1998 to the present.

(Am. Compl. ¶ 61.)

_____

        [1] This Court is assigned to this case pursuant to 28 U.S.C. § 294(c).

Defendant Bank of America Corporation is a financial holding company with a number of subsidiaries, including the Bank. Defendant Columbia Management Advisors LLC; Defendant Columbia Management Distributors, Inc.; and Defendant Banc of America Investment Services, Inc. are subsidiaries of the Bank (collectively referred to as "Bank Subsidiaries").

Defendant Columbia Funds Series Trust, formally known as Nations Funds Trust, is an investment company and Delaware statutory trust that offers various mutual funds, including Nations Funds.[2] It contracts with Columbia Management Advisors and Columbia Management Distributors for administrative, distribution, and advisory services. Plaintiffs allege that the Bank, as a major shareholder of numerous Nations Funds, controlled Nations Funds Trust.

In addition, Plaintiffs allege that Defendants wrongfully transferred fiduciary account assets from common trust funds to Nations Funds, charged greater fees, and misrepresented that the Bank provided individualized fund management. (See, e.g., id. ¶ 9.) Plaintiffs further allege that disclosures relating to the transfers were inadequate and misrepresented the benefits of Nations Funds. (Id. ¶¶ 36-44.) In particular, Plaintiffs contend that Defendants should have disclosed that the transfers involved self-dealing and conflicts of interest because the Bank had a direct financial interest in selling Nations Funds products and did not consider any non-proprietary mutual funds. (Id. ¶¶ 3, 9, 39-50.) Plaintiffs also allege that Defendants failed to disclose that the Bank did not negotiate "in any significant

---

[2] The funds are now known as Columbia Funds, but were known as Nations Funds at times relevant to the Amended Complaint.

way" the investment service fees charged to Nations Funds, and that greater fees would result from the transfers. (Id. ¶ 56; see also id. ¶¶ 3, 9, 49, 52.) As a result, Defendants allegedly forced the sale of Nations Funds shares upon Plaintiffs. (Id. ¶ 9.)

**B.    Prior Actions**

1.    <u>Williams</u>

This action is similar to five actions previously filed by Plaintiffs and their counsel. In December 2002, Plaintiffs' counsel filed <u>Williams et al. v. Bank of America et al.</u>, a putative class action, in Florida state court. The plaintiffs in <u>Williams</u>, who are now named Plaintiffs in this action, were beneficiaries of a trust that the Bank administered until 2000. As in this action, the <u>Williams</u> plaintiffs alleged that investment of their trust assets in Nations Funds was a breach of fiduciary duty and allowed for unjust enrichment by the Bank and Bank of America Corporation. The <u>Williams</u> plaintiffs sought to represent the same class that Plaintiffs seek to represent in this action.

The parties engaged in three years of discovery in <u>Williams</u>. Thereafter, the court established a November 30, 2005 deadline to file a motion for class certification. A day before the deadline, the plaintiffs filed a notice of voluntary dismissal. As grounds for dismissal, the plaintiffs stated that they were members of the putative classes in  <u>Kutten et al. v. Bank of America, N.A. et. al.</u> (<u>Kutten I</u>) and <u>Reinke et al. v. Bank of America, N.A. et al.</u>, lawsuits that Plaintiffs' counsel filed while <u>Williams</u> was pending, and that their claims were fully protected by those actions. Notwithstanding that assertion, the <u>Williams</u> plaintiffs then filed this action.

2. <u>Arnold</u>

In November 2003, Plaintiffs' counsel commenced <u>Arnold v. Bank of America, N.A.</u> <u>et al.</u> in the Central District of California. The <u>Arnold</u> complaint asserted the same causes of action asserted in <u>Williams</u> and sought to represent the same class. After the <u>Arnold</u> court established a class certification deadline, Plaintiffs' counsel sought to transfer <u>Arnold</u> to the Eastern District of Missouri to consolidate <u>Arnold</u> with <u>Kutten I</u>. Alternatively, Plaintiffs' counsel moved to voluntarily dismiss the case because <u>Kutten I</u> was "a nearly identical class action" and Mary Ann Arnold, the named plaintiff in that action, had joined <u>Kutten I</u>. The <u>Arnold</u> court granted the voluntary dismissal on May 13, 2004.

3. <u>Kutten I</u>

In February 2004, Plaintiffs' counsel commenced <u>Kutten I</u> in the Eastern District of Missouri. Two of the named plaintiffs, Mary Ann Arnold and Elsie Mahler Scharff, brought the putative class action on behalf of themselves and a purported class. In addition, Ellen Jane Kutten asserted claims on behalf of herself and her daughters. The factual allegations in the amended complaint essentially mirror the allegations in the Amended Complaint in this action. The <u>Kutten I</u> amended complaint asserted fifteen claims, including breach of fiduciary duty, breach of contract, unjust enrichment, and violations of various California and Missouri statutes. On May 26, 2006, this Court dismissed the action without prejudice, finding that the plaintiffs failed to satisfy the amount-in-controversy requirement under 28 U.S.C. § 1332(a).

4. <u>Barnhart</u>

In August 2004, with <u>Williams</u> and <u>Kutten I</u> still pending, Plaintiffs' counsel commenced <u>Barnhart et al. v. Bank of America, N.A. et al.</u> in the Eastern District of Missouri. The <u>Barnhart</u> complaint sought to represent the same class and asserted similar causes of action as <u>Williams</u> and <u>Kutten I</u>. In early 2005, the court established a class certification deadline of April 15, 2005. In response, Plaintiffs' counsel moved to voluntarily dismiss the case, explaining that the plaintiffs wanted to pursue their claims in <u>Kutten I</u> because both cases presented common factual and legal issues. On April 19, 2005, the court dismissed <u>Barnhart</u>.

5.    <u>Reinke</u>

In December 2004, Plaintiffs' counsel filed <u>Reinke</u> in the Eastern District of Missouri. The named plaintiffs, Donna N. Reinke and Robert Stuart Cohen, were beneficiaries of an estate and other investments that were administered by the Bank. They asserted the same claims and sought to represent the same class as the previous actions. On December 16, 2005, the court dismissed <u>Reinke</u> for lack of subject matter jurisdiction because the plaintiffs failed to satisfy the amount-in-controversy requirement under 28 U.S.C. § 1332(a). Both Reinke and Cohen are named Plaintiffs in this action.

6.    <u>Kutten II</u>

In June 2006, Plaintiffs' counsel filed a new action to cure the jurisdictional deficiencies in <u>Kutten I</u> and to name additional individuals as plaintiffs. The initial complaint asserted six federal securities law claims, as well as claims of breach of fiduciary duty, aiding and abetting, unjust enrichment, and violations of various California and

Missouri statutes. In response to a motion to dismiss, the plaintiffs filed an amended complaint, which withdrew the federal securities law claims and added other state law claims. Thereafter, the defendants filed a motion to strike the amended complaint. That motion is currently pending before this Court.

## DISCUSSION

### A.  Motion for Stay of Proceedings and for Costs and Fees

Relying on Federal Rule of Civil Procedure 41(d), the Bank asks the Court to award its costs and attorneys' fees incurred in defending <u>Williams</u>, issue a stay pending compliance with that order, and dismiss this action if Plaintiffs do not comply with the order. Defendants seek $71,972.79 in costs and $923,990.35 in attorneys' fees and expenses incurred in defending <u>Williams</u>.

Federal Rule of Civil Procedure 41(d) provides:

> If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Fed. R. Civ. P. 41(d). The award of costs under Rule 41(d) is intended to deter forum shopping and vexatious litigation. <u>See</u> <u>Simeone v. First Bank Nat'l Ass'n</u>, 971 F.2d 103, 108 (8th Cir. 1992). No showing of bad faith is required. <u>See</u> <u>Rogers v. Wal-Mart Stores, Inc.</u>, 230 F.3d 868, 874 (6th Cir. 2000); <u>Esquivel v. Arau</u>, 913 F. Supp. 1382, 1388 (C.D. Cal. 1996). Rather, the moving party need only establish that: (1) a plaintiff's previous action was dismissed; (2) a second action was commenced that is based upon or includes the same

claim against the same defendant; and (3) there are costs and attorneys' fees incurred by the defendant in the prior action that will not be useful in the newly-filed litigation. Fed. R. Civ. P. 41(d); Copeland v. Hussman Corp., No. 06-839, 2006 WL 3393698, at *9 (E.D. Mo. Oct. 26, 2006) (awarding fees and costs for work that was useless in second action).

Plaintiffs do not dispute that Rule 41(d) applies but submit that an award of costs and fees is inappropriate for several reasons. First, they argue that Defendants stonewalled discovery in Williams by lodging baseless objections, canceling depositions, and producing an unwieldy volume of documents. The Court notes, however, that Plaintiffs never filed a discovery motion in Williams to challenge the tactics they now assert were improper.[3] Moreover, Defendants did not impede discovery. Their discovery responses were reasonable, and although one deposition was canceled because the deponent had a family emergency, Defendants attempted to reschedule the deposition by offering five alternative dates.

Second, Plaintiffs contend that the discovery in Williams (as well as in Kutten I and Reinke) may be used in this case and in Kutten II. However, defense counsel submitted a detailed affidavit that distinguishes work specific to Williams. (Jan. 31, 2006 Hackett Aff. ¶¶ 3-9.) Indeed, the affidavit explains that defense counsel excluded approximately $1 million in fees for work that could be used in this case and Kutten II. (Id. ¶ 3.)

Third, Plaintiffs argue that Rule 41(d) provides only for an award of costs—not attorneys' fees. Courts disagree on this issue. See Rogers, 230 F.3d at 874-75 (conceding

---

[3] Plaintiffs filed twenty discovery motions in the various other actions but did not prevail on one.

that "the majority of courts find that attorney fees are available under Rule 41(d)," but nonetheless holding that the the plain language of Rule 41(d) does not include attorneys' fees). However, the Eighth Circuit Court of Appeals has awarded attorneys' fees under Rule 41(d). See Evans v. Safeway Stores, Inc., 623 F.2d 121, 122 (8th Cir. 1980);[4] see also Copeland, 2006 WL 3393698, at *8 (holding that a court may award attorneys' fees under Rule 41(d)). In addition, the Eighth Circuit has interpreted Rule 41(d) to include fees where the law underlying a plaintiff's claim permits recovery of those fees. See Simeone, 971 F.2d at 108. In this case, Florida statutes mandate that the Bank receive costs, including attorneys' fees, in Williams. See Fla. Stat. Ann. § 737.627(1).

Finally, Plaintiffs fault Defendants' litigation tactics. They emphasize that Defendants steadfastly refused to agree to consolidate cases. In addition, they assert that Defendants have repeatedly tried to intimidate Plaintiffs and their counsel, and characterize the Rule 41(d) Motion as yet another example of those maneuvers Plaintiffs rely on the same arguments in support of their Motions for Sanctions. As explained below, the Court rejects

---

[4] There is no substantive discussion in Evans. Rather, the Eighth Circuit merely awarded $200 in attorneys' fees. However, one district court within the Eighth Circuit has explained the logic behind the inclusion of attorneys' fees in Rule 41(d) costs:

> Surely, Congress intended that that provision of the federal rules have some "teeth," and it simply has none . . . if the costs that would have been recoverable under Rule 54(d) are all that the defendant can receive for years of fruitless litigation. The court believes and finds that Congress must have intended when Rule 41(d) was adopted to give the court discretion to include reasonable attorneys' fees in the "costs" that could be imposed.

Behrle v. Olshansky, 139 F.R.D. 370, 375 (W.D. Ark. 1991). The Court finds this reasoning very persuasive.

those arguments.

The record provides ample evidence that Plaintiffs are forum shopping. Plaintiffs' counsel began filing lawsuits against the Bank four years ago seeking to certify a nationwide class to challenge the practices at issue in this litigation. They filed five cases in four states prior to commencing this action. Three were voluntarily dismissed just before the class certification deadline. Two were dismissed because the plaintiffs failed to plead the amount-in-controversy requirements. The record shows that Plaintiffs have filed numerous cases, voluntarily dismissed them in order to avoid court-imposed deadlines and unfavorable rulings, and reasserted the dismissed claims in this case.

The record also shows that the Bank has appropriately separated the costs and fees it incurred in <u>Williams</u> from work that cannot be recycled in this action. Accordingly, the Court awards the Bank $71,972.79 in costs and $923,990.35 in attorneys' fees and expenses that it incurred in defending <u>Williams</u>.

**B.     Motions for Sanctions**

In response to Bank of America's Motion for Stay and for Costs and Fees, Plaintiffs filed two Motions for Sanctions.

    1.     <u>28 U.S.C. § 1927</u>

Plaintiffs' first Motion for Sanctions is brought under 28 U.S.C. § 1927, which provides: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The imposition of sanctions

under § 1927 is discretionary.  <u>Clark v. United Parcel Serv., Inc.</u>, 460 F.3d 1004, 1011 (8th

Cir. 2006).  Before awarding sanctions under § 1927, however, the Court must conclude that

defense counsel intentionally or recklessly disregarded their duties to the Court.  <u>Id.</u>

As in their response to Bank of America's Rule 41(d) Motion, Plaintiffs contend that

Defendants have engaged in discovery misconduct, wrongfully opposed consolidation of

pending cases, and intimidated Plaintiffs.  Accordingly, Plaintiffs ask the Court to award

them and their counsel "substantial appropriate monetary sanctions" and enjoin Defendants

from opposing class certification.

However, none of the conduct about which Plaintiffs complain occurred in this case.

Indeed, discovery has yet to commence.  More noteworthy is the fact that other courts have

uniformly rejected Plaintiffs' discovery challenges and demands, and have cautioned

Plaintiffs against making vague claims of misconduct.  For example, in <u>Kutten I</u>, Judge

Adelman found Plaintiffs' requests overly broad and unduly burdensome.  Likewise, the

courts in <u>Kutten I</u> and <u>Williams</u>, as well as the Judicial Panel on Multidistrict Litigation, have

all rejected Plaintiffs' attempts to consolidate.  Plaintiffs have failed to establish that defense

counsel has unreasonably or vexatiously increased litigation costs in this action.

Accordingly, the Court denies Plaintiffs' Motion for Sanctions under § 1927.

    2.    <u>Federal Rule of Civil Procedure 11</u>

Plaintiffs' second Motion for Sanctions is brought under Federal Rule of Civil

Procedure 11.  Rule 11 provides the Court discretion to impose sanctions if a party submits

a pleading that is presented for an "improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)-(c).

Plaintiffs contend that the Bank's Rule 41(d) Motion was intended to harass, intimidate, and needlessly increase litigation expenses. Plaintiffs advance the same arguments as were made in the Motion for Sanctions under § 1927. For the reasons explained above, the Court denies the Motion for Sanctions under Rule 11.

## C.    Motions to Dismiss

Defendants have moved to dismiss the Amended Complaint.[5] For the purposes of a motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations as true and grants every reasonable inference arising from the Amended Complaint favorably to Plaintiffs. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (citations omitted). The Court will dismiss a claim only if it appears beyond doubt that Plaintiffs can prove no facts that would entitle them to relief. Id. (citation omitted).

### 1.    Personal Jurisdiction over Columbia Funds Series Trust

Columbia Funds Series Trust argues that the Court lacks personal jurisdiction over it. A court should generally resolve any questions pertaining to jurisdiction before reaching issues on the merits. Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 764 (8th Cir. 2001). To survive the Motion, Plaintiffs must establish a prima facie case that personal jurisdiction exists. Digi-Tel Holdings, Inc. v. Proteq Telecomm. Ltd., 89 F.3d 519, 522 (8th

---

[5] Defendants move for dismissal on several grounds, including that Plaintiffs have engaged in judge shopping. Although the Court could dismiss this action on that ground, Zografos v. Qwest Comms. Corp., 225 F. Supp. 2d 1217, 1220-24 (D. Or. 2002) (court may decline jurisdiction over a case that has been voluntarily dismissed and refiled for the purpose of judge shopping), the Court opts to address the merits of the claims.

Cir. 1996). In determining whether Plaintiffs have set forth a prima facie case, the Court must view all evidence in the light most favorable to Plaintiffs and resolve all factual disputes in their favor. Id.

The Court can exercise personal jurisdiction over a nonresident defendant if (1) Missouri's long-arm statute, Mo. Ann. Stat. § 506.500, is satisfied;[6] and (2) the exercise of personal jurisdiction does not offend due process. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003). Because Missouri's long-arm statute extends the personal jurisdiction of Missouri courts as far as due process allows, the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. See Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002) (citations omitted).

Due process requires that the defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely

---

[6] The relevant provisions of Missouri's long-arm statute confer personal jurisdiction over "any cause of action arising from . . . (1) [t]he transaction of any business within this state; . . . [or] (3) [t]he commission of a tortious act within this state[.]" Mo. Ann. Stat. § 506.500.

random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citation omitted).

To determine the sufficiency of a defendant's conduct with the forum state, the Court examines five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action;[7] (4) the forum state's interest in the litigation; and (5) the convenience of the parties. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). The fourth and fifth factors are secondary and not determinative in the analysis. Minn. Min. & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 65 F.3d 694, 697 (8th Cir. 1995). In examining these factors, the Court may consider matters outside the pleadings. See Stevens v. Redwing, 146 F.3d 538, 543, 546 (8th Cir. 1998).

Columbia Funds Series Trust argues that it has insufficient contacts with Missouri to confer personal jurisdiction. In particular, it avers that it has no business offices in Missouri. (Carroll Decl. at ¶¶ 2-4.) However, Plaintiffs present evidence that Nations Funds Trust employed individuals in Missouri at times relevant to the Amended Complaint. (June 10, 2005 Hamburg Aff. ¶ 3, Ex. 1.) Indeed, they submit evidence that the Nations Funds mutual

---

[7] The third factor distinguishes general jurisdiction from specific jurisdiction. Wessels, Arnold & Handerson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432 (8th Cir. 1995). General jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any controversy, independent of whether the cause of action has any relationship to the defendant's activities within the state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Specific jurisdiction refers to jurisdiction over causes of action arising from or related to the defendant's actions within the forum state. Burger King Corp., 471 U.S. at 472-73.

funds were managed in Missouri. (Id. ¶ 4, Ex. 2; Ex. 8 (Johnson Dep.) at 55-56.) They also submit that work relating to the accounts at issue was conducted in Missouri. For example, a database that compiled information on the accounts was created in Missouri and information regarding the transfer of assets to Nations Funds mutual funds was disseminated from Missouri. (Id. ¶ 11.)

Resolving the factual disputes in favor of Plaintiffs, the Court finds that Nations Funds Trust conducted business in Missouri at times relevant to the Amended Complaint. "Jurisdiction exists if a party conducts business in the forum state in a continuous and systematic manner." See Guiness Import Co. v. Mark III Distributors, Inc., 153 F.3d 607, 614 (8th Cir. 1998) (citing Helicopteros Nacionales, 466 U.S. at 414). Moreover, the facts construed in favor of Plaintiffs indicate that this litigation arises from acts performed in Missouri relating to the transfer of assets to Nations Funds. Accordingly, the Court finds that Columbia Funds Series Trust had sufficient contacts with Missouri to confer personal jurisdiction.

2.    Federal Law Claims

The first three counts of the Amended Complaint allege violations of various federal securities laws. Defendants advance several arguments in favor of dismissal of these claims. Plaintiffs do not address the arguments. Instead, they ask the Court to dismiss the federal law claims without prejudice and allow Plaintiffs to file a Second Amended Complaint. For the reasons provided below, the Court denies leave to amend. Furthermore, because Plaintiffs utterly failed to address the arguments relating to the merits of the federal law

14

claims, the Court dismisses those claims with prejudice.  See Figueroa v. U.S. Postal Serv.,

422 F. Supp. 2d 866, 879 (N.D. Ohio 2006) (viewing the failure to respond to arguments in

a motion to dismiss as a concession that the claim fails as a matter of law); Scognamillo v.

Credit Suisse First Boston LLC, No. 03-2061, 2005 WL 2045807, at *11 (N.D. Cal. Aug.

25, 2005) (holding that plaintiffs' failure to respond to argument warranted dismissal with

prejudice).[8]

### 3. State Law Claims

The fourth count of the Amended Complaint alleges that the Bank breached its

---

[8] Moreover, several grounds exist to dismiss the securities law claims on the merits. For example, the first count of the Amended Complaint alleges that the Bank and Bank Subsidiaries violated Section 206 of the Investment Advisers Act of 1940 (IAA) by failing to disclose material information to Plaintiffs about the conversion of assets to Nations Funds. The IAA provides only a limited private remedy of voiding an investment advisors contract. Thus, an individual may only seek to rescind the contract, enjoin the continued enforcement of the contract, and recover restitution.  Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 14-19 (1979).  Thus, Plaintiffs could not recover damages for this claim.

The second count purports to set forth a claim pursuant to Section 10b(5) of the Exchange Act and Rule 10b-5, which prohibit fraudulent conduct in the sale and purchase of securities.  See 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5.  This claim fails for several reasons.  First, it is time barred, as Plaintiffs did not assert this claim until six to eight years after the alleged violations.  See 28 U.S.C. § 1658(b); In re ADC Telecomms., Inc. Sec. Litig., 409 F.3d 974, 976-77 (8th Cir. 2005) (action for securities fraud must be brought either within two years after the date of discovery of the securities violation or within five years of the violation).  Second, most Plaintiffs lack standing to bring the claim.  See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975) (private damage action under Rule 10b-5 is limited to actual purchasers or sellers of securities).

The third count asserts claims under Sections 11 and 12 of the Securities Act of 1933. This claim is untimely, as Plaintiffs asserted the claim after the three-year deadline set forth in 15 U.S.C. § 77m.  Finally, because Plaintiffs fail to state Section 11 and 12 claims and a Section 10(b) claim, the derivative claims fail as well.  See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 n.12 (8th Cir. 1997); In re Rural Cellular Corp. Sec. Litig., No. 02-4893, 2004 WL 1278725, at *5 (D. Minn. June 6, 2004).

fiduciary duty of loyalty when it invested fiduciary account assets in Nations Funds, and that the other Defendants aided and abetted the Bank. The fifth count asserts that the Bank and Bank Subsidiaries unjustly profited from the assessment of excessive fees. The sixth count, brought only on behalf of Plaintiff Cohen and members of the Missouri sub-class, claims that the Bank violated its fiduciary duty of loyalty and candor by participating in self-dealing transactions. The seventh count asserts a similar claim, but on behalf of all Plaintiffs and sub-classes. Defendants argue that the Securities Litigation Uniform Standards Act of 1998 (SLUSA) preempts these state law claims.

SLUSA requires preemption and dismissal of certain class actions that allege false statements or omissions of material fact made in connection with the purchase or sale of certain securities. 15 U.S.C. § 78bb(f)(1); Dudek v. Prudential Sec., Inc., 295 F.3d 875, 879 (8th Cir. 2002). Dismissal of an action is appropriate when: (1) the action is a "covered class action" under SLUSA; (2) the action purports to be based on state law; (3) the defendant is alleged to have misrepresented or omitted a material fact; and (4) the defendant's alleged misrepresentation or omission of a material fact was made "in connection with the purchase or sale of a covered security."[9] Dudek, 295 F.3d at 879. The parties agree that this action constitutes a "covered class action" and alleges state law claims. Thus, only the third and

_____

[9] A "covered class action" is a lawsuit that seeks damages on behalf of more than fifty people. Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 126 S. Ct. 1503, 1512 (2006) (citing 15 U.S.C. § 78bb(f)(5)(B)). Thus, although SLUSA prevents plaintiffs from bringing state law claims as class claims, it does not foreclose plaintiffs from bringing individual state law claims. Id. at 1514. A "covered security" is one traded nationally and listed on a regulated national exchange. Id. at 1512 (citing 15 U.S.C. § 78bb(f)(5)(E)).

fourth elements are at issue.

a.  Misrepresentations or Omissions

Plaintiffs argue that SLUSA does not apply because their state law claims are not predicated on material misrepresentations or omissions in connection with the sale of securities.  Instead, according to Plaintiffs, the allegations of misrepresentations and omissions are merely ancillary to their breach of fiduciary duty claims.

Even where plaintiffs attempt to conceal claims based on the misrepresentation or omission of material facts with state law labels, the Eighth Circuit has disregarded such labels and dismissed the claims as preempted by SLUSA.  See, e.g., Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 803 (8th Cir. 2003) (negligence claim preempted by SLUSA because it was "essentially a securities fraud claim"); Dudek, 295 F.3d at 879 (breach of fiduciary duty and unjust enrichment claims preempted by SLUSA because the essence of the complaint was that defendants misstated or omitted material facts in connection with the purchase and sale of a security).  Thus, the Court must focus on the substance of the allegations and be wary of efforts to circumvent SLUSA through artful pleading.  See Dudek, 295 F.3d at 879-80; see also Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 304-05 (3d Cir. 2005) (determining whether a reasonable reading of the complaint reveals allegations within SLUSA's purview); In re Salomon Smith Barney Mutual Fund Fees Litig., 441 F. Supp. 2d 579, 602 (S.D.N.Y. 2006) (dismissing state law breach of fiduciary duty claims with prejudice and finding plaintiffs' attempt to evade SLUSA unavailing).  When the gravamen of the complaint involves an

untrue statement or substantive omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal. Dudek, 295 F.3d at 879-80.

In this case, the state law claims are framed as breach of loyalty and unjust enrichment claims. Nonetheless, the essence of the Amended Complaint is that Defendants misrepresented and omitted material facts relating the transfer of assets to Nations Funds, such as conflicts of interest and expenses related to the transfer. Indeed, the Amended Complaint is replete such allegations, referring more than fifty times to the omissions or misrepresentations relating to the purchase of the mutual funds:

> This Complaint alleges that the Bank and [Bank of America Corporation], by and through [Nations Funds Trust] and the Bank Subsidiaries which operated the Defendants' proprietary mutual funds business, breached the fiduciary duties owed to their Clients by **failing to disclose, inter alia, material conflicts of interest** at the time disclosures were required to be made, as well as by **failing to disclose the incremental increases in expenses** the Clients sustained when the Bank and [Bank of America Corporation] implemented a corporate decision on a nationwide basis to funnel assets in the Bank's fiduciary accounts to the Bank's proprietary mutual funds, the Nations Funds . . . . In connection with the sales of the shares in these proprietary mutual funds to the accounts of Plaintiffs and all members of the Class as defined below, the Bank, [Nations Funds Trust], and the Bank Subsidiaries **failed to exercise good faith and fully disclose all material facts and failed to fully disclose all material facts to them and/or exercise reasonable care to avoid misleading them** as more fully set forth below.

(Am. Compl. ¶ 3; see also Am. Compl. ¶¶ 9(d), 9(h)-(i); 26(a); 38; 40-41; 46; 49(d)-(e); 51 (alleging further non-disclosures and misrepresentations concerning the mutual fund investments).)

These allegations are incorporated into the state law claims by reference. See Prof'l

Mgmt. Assocs., Inc., 335 F.3d at 803; Rowinski, 398 F.3d at 300. Moreover, each of the state law claims hinge on Plaintiffs' contention that they were harmed by Defendants' misrepresentations and omissions of material facts regarding the purchase of Nations Funds. Indeed, Plaintiffs emphasize that the Amended Complaint "includes examples of the Bank's failure to be forthright with the beneficiaries of its accounts." (Pls.' Mem. Opp'n Mots. Dismiss at 15 (citing Am. Compl. ¶¶ 39-47).) In addition, they explain that the Bank and Bank of America Corporation "concealed the truth about their profit enhancing strategy by . . . failing to inform beneficiaries that the Bank was self-dealing and has serious conflicts of interest." (Id. at 17.)

Given its marked similarities to the case at hand, Spencer v. Wachovia Bank, N.A., No. 05-81016, 2006 WL 348043 (S.D. Fla. May 10, 2006), is very persuasive. In Spencer, the plaintiff alleged that Wachovia Bank, the trustee, engaged in self-dealing by investing trust assets in affiliated mutual funds without disclosing that the funds were affiliated with Wachovia Bank and by charging undisclosed advisory and management fees against the trust assets. Id. at *1. Attempting to avoid SLUSA preemption, the plaintiff argued that her claim was for breach of fiduciary duty and was not predicated on misrepresentations or omissions. In rejecting the argument, the Spencer court noted that the complaint was rife with claims of misrepresentations. Id. at *4. Indeed, the court expressly relied on allegations from the Spencer complaint that mirror allegations in the Amended Complaint in this action. Id. As in Spencer, Plaintiffs' attempt to cast their allegations of misrepresentations and omissions as breach of fiduciary duty and unjust enrichment claims is unavailing.

b.    "In Connection with the Purchase or Sale of a Covered Security"

Plaintiffs argue that the "in connection with the purchase or sale of a covered security" requirement of SLUSA preemption cannot be met. They rely on several cases, including <u>Green v. Ameritrade, Inc.</u>, 279 F.3d 590 (8th Cir. 2002), where courts found that SLUSA preemption did not apply because the plaintiffs were not actual purchasers or sellers of the securities at issue. In addition, Plaintiffs maintain that there is an inherent inconsistency between their purported lack of standing to bring federal securities law claims because they were not purchasers or sellers of the securities, and the satisfaction of the "in connection with the purchase or sale of a covered security" requirement under SLUSA.

<u>Merrill Lynch, Pierce, Fenner & Smith v. Dabit</u>, 126 S. Ct. 1503 (2006), a recent United States Supreme Court decision, forecloses both arguments. In <u>Dabit</u>, a former broker of Merrill Lynch sued the investment banking firm alleging that it fraudulently manipulated stock prices, thereby causing him and other brokers and their clients to keep their overvalued securities. <u>Id.</u> at 1507-08. He asserted only state-law claims including breach of fiduciary duty and breach of contract. <u>Id.</u> The district court dismissed the complaint, holding that SLUSA preempted the claims. <u>Id.</u> at 1508. The Second Circuit Court of Appeals disagreed and concluded that the claims fell outside SLUSA's preemptive scope because the complaint alleged that brokers were fraudulently induced to hold or retain—and not to sell or purchase—the securities. <u>Id.</u> The United States Supreme Court reversed. It held the "in connection with the purchase or sale of a covered security" phrase must be read broadly to cover not only purchasers and sellers of securities, but also holders of securities where the

alleged fraud coincides with a securities transaction.  Id. at 1513.

This Court acknowledges that the issue in Dabit was whether SLUSA preemption applies when the plaintiff was a holder—and not a purchaser or seller—of a security. However, in so holding, the Supreme Court explained that the identity of the plaintiff was irrelevant:

> For the purposes of SLUSA pre-emption, . . . the identity of the plaintiffs does not determine whether the complaint alleges fraud "in connection with the purchase or sale" of securities. The misconduct of which respondent complains here—fraudulent manipulation of stock prices—unquestionably qualifies as fraud "in connection with the purchase or sale" of securities as the phrase is defined in [Supreme Court precedent].

Id. at 1515; see also SEC v. Zandford, 535 U.S. 813, 819 (2002) (interpreting the phrase "in connection with" very broadly, and instructing courts to construe the phrase "not technically and restrictively, but flexibly to effectuate its remedial purpose").  Moreover, in the wake of Dabit, the Eighth Circuit Court of Appeals emphasized that the identity of the plaintiffs is immaterial:

> [The plaintiff] also contends that SLUSA should not apply because the putative class includes some individual policyholders who received something other than shares of . . . common stock . . . and thus were not "purchasers" of "covered securities." This argument is foreclosed by the Supreme Court's recent decision in Merrill Lynch, Pierce, Finner & Smith v. Dabit, holding that it is not "the identity of the plaintiffs," but the alleged conduct of the defendants that "determine[s] whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." Accordingly, [the plaintiff] cannot avoid SLUSA's application by including some nonpurchasers or nonsellers of covered securities in the putative class.

Sofonia v. Principal Life Ins. Co., 465 F.3d 873, 879 n.4 (8th Cir. 2006); see also Spencer, 2006 WL 3408043, at *6-*7 (holding that a trust beneficiary's state law claims concerning

investment of trust assets in affiliated mutual funds satisfied the "in connection with a purchase or sale of security" requirement of SLUSA). Because both <u>Dabit</u> and <u>Sofonia</u> focus on the conduct of the defendants and not the identity of the plaintiffs, the Court holds that SLUSA may preempt the state law claims, despite the fact that Plaintiffs are beneficiaries, and not purchasers, sellers, or holders, of the financial accounts at issue.[10]

<u>Dabit</u> also addressed and rejected Plaintiffs' argument regarding the ostensible inconsistency between the lack of standing under federal securities law, as set forth in <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723 (1975), and meeting SLUSA's "in connection" requirement:

> Respondent urges that the operative language ["in connection with the purchase or sale of a covered security"] must be read narrowly to encompass (and therefore preempt) only those actions in which the purchaser-seller requirement of <u>Blue Chip Stamps</u> is met. Such, too, was the Second Circuit's view. But insofar as the argument assume that the rule adopted in <u>Blue Chip Stamps</u> stems from the text of Rule 10b-5—specifically, the "in connection with" language, it must be rejected. . . . [T]his Court in <u>Blue Chip Stamps</u> relied chiefly, and candidly, on "policy considerations" in adopting that limitation. The <u>Blue Chip Stamps</u> Court purported to define the scope of a private right of action under Rule 10b-5—not to define the words "in connection with the purchase or sale." . . . Moreover, when this Court has sought to give meaning to the phrase in the context of § 10(b) and Rule 10b-5, it has espoused a broad interpretation. . . . Under our precedents, it is enough that the fraud alleged "coincide" with a securities transaction—whether by the plaintiff or by someone else. The requisite showing, in other words, is "deception 'in connection with the purchase or sale of any security,' not

---

[10] Even if <u>Green</u> survives <u>Dabit</u>, it is factually distinguishable from this case. In <u>Green</u>, the plaintiff was a subscriber to the defendant's online service that provided "real-time" stock prices. 279 F.3d at 593. In his amended complaint, the plaintiff alleged that the defendant promised to provide "real-time" information but instead provided stale information. <u>Id.</u> The plaintiff did not allege that he actually used the stale information to purchase or sell a security. <u>Id.</u> at 597. Thus, the case involved a typical breach of contract claim.

deception of an identifiable purchaser or seller."

126 S. Ct. at 1513 (citations omitted).

In this case, Plaintiffs essentially allege that Defendants misled beneficiaries of trust and other fiduciary accounts about Nations Funds and the fees associated with transferring fiduciary account assets to the mutual funds. The alleged deception was premised on the purchase of Nations Funds, and Plaintiffs' alleged injury was linked directly to the "forced" purchase of the Nations Funds with fiduciary account assets. Thus, SLUSA preempts the state law claims.[11]

**D.     Motion for Leave to File a Second Amended Complaint**

In the initial Complaint, Plaintiffs asserted breach of fiduciary duty, breach of contract, and unjust enrichment claims against the Bank, Bank of America Corporation, and Columbia Funds Series Trust. Defendants moved to dismiss the Complaint, arguing that the claims were preempted by SLUSA. In response, Plaintiffs filed the Second Amended Complaint, which raised state law and federal securities law claims. Defendants then moved to dismiss the Second Amended Complaint, advancing arguments relating to both the state and federal law claims.

In their memorandum opposing the Motions to Dismiss, Plaintiffs address only the SLUSA preemption issue relating to the state law claims. They also seek leave to file a

---

[11] SLUSA preemption mandates dismissal of the entire class action—not just individual claims. See In re Lord Abbett Mutual Funds Fee Litig., No. 04-559, 2006 WL 348946, *3-*7 (D. N.J. Dec. 4, 2006). Thus, in addition to the reasons provided above, the federal law securities law claims fail for this reason as well.

Second Amended Complaint, which withdraws the federal securities law claims.  Plaintiffs

acknowledge that the "claims in the Second Amended Complaint are the same claims as

asserted in the previous complaint."  (Pls.' Mot. for Leave to File Sec. Am. Compl. ¶ 4.)

Defendants oppose the Motion for Leave, arguing that it is futile, prejudicial, and brought

in bad faith.

A district court should grant leave to amend freely "when justice so requires."  Fed.

R. Civ. P. 15(a).  However, denial of leave to amend may be justified when the amendment

is futile.  Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 755 (8th Cir. 2006) (citing

United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557-58 (8th Cir. 2006)

(citing United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir.

2001)).

As explained above, SLUSA preempts the state law claims and must be dismissed.

Although Plaintiffs claim that the case is not about omissions and misrepresentations, the

proposed Second Amended Complaint repeatedly alleges failures to disclose.  (Proposed Sec.

Am. Compl. ¶¶ 9, 19, 26, 39-41, 44, 48-50.)  Plaintiffs attempt to mask the misrepresentation

and omission allegations by removing words such as "false," "misleading," and "deceptive,"

and rephrasing the allegations as failures to disclose.[12]  However, changing the wording does

not change the fact that the allegations are grounded on alleged misrepresentations and

---

[12] For example, it states: "at no time has the Bank distributed to Plaintiffs . . . any statement fully and completely disclosing the wrongdoing described below including, inter alia, its conflicts of interest associated with the use of Nations Funds in its fiduciary accounts." (Proposed Sec. Am. Compl. ¶ 9(d); see also id. ¶¶ 19, 20, 26(a), 39-41, 48(c)-(d), 49-51.)

omissions and are central—not ancillary—to the claims.  See Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006) (holding that dismissal on SLUSA grounds appropriate where plaintiff's claim is a "securities fraud wolf dressed up in a breach of contract sheep's clothing.").  Whether Plaintiffs characterize their allegations as "deceptive" or "misleading" or re-characterize them as "failures to disclose," these claims are based on misrepresentations and omissions that coincide with the purchase of a security and are therefore preempted by SLUSA.  The amendment is futile.

Moreover, it would be unjust to provide Plaintiffs another attempt to plead their claims.  Plaintiffs in this action have filed seven complaints against Defendants, two in this action and five in other actions now dismissed.  A court may deny leave to amend where a party attempts to present theories of recovery seriatim to the court.  In re: Dynegy, Inc. Sec. Litig., 339 F. Supp. 2d 804, 921-22 (S.D. Tex. 2004) (citing S. Constructors Group, Inc. v. Dynalectric Co., 2 F.3d 606, 612 (5th Cir. 1993)).

> Pleading is not an interactive game in which plaintiffs file a complaint and then volley it over a rhetorical net with the court until a viable complaint emerges.  Plaintiffs have the responsibility to plead their case adequately, without defendants' or the court's assistance.  A court may deny a plaintiff leave to replead when the party "has been given ample opportunity to allege a claim."

Hughes v. LaSalle Bank, N.A, No. 02-6384, 2006 WL 1982983, at *6  (S.D.N.Y July 14, 2006) (citing In re Merrill Lynch Ltd. P'ships Litig., 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997); De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 72 (2d Cir. 1996)); see also Confederate Mem'l Ass'n, Inc. v. Hines, 995 F.2d 295, 300-01 (D.C. Cir. 1993) (affirming district court's denial of request to amend where plaintiffs had "multiple bites at the apple"

including restating what they had pled in a prior action).

Plaintiffs have failed to show why justice requires an amendment. Indeed, Plaintiffs concede that they are seeking to re-file the initial complaint. Their abandonment of the federal securities law claims implicitly concedes that they should have not filed the Amended Complaint in the first place. Plaintiffs have had ample opportunity to plead their case, and the Court will not allow Plaintiffs to shilly-shally in an attempt to avoid dismissal. The Motion for Leave is denied.

**CONCLUSION**

Because Plaintiffs dismissed <u>Williams</u> and commenced this action based on the same claims against the Bank, the Bank is entitled to recover costs and fees incurred in <u>Williams</u>. Sanctions against Defendants are unwarranted. The Amended Complaint fails to state a claim upon which relief may be granted, and Plaintiffs have failed to show that the proposed Second Amended Complaint will cure the deficiencies of the Amended Complaint. Accordingly, **IT IS HEREBY ORDERED** that:

1.  Defendants' Motion to Stay and for Costs and Fees (Docket No. 3) is **GRANTED in part** and **DENIED as moot in part**. The Court awards the Bank $71,972.79 in costs and $923,990.35 in attorneys' fees and expenses that it incurred in defending <u>Williams</u>. However, because the Court dismisses the Amended Complaint, a stay is unnecessary;

2.  Plaintiffs' Motion for Sanctions under 28 U.S.C. § 1927 (Docket No. 27) is **DENIED**;

3.      Plaintiffs' Motion for Sanctions under Federal Rule of Civil Procedure 11 (Docket No. 52) is **DENIED**;

4.      Defendants' Motions to Dismiss the Amended Complaint (Docket Nos. 56 and 58) are **GRANTED**;

5.      Plaintiffs' Motion to Appoint Lead Counsel (Docket No. 68) is **DENIED as moot**;

6.      Plaintiffs' Motion to Consolidate Cases (Docket No. 74) is **DENIED as moot**;

7.      Plaintiffs' Motion for Leave to File in Excess of Page Limitation (Docket No. 80) is **GRANTED**;

8.      Plaintiffs' Motion for Leave to File Second Amended Complaint (Docket No. 83) is **DENIED**;

9.      Plaintiffs' Motion for Leave to File Sur-Reply (Docket No. 91) is **GRANTED**;

10.     Defendants' Motion to Stay Discovery (Docket No. 97) was **GRANTED** at the oral argument hearing on November 16, 2006; and

11.     Plaintiffs' Motion for Extension of Time to File Response to Motion to Stay Discovery (Docket No. 100) is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: December 27, 2006                             s/ Paul A. Magnuson

                                                     Paul A. Magnuson

United States District Court Judge