# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-1899/07-1906

_____

| | |
|---|---|
| George Siepel; Phyllis Siepel; H. Craig Williams; Elinor Tama Williams; Constance Elaine Williams; Donna N. Reinke; Robert Cohen; Carl M. Page; and all others similarly situated, * * * * * * | |
| Plaintiffs-Appellants/ Cross-Appellees, * * * | |
| v.  * * | |
| Bank of America, N.A., * * | Appeals from the United States District Court for the |
| Defendant-Appellee/ Cross-Appellant, * * * | Eastern District of Missouri. |
| and  * * | |
| Columbia Funds Series Trust, formerly known as Nations Funds Trust; Bank of America Corporation; Columbia Management Advisors, LLC; Columbia Management Distributors, Inc.; Bank of America Investment Services, Inc., * * * * * * * * | |
| Defendants-Appellees. * | |

_____

Submitted: January 17, 2008
Filed: May 19, 2008

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and GOLDBERG,[1] Judge.

_____

SHEPHERD, Circuit Judge.

Several beneficiaries of trust accounts maintained by Bank of America, N.A., filed a class action complaint against the Bank, its holding corporation, and affiliated investment companies. In addition to alleging claims under federal securities laws, the Plaintiffs alleged state-law claims that the Defendants were unjustly enriched and breached fiduciary duties they owed to the beneficiaries. On the Defendants' motion, the district court[2] dismissed the federal claims on the merits and dismissed the state-law claims as preempted by the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. § 78bb(f).

In this appeal, the Plaintiffs mainly call upon us to answer whether SLUSA preempts state-law claims that a trustee breached its fiduciary duty by failing to disclose conflicts of interest in its selection of nationally-traded investment securities. As a dismissal for failure to state a claim, we review the district court's decision *de novo*. Sofonia v. Principal Life Ins. Co., 465 F.3d 873, 876 (8th Cir. 2006). The Supreme Court's broad holding in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006), compels us to conclude that SLUSA applies.

I.

On review of a dismissal for failure to state a claim, we assume that the allegations in the Amended Complaint are true and construe them in the light most

---

[1] The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

[2] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation in the Eastern District of Missouri.

favorable to the Plaintiffs' claims.  See Kottschade v. City of Rochester, 319 F.3d 1038, 1040 (8th Cir. 2003).  According to the complaint, the Bank implemented a plan to consolidate the trust management activities of other banks it had acquired.  Existing and prospective trust customers were allegedly led to believe that their assets were being managed on an individualized basis, when in fact the assets were being invested in shares of the Nations Funds mutual fund, managed by an investment company substantially owned by the Bank.  Even though higher-yielding and better-managed mutual funds were available in the marketplace, according to the Plaintiffs, the Bank favored Nations Funds because it could then indirectly extract additional fees and profits.

To help effectuate this plan, the Bank allegedly sent misleading letters to co-trustees and beneficiaries touting the advantages of the move to Nations Funds and threatening "adverse tax consequences" if the recipients objected.  Not disclosed were the conflicts of interest, higher expenses, and increased tax liability that would result from the Bank's diversion of trust assets to Nations Funds.  Consequently, the Plaintiffs claim, the Bank acted in its own self-interest to the detriment of the trust beneficiaries, in breach of its fiduciary duties under state law.

The Plaintiffs filed this class action, alleging:  breach of fiduciary duty; unjust enrichment; and violations of the the Investment Advisers Act of 1940, Securities Exchange Act of 1934, and Securities Act of 1933.  They asserted federal jurisdiction over the state-law claims based on the minimum diversity provisions of the Class Action Fairness Act of 2005, and as supplemental to the federal claims.  28 U.S.C. §§ 1332(d)(2), 1367(a).  On behalf of themselves and all others similarly situated, the Plaintiffs seek class certification, money damages, attorneys' fees, and injunctive relief.

The Defendants moved to dismiss the action for several reasons.  Because the Plaintiffs and their lawyers had already filed at least five class actions in various

jurisdictions seeking redress for the same alleged injuries, the Defendants asked the court to decline jurisdiction based on impermissible judge shopping. Further, the Defendants requested an award of costs and attorneys' fees they had incurred in defending one of those actions in a Florida court. They also moved to dismiss the federal claims on the merits, and the state-law claims as preempted by SLUSA. The Plaintiffs opposed all of the motions except as to the federal claims, which they proposed to eliminate by moving for leave to file a Second Amended Complaint.

Finding "ample evidence that Plaintiffs are forum shopping," the district court awarded $71,972.79 in costs and $923,990.35 in attorneys' fees to the Bank. Thereafter, the court was notified that the Florida court had already entered a decision on the same issue. To prevent a duplicative recovery, the district court vacated the award so that the Florida court could determine the appropriate amount of costs and attorneys' fees.

Due to the Plaintiffs' failure to oppose, the court dismissed the federal claims with prejudice and denied leave to amend based on futility. As for the issue of SLUSA preemption, the district court found that misrepresentations and omissions of material facts were central to the Plaintiffs' state-law claims. The court further held that, regardless of the Plaintiffs' status as trust beneficiaries and not purchasers or sellers, the alleged misrepresentations and omissions were "in connection with the purchase or sale of a covered security" as defined by Dabit, 547 U.S. 71. As such, the court concluded that SLUSA mandated dismissal of the state-law claims.

On appeal, the Plaintiffs argue that the district court erred in concluding that SLUSA preempts their state-law claims. They also protest that they were improperly denied an opportunity to file a second amended complaint to delete the federal claims. In the event we reverse, the Bank counters with a protective cross-appeal to restore the award of costs and attorneys' fees.

II.

There has long been tension between the federal interest of protecting investors in nationally traded securities and the practical need to protect normal business activity from vexatious litigation. See Dabit, 547 U.S. at 78-82; Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 739-44 (1975). Federal regulation of the securities market is anchored by the Securities Act of 1933 and the Securities Exchange Act of 1934, both of which Congress passed in the wake of the 1929 stock market collapse. Dabit, 547 U.S. at 78. Rule 10b-5, promulgated under Section 10(b) of the 1934 Act, makes it unlawful for any person, in connection with the purchase or sale of any security, to (a) employ any device, scheme or artifice to defraud, (b) make an untrue statement of material fact or omit material facts from a statement, or (c) engage in a fraudulent or deceptive course of business. 17 C.F.R. § 240.10b-5; see 15 U.S.C. § 78j. In 1946, federal courts began to hold that Section 10(b) of the 1934 Act implicitly granted a private right of action to individual investors. See Blue Chip Stamps, 421 U.S. at 729-30. The Supreme Court confirmed this holding in 1971. Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 13 n.9 (1971).

With the recognition of a private right of action, it became desirable to delimit the scope of that right. Due to the costs of discovery and the risk of a massive judgment, even a meritless lawsuit could extract a sizeable settlement from a defendant. See Blue Chip Stamps, 421 U.S. at 740-41. Aiming to deter such nuisance actions, the Supreme Court adopted a rule that excluded Section 10(b) claimants who were not purchasers or sellers of securities. Id. at 749. As a limitation resting on considerations of policy, see id., the rule of Blue Chip Stamps had no effect on the scope of criminal liability under Section 10(b) and Rule 10b-5. United States v. O'Hagan, 521 U.S. 642, 655 (1997); see Dabit, 547 U.S. at 84.

For reasons similar to those underlying Blue Chip Stamps, Congress passed the Private Securities Litigation Reform Act of 1995 (PSLRA),[3] enacting "procedural reforms to enable district courts to weed out meritless class actions alleging fraud in the purchase and sale of securities." Dudek v. Prudential Sec., Inc., 295 F.3d 875, 877 (8th Cir. 2002); see Dabit, 547 U.S. at 81. Although the PSLRA met its goal of reducing the number of federal securities class actions, it had an unintended consequence of herding plaintiffs into state courts, where they filed class actions based on state laws. Dabit, 547 U.S. at 82; Dudek, 295 F.3d at 877. Congress responded to this phenomenon by enacting SLUSA, Pub. L. 105-353, 112 Stat. 3227 (1998) (codified as amended in scattered sections of 15 U.S.C.).

### III.

An amendment to the 1933 and 1934 Acts, SLUSA expressly preempts all "covered" state-law class actions that allege: (1) an untrue statement or omission of a material fact, or (2) use of a manipulative or deceptive device or contrivance, "in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b), 77bb(f)(1); Dudek, 295 F.3d at 879. There is no dispute that the Plaintiffs' action seeks damages on behalf of 50 or more people, and thus is a "covered class action" under SLUSA. 15 U.S.C. §§ 77p(f)(2), 78bb(f)(5)(B). Likewise, there is no dispute that the Nations Funds mutual fund described in the Plaintiffs' Amended Complaint is traded nationally and listed on a regulated national exchange, thereby meeting SLUSA's definition of "covered security." 15 U.S.C. §§ 77p(f)(3), 77r(b), 78bb(f)(5)(E); Dabit, 547 U.S. at 83 n.9. In their reply brief, the Plaintiffs concede that the Amended Complaint contains allegations that the Bank misrepresented and omitted material facts.

---

[3] Pub. L. No. 104-67, 109 Stat. 737 (codified at 15 U.S.C. §§ 77z-1, 78u-4).

The controversy is whether the alleged misrepresentations and omissions were "in connection with" the purchase or sale of securities. Because the same phrase appears in the Section 10(b) of the 1934 Act, we rely on judicial interpretations of Section 10(b) and Rule 10b-5 when construing "in connection with" as used in SLUSA. Dabit, 547 U.S. at 85-86; Sofonia, 465 F.3d at 878. The rules governing private Rule 10b-5 actions, however, followed a different path than the law defining substantive violations of Rule 10b-5. See Dabit, 547 U.S. at 80. The private right of action is a judicially-created remedy, fashioned in the image of Rule 10b-5 but also shaped by policy considerations. See Blue Chip Stamps, 421 U.S. at 737, 749; Karson v. Nat'l Gypsum Co., 69 F. Supp. 512, 514 (E.D. Pa. 1946) (relying on general principles of tort law, in addition to statutory interpretation). For policy reasons, courts limited the private right of action, so as to minimize the danger of vexatious litigation. E.g., Blue Chip Stamps, 421 U.S. at 740-41. Such dangers do not exist in the context of criminal liability, so the Supreme Court deemed those limitations to not apply in the criminal context. E.g., O'Hagan, 521 U.S. at 664-65. Thus, the question that faced the Supreme Court: Do judicial limitations on private actions also limit the scope of SLUSA?

In Dabit, the Supreme Court instructed that SLUSA should be read with the "presumption that Congress envisioned a broad construction," so that the most troublesome class actions would be subject to the PSLRA's procedural reforms. Dabit, 547 U.S. at 86. The Plaintiffs contend that Dabit only decides whether SLUSA preemption is confined to claims by plaintiffs who have standing to meet the purchaser-seller limitation of Blue Chip Stamps. See Dabit, 571 U.S. at 84. Asserting that the "in connection with" issue was not before the Court, see id. at 77 n.3, the Plaintiffs posit that we may rely on cases interpreting "in connection with" narrowly, as in the context of private Rule 10b-5 actions. E.g., Green v. Ameritrade, Inc., 279 F.3d 590 (8th Cir. 2002).

When it rejected the Blue Chip Stamps limitation, the Supreme Court rejected wholesale the proposition that limitations on private Rule 10b-5 actions may be applied to limit the scope of SLUSA. To the extent that we have suggested, pre-Dabit, that the scope of SLUSA preemption is equal to that of the right to a private Rule 10b-5 action, see Green, 279 F.3d at 597-98, the Court has corrected our course. Dabit, 547 U.S. at 85-86. SLUSA's coverage follows the contours of Section 10(b) and Rule 10b-5 when enforced by an agency of the United States. See id.

Separated from the policy considerations that can limit the private right of action, the "in connection with" standard of Section 10(b) is construed flexibly, not technically or restrictively. SEC v. Zandford, 535 U.S. 813, 819 (2002); Sofonia, 465 F.3d at 878. It applies to a fiduciary who misappropriates information, and then uses that information to gain no-risk profits through a securities transaction. O'Hagan, 521 U.S. at 656. It covers allegations that an agent made unauthorized sales of a customer's securities for his own benefit. Zandford, 535 U.S. at 820-21. According to the Plaintiffs, the Bank purchased securities as a trustee on their behalf without disclosing that the Bank profited from the transactions.

The Plaintiffs argue that the Bank's non-disclosure was not "in connection with" the purchase of the securities, such that the non-disclosure did not relate to a decision whether to purchase a security. See O'Brien v. Cont'l Ill. Nat'l Bank & Trust Co., 593 F.2d 54, 60 (7th Cir. 1979). Under Dabit, however, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." Dabit, 547 U.S. at 85. The Plaintiffs' complaint alleges non-disclosures that clearly coincided with the Bank's purchase of shares in the Nations Funds mutual fund. Given the identical coverage of Section 10(b) and SLUSA, it follows that the Plaintiffs' state-law claims are preempted.

IV.

We briefly address the Plaintiffs' argument that they were erroneously denied leave to amend their complaint. The proposed Second Amended Complaint would have eliminated the federal claims that had been asserted. Although leave to amend should ordinarily be granted, a party should at least show how the complaint could be amended to save a meritless claim. Wisdom v. First Midwest Bank, 167 F.3d 402, 409 (8th Cir. 1999). When leave is denied on grounds of futility, we review *de novo* the underlying legal conclusion of whether the proposed amendment would have been futile. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 755 (8th Cir. 2006). In their brief, the Plaintiffs admit that they made no changes to the state-law claims, and that their challenge to the futility finding is wrapped up in the district court's SLUSA determination. Having already determined that SLUSA was correctly applied, we affirm the denial of leave to amend.

V.

We dismiss the Bank's protective cross-appeal as moot. In all other respects, we affirm the judgment of the district court.

_____